1  THE VEEN FIRM, P.C.
   Anthony L. Label (Bar No. 205920)
2  Steven A. Kronenberg (Bar No. 215541)
   711 Van Ness Avenue, Suite 220
3  San Francisco, CA 94102
   P.O. Box 7296
4  San Francisco, CA 94120-7296
   Tel:   (415) 673-4800
5  Fax:   (415) 771-5845

6  CHAVEZ & GERTLER LLP
   Jonathan E. Gertler (Bar No. 111531)
7  Dan L. Gildor (Bar No. 223027)
   Samuel P. Cheadle (Bar No. 268595)
8  42 Miller Avenue
   Mill Valley, California 94941
9  Tel:   (415) 381-5599
   Fax:   (415) 381-5572
10
   *Attorneys for Plaintiff Digby Adler Group, LLC*
11 *and the Proposed Class*

12                   UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 DIGBY ADLER GROUP, LLC, dba            )  **Case No. CV 14-02349 TEH**
   BANDAGO LLC, on behalf of itself and all )
16 others similarly situated,               )  CLASS ACTION
                                            )
17                                          )
                   Plaintiff,               )  **SECOND AMENDED COMPLAINT**
18 v.                                       )  **FOR PRODUCT LIABILITY, ACTUAL**
                                            )  **FRAUD, AND UNFAIR BUSINESS**
19 MERCEDES-BENZ U.S.A., LLC,               )  **PRACTICES**
                                            )
20                                          )
                   Defendant.               )
21                                          )
                                            )
22                                          )
                                            )
23

---

Plaintiff DIGBY ADLER GROUP, LLC, dba BANDAGO, LLC ("Bandago"), individually and on behalf of all others similarly situated, hereby complains against Defendant MERCEDES-BENZ U.S.A., LLC ("Mercedes" or "Defendant") and alleges as follows:

## INTRODUCTION

1. This is a class action brought against Mercedes-Benz U.S.A on behalf of Plaintiff and all others who have—at any time in the four years preceding the filing of this action through such time as this action is pending—purchased Sprinter 2500 and Sprinter 3500 model vans (the "Sprinter") in California that were designed and manufactured by Mercedes-Benz and were equipped with a Rear Roof Air Conditioning Package ("AC unit").

2. The Sprinter vans equipped with the AC unit experience water leaks that damage the vehicles, including the ceiling, floorboards, seat cushions, and upholstery, and that causes mold to form inside the affected vehicles. The leaks also damage cargo and anything else being transported in the vehicles, including any fixtures that were installed by the owners. Mercedes has known about the propensity of the AC units to leak water into the interior of the vans but has failed to either recall Sprinter vans to address the leaks, alter its manufacturing processes and/or materials, or pay for the damage arising from the leaks.

3. Plaintiff brings this class action to enjoin Defendant's ongoing unfair business practices and to compensate class members for their losses caused by the leaks.

## PARTIES

4. Plaintiff Bandago is a limited liability company registered in California with its principle place of business in San Francisco.

5. Defendant Mercedes-Benz U.S.A., LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Montvale, New Jersey. Mercedes is registered to conduct business in California and has dealerships throughout the state, including several in San Francisco County.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy. Plaintiff's principal place of business is in San Francisco and Defendant regularly conducts business in and has multiple

1  dealerships in San Francisco County. Mercedes removed this action from the Superior Court in
2  and for the County of San Francisco on May 21, 2014.

3      7.    Venue is proper in this Court because it was removed from the San Francisco
4  Superior Court and because the acts and omissions alleged herein took place in this district.

## FACTUAL ALLEGATIONS

6      8.    Bandago's business centers on renting Sprinter vans to clients, many of whom are
7  touring bands and musicians. Bandago's founder and CEO, Sharky Laguana, drove versions of
8  the Sprinter while touring in a band around Europe. Based on this personal experience, Bandago
9  has adopted the Sprinter as its flagship vehicle in its rental fleet. The Sprinter is unique in that, at
10 the time Bandago decided on its flagship vehicle, the Sprinter was the only vehicle of its size in
11 the United States, with features that align perfectly with Bandago's clients' needs. Specifically,
12 the Sprinter can have a separate cargo hold to keep safe musical equipment worth upwards of one
13 hundred thousand dollars. The Sprinter is also tall enough to stand up in, which is important to
14 clients who spend a lot of time around a group of people in tight quarters.

15     9.    Prior to 2006, Bandago's fleet did not include any Sprinter vans. Bandago,
16 however, noted a need for such a vehicle among its clientele. In deciding whether to invest and
17 add Sprinter vans to its fleet, Bandago did its research. Mr. Laguana researched the Sprinter on
18 the web, including Mercedes' own website. He "googled" the Sprinter and found that the reviews
19 were largely favorable—that the Sprinter had high marks for ease of use, good fuel economy,
20 drivability, and comfort. Once he got a fleet number, he received written material, including a
21 detailed booklet about the Sprinter. Mr. Laguana read this material with great interest given that
22 Bandago was contemplating a large investment in the vans with no track record for whether
23 clients would be willing to pay the extra amount necessary to break even given the high cost of
24 the vehicles.

25     10.    Through his research, Mr. Laguana concluded that the Sprinter vans—designed
26 and manufactured by Mercedes, with a corresponding price tag—epitomized "German
27 engineering" and quality. Mercedes in fact intends the Sprinter to be the best commercial vehicle
28 in its segment, and says so on its website and marketing materials. Mercedes also touts on its

3

SECOND AMENDED CLASS ACTION COMPLAINT      Case No. 14-02349 TEH

1  website and its marketing materials the awards that the Sprinter has received, including three
2  2013 Best Fleet Value in America<sup>TM</sup> awards.  Mr. Laguana's research, combined with Mr.
3  Laguana's personal experience with the Sprinter in Europe, led Bandago to invest heavily in
4  Sprinter vans for its fleet.
5        11.    Mercedes released a second generation Sprinter van in the United States in 2007.
6  One of the options that comes standard on the particular "passenger" configuration that Bandago
7  purchases is the AC unit.  This high-performance air conditioning system is fitted in front of the
8  sunroof aperture over the van's rear compartment.  It is driven by its own compressor.  The roof-
9  mounted unit also extends some way into the interior of the vehicle and supplements the cooling
10 provided by the standard front air conditioning system.  Mercedes particularly recommends the
11 AC unit for vehicles used in hot climates so that rear passengers can individually adjust the air
12 outlets for improved comfort and well-being.  Mercedes installs the AC unit prior to distribution
13 and sale of the vans to the public.
14       12.    It was only after Bandago incorporated the second generation Sprinter with the AC
15 unit into its fleet that Bandago began to notice that vans were being plagued by water leaking in
16 and around the AC unit.  For instance, Plaintiff purchased at least 98 Sprinter vans between
17 January 2010 and January 2014.  At least 83 of those vans have experienced leaks in and around
18 the AC unit.  While some leaks occurred after steady rain, others have occurred after the unit was
19 run at its coldest setting with high blower settings.  The leaks have damaged the vehicles as well
20 as the cargo being transported in the vehicles, and fixtures that have been installed.  As a result of
21 the leaks, Bandago has had to reimburse customers in exchange for the inconvenience and
22 damage caused by the leaks, and pay the cost of repairing the damage caused by the leaks.
23 Bandago has also had to take the vehicles with the leaks out of service to let upholstery and
24 carpeting dry and to perform repairs after a leak would occur; Bandago would not be able to rent
25 out the vehicle that experienced the leak until it had fully dried and was repaired.  Finally,
26 Bandago has lost the goodwill of the customers who rented from Bandago and who experienced
27 the leaks first hand.  Bandago has received complaints online about vans that had wet seats due to
28 either leaks or cleaning to repair the damage from leaks.

4

SECOND AMENDED CLASS ACTION COMPLAINT                                                 Case No. 14-02349 TEH

1  13. Bandago had not experienced any such problems with any of the previous-generation model vans in its fleet. Given that Bandago's vans are dispersed across the United States and that Bandago does not maintain centralized repair records, it took a while before Bandago realized that the leaks were occurring across the fleet.

  14. Though Bandago's previous generation Sprinter vans did not experience leaks, they did experience issues with the turbo resonator that caused the van's on-board computer to switch into "limp home" mode—a mode that limits the van to 45 mph. Once Mercedes was made aware of this problem, Mercedes fixed it in the following model year.

  15. Based on this experience, Bandago believed that the leaks in the second generation vehicles would be handled in a similar manner, with a fix coming in the next model year. This belief was buttressed by representations by Mercedes that it had identified the problem and issued a fix as well as Mercedes' reputation and Mercedes' apparent commitment to making the Sprinter the "best commercial vehicle" in its segment. Bandago arranges its purchases such that it orders all of the new vehicles to be added to its fleet in a given year at the same time. As such, each purchase covers a new model year, and accompanied with the expectation that Mercedes had resolved the problem with the AC units.

  16. Once Bandago realized that the second generation Sprinter had a propensity to develop leaks in and around the AC unit, and after leaks occurred in the following model year such that Bandago realized that the problem had not been fixed, Bandago reached out to Mercedes. At all times, Mercedes has repeatedly assured Bandago that it was aware of the problem and was issuing fixes to resolve the problem in the future. For instance, in May 2009, Eric Gierst, Chrysler's Regional Fleet Service Manager, issued a "fix" that was supposed to resolve the problem of leaks occurring. It seemed to Bandago that Mercedes was on top of the problem, and so Bandago continued to purchase Sprinter vans to add to its fleet. This was repeated with each model year, with Bandago complaining to Mercedes of the problem, and Mercedes reassuring Bandago that they were aware of the problem and issuing fixes. The reassurances were not limited to communications between Bandago and Mercedes. In 2010, Mercedes issued a Technical Service Bulletin addressing how to fix the AC unit leaks, furthering

1  Bandago's belief that Mercedes had identified the issue and that the problem would be fixed in
2  subsequent model years.  Plaintiff received further assurances from Mercedes, including a series
3  of communications between Gale Young, Mercedes' senior engineer in the United States, and Mr.
4  Laguana in August and September 2013.  Mr. Young represented that Mercedes had identified the
5  issue, that the issue had been fixed, and that the AC units would not leak in the future.  Bandago
6  relied on Mercedes' representations that it had identified the problem and issued a fix in
7  continuing its annual purchase of Sprinter vans.
8        17.      Upon information and belief, at no time from first learning of the defect through
9  the class period did Mercedes modify the materials (including the sealant), workmanship, factory
10 preparation or design of the rear AC units, despite repeated promises that it had identified and
11 fixed the problem.
12       18.      Plaintiff too has never modified any of the AC units or the sealing/installation of
13 the AC units on any of its Sprinter vans.
14       19.      The problems that Plaintiff has experienced with the Sprinter vans are not a
15 localized phenomenon.  Sprinter van owners and lessees across the United States have reported
16 leaks in or around the AC unit that have necessitated costly repairs and replacement of damaged
17 cargo.  There are videos posted on youtube.com of it "raining" inside Sprinter Vans.  Many of the
18 individuals that have experienced the leaks have called Mercedes' consumer complaint line or
19 advised their dealership of the problem.  Plaintiff is informed and believes, and on that basis
20 alleges, that Mercedes tracks customer calls as well as feedback from dealerships and other repair
21 facilities, as well as online forums dedicated to the Sprinter vans, like sprinter-source.com, that
22 catalog multiple complaints by owners about leaks in or around the AC unit.  Members of
23 Plaintiff's staff have contacted Mercedes' Customer Assistance Center ("CAC") on multiple
24 occasions to complain about leaks in and around the AC unit.  Plaintiff is informed and believes,
25 and on that basis alleges, that Mercedes also maintains a database regarding warranty service
26 requests and tracks the sale of replacement parts ordered in attempting to make repairs to stop the
27 leaks.  Together, the available data demonstrate that an inordinate number of Sprinter vans have
28 experienced leaks in or around the AC unit, particularly when compared to other Sprinter vans

6

without the AC unit.  In this connection, the National Highway Transportation Safety Agency ("NHTSA") has at least six complaints on file regarding such leaks from as early as 2007—the year that Mercedes introduced the second generation Sprinter models.  Plaintiff is informed and believes, and on that basis alleges, that Mercedes tracks and monitors complaints filed with NHTSA and has known about the leaks since at least the time that these complaints were filed. Based on the complaints, Mercedes has conducted investigations into the causes of the leaks and potential fixes.  These investigations have resulted in the issuance of several technical service bulletins to repair facilities detailing the steps to take to address leaks in and around the AC unit in Sprinter vans, including at least one such bulletin issued in 2010.

20.     At all relevant times, Mercedes knew or should have known that having water enter the interior of Sprinter vans through the AC unit was inconsistent with the reasonable expectations of Sprinter purchasers.  Defendant in fact markets the entire line of Sprinter Vans as "a testament" to Mercedes-Benz's expertise in developing vehicles that make working easier, safer, and more efficient, that continue "to set the industry standards for reliability and technological advancement."  The leaks are also inconsistent with the promises set forth in Mercedes' new vehicle warranties issued with the Sprinter vans.  Despite this knowledge, Mercedes installed the AC units on the Sprinter vans and knowingly and purposefully placed them into commerce to be sold.

21.     In light of multiple reports of leaks in and around the AC unit to Mercedes and government regulators, as well as the other sources of information available to Mercedes regarding repairs and replacements, Mercedes had exclusive knowledge that was superior to that available to the general public.  Despite that knowledge, Mercedes made no modifications to the AC unit and continued to put new model year Sprinters on the market knowing they contained the defect.  Mercedes did not disclose the defect in any of the publicly-viewable brochures and other online materials on Mercedes' official website.  Notably, technical service bulletins are not generally available to the public.

22.     Plaintiff designed Bandago's business model around the Mercedes Sprinter passenger van, providing high-end vehicles for bands on tour.  At the time, there were no other

1   vehicles with a comparable body style being sold in the U.S.  Throughout the class period,
2   Plaintiff relied on Mercedes' representations that the vehicles Plaintiff purchased were free of
3   defects.  Once Plaintiff learned that the AC unit leaks in its fleet of Sprinter vans were a recurring
4   problem, it was too late to change Plaintiff's entire business model, marketing, and promotion.
5   Even though Plaintiff knew that some of the vehicles had developed leaks, Plaintiff nonetheless
6   continued and continues to rely on Mercedes' reputation and representations that the defects in
7   the design of the AC unit or its manufacture and installation have been identified and fixes issued.
8   Had Mercedes not disclosed on numerous occasions that it identified the cause of the leaks and
9   issued a fix, Plaintiff would not have adopted the Sprinter as its flagship vehicle and continued to
10  purchase the vehicles that Bandago, which due to its financing arrangements, would not be able to
11  sell on the market for at least three years.  At the very least, Plaintiff would not have agreed to
12  pay as much for the defective vans.

## TOLLING OF THE STATUTE OF LIMITATIONS

14      23.    The causes of action alleged herein accrued upon discovery of the unacceptably
15  high susceptibility of the AC units to leak.  The leaks generally occur after heavy rains or other
16  significant exposures to moisture, including using the unit at its maximum settings.
17  Consequently, owners and lessees may not experience the leak if the vehicle is not exposed to
18  conditions that cause the defect to manifest.  Plaintiff and members of the class did not discover
19  and could not have discovered the factual bases of their claims through the exercise of reasonable
20  diligence because Mercedes knowingly and actively concealed the facts alleged herein.  By virtue
21  of Mercedes' actions, Plaintiff and members of the class have been kept ignorant of vital
22  information essential to the pursuit of these claims, without any fault or lack of diligence on their
23  part.
24      24.    Rather than acknowledging the defect and issuing a recall, Mercedes repeatedly
25  assured Plaintiff and members of the class that it identified the problem and issued a fix, which it
26  had not.
27      25.    Mercedes was and is under a continuous duty to disclose to Plaintiff and members
28  of the class material information regarding the defects in the AC unit.  The susceptibility to leaks

8

SECOND AMENDED CLASS ACTION COMPLAINT     Case No. 14-02349 TEH

1  and the lack of a solution for the problem is material information that a reasonable purchaser
2  would consider important when selecting a van to carry people and cargo.
3      26. Since Plaintiff and members of the class had no way of knowing or suspecting that
4  Mercedes had not, contrary to its assertions, solved the defect, Defendant is estopped from relying
5  on any statute of limitations in its defense of this action.

## CLASS ACTION ALLEGATIONS

7      27. Plaintiff brings this class action pursuant to F.R.C.P. 23 on behalf of California
8  residents who purchased or leased a Sprinter van in California in the four years preceding the
9  filing of this action that either a) came equipped with an AC unit, or b) had an AC unit installed
10  by Mercedes after purchase or lease.
11      28. Excluded from the Class are:
12          (a) officers, directors, and employees of Mercedes-Benz, its subsidiaries,
13              affiliates, and any entity in which Mercedes-Benz has a controlling interest,
14              authorized Mercedes-Benz dealers and any legal representative, heir,
15              successor, or assignee of Mercedes-Benz;
16          (b) counsel, and the immediate families of counsel, who represent Plaintiff in
17              this action;
18          (c) the judge presiding over this action;
19          (d) jurors who are impaneled to render a verdict on the claims alleged in this
20              action; and
21          (e) any individual asserting claims for personal injury that resulted from leaky
22              roof-mounted air conditioning units.
23      29. The members of the class are so numerous that joinder of all claims would be
24  impracticable.  While the exact number of class members is unknown to Plaintiff at this time,
25  Plaintiff is informed and believes, and on that basis alleges, that Defendant has sold thousands of
26  Sprinter vans with the roof-mounted air conditioning units in California.
27      30. Members of the class will be readily identifiable from Mercedes-Benz's business
28  records, which will demonstrate the individuals who purchased or leased Sprint vans.  The

disposition of their claims through this class action will benefit both the parties and the Court. Class members may be notified of the pendency of this action by published and/or mailed notice.

31. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action. Common questions of law and fact exist as to all members of the class. These common questions predominate over the questions affecting only individual class members. They include, but are not limited to, the following:

(a) Whether the leaks in and around the AC unit are the result of a design defect;

(b) Whether the leaks in and around the AC unit are the result of a manufacturing defect;

(c) Whether, as a result of Mercedes' misconduct as alleged herein, Plaintiff and members of the class are entitled to damages, restitution, injunctive relief, and other remedies, and, if so, the amount and nature of such relief.

32. Plaintiff's claims are typical of the claims of the other members of the class. Mercedes' conduct has caused Plaintiff and members of the class to sustain the same or substantially similar injuries and damages. Plaintiff has no interests antagonistic to the interests of the other members of the class. Plaintiff and all members of the class have sustained economic injury, including ascertainable loss and injury in fact, arising out of Mercedes' violations of law as alleged herein.

33. Plaintiff will fairly and adequately represent and protect the interests of the members of the class. Plaintiff is a member of the class and does not have any conflict of interest with other class members. Plaintiff has retained and is represented by competent counsel who are experienced in complex class action litigation, including product liability class actions such as the present action.

34. The nature of this action makes a class action the superior and appropriate procedure to afford relief for the wrongs alleged herein. Because the damages suffered by the individual class members are small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually. The

prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant, and would establish incompatible standards of conduct.  Further, a class action is in the interests of justice because many class members are likely unaware that Defendant's conduct is illegal, and lack the financial and informational resources to protect their rights.  Prosecution of this case as a class action would present far fewer management difficulties and provide the benefits of single adjudication, including economy of scale and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**(Product Liability)**
**(On behalf of Plaintiff and the Class against Defendant)**

35. Plaintiff incorporates the paragraphs alleged above as if fully set forth herein.

36. In California, a manufacturer may be held strictly liable in tort for placing a product on the market that is defective and that causes damage to property, including damage to other parts of the product.  (*Jimenez v. Super. Ct.* (2002) 29 Cal.4th 473, 483.)

37. Mercedes has, since at least 2007, manufactured and placed Sprinter vans with AC units on the market in California for the public to purchase.

38. These vans were defective in material, workmanship, and/or factory preparation; the Sprinter vans would experience water leaks through the AC units.  Investigations by Mercedes and the technical service bulletins issued by Mercedes state that the leaks can be caused by improper installation of the AC unit and defects in the sealant and/or the installation of the sealant used around the AC unit.

39. The vehicles also manifested a design defect—no matter what repairs were made, the AC unit would still leak water into the interior by virtue of a defect in the unit itself that would cause condensation to form when the unit was used at its maximum settings.

40. At no time did Mercedes ever disclose to the public, including Plaintiff or the members of the class, that the AC unit was prone to leak water into the interior of the van.  Mercedes knew that the Sprinter vans, and particularly the AC units, would be used without

11

1  inspection for defect.  Mercedes pre-installed the units in the vans that it sold, or otherwise
2  retrofitted vans with the AC units.  In fact, the defect only manifests itself when the AC units are
3  used at their maximum setting and/or after exposure to steady rain.  No reasonable inspection
4  would have revealed the defect, and Mercedes did not expect any consumer to take apart the AC
5  unit to inspect it prior to purchase.  Mercedes continued to sell Sprinter vans without
6  modification, knowing the defect in the AC unit remained and would go undetected at the time of
7  sale.

8      41.    As a result of these defects, water leaks into the interior of the Sprinter vans, where
9  it has destroyed cargo that was being transported in the van as well as the seating, roof, and walls
10  of the van, and any fixtures installed by owners.  The water has also resulted in the growth of
11  mold in the vans.  Plaintiff's customers are often transporting expensive electronic equipment.
12  When water dumps on this cargo, the damage is not only to Plaintiff's customers' property, but to
13  Plaintiff's goodwill.  As a result, on top of paying for repairs, Plaintiff often has to provide
14  compensation for property damage to customers, or comp entire transactions to remedy the
15  customers' inconvenience.  Plaintiff and members of the class have had to replace the damage
16  caused by the leaks at their own expense.

17      WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CAUSE OF ACTION
### (Actual Fraud)
### (On behalf of Plaintiff against Defendant)

21      42.    Plaintiff incorporates the paragraphs alleged above as if fully set forth herein.

22      43.    Plaintiff's business involves the large scale purchase of vehicles each year to add
to its fleet of rental vans.

24      44.    Mercedes has, since at least 2007, marketed Sprinter vans as the best commercial
vehicle in its class.  Mercedes leverages its reputation of "German engineering" to support a high
purchase price.

27      45.    Based on Mercedes' reputation and the apparent quality inherent in the Sprinter
vans, Plaintiff selected the Sprinter van as its flagship vehicle.

46. After Mercedes issued the second generation Sprinter van, Plaintiff began noticing that the AC units installed by Mercedes caused water to leak into the inside of the van.

47. When Plaintiff approached Mercedes about the leaks, Mercedes reassured Plaintiff that it had identified the problems that were causing the leaks, and that it would be taken care of. For instance in May 2009, Eric Gierst, Chrysler's Regional Fleet Service Manager, issued a "fix" that was supposed to resolve the problem of leaks occurring. In 2010, Mercedes issued a Technical Service Bulletin addressing how to fix the AC unit leaks. In August and September 2013, Mr. Laguana was assured by Mercedes' After Sales Technical and Operations Manager, Gale Young, that "[w]e have some progress, a new seal, new work instructions but there is another issue effecting the vehicles a leak caused by Condensation from the evaporator when running the AC of [sic] full cold with high blower settings. R&D in Germany is confirming a certain repair procedure that may be performed in addition to replacing a blower control relay." Despite these assurances, Mercedes knowingly made no modifications to the design, materials (including the sealant) or installation of the AC unit and the leaks continued.

48. Mercedes intended the representations that it would fix—or had fixed—the AC unit defect to induce Plaintiff and members of the class to continue to purchase subsequent model year Sprinter vans. Mercedes knew that had it revealed it would not cure the defect, Plaintiff would likely transition to competitor vehicles as the focal point of Plaintiff's business.

49. At the same time that Mercedes was actively reassuring Plaintiff, Mercedes more generally continued to represent that Sprinter vans were award-winning vehicles that were the best commercial vehicle in the segment, that constitute "a testament" to Mercedes-Benz's expertise in developing vehicles that make working easier, safer, and more efficient, and that continue "to set the industry standards for reliability and technological advancement." At all times, Mercedes intended that its reputation and marketing materials would induce Plaintiff to continue to purchase the Sprinter vans. Mercedes knew that disclosing the existence of an AC unit defect would detract from the Sprinter's appeal and result in Plaintiff switching to a competitor.

50. Plaintiff relied on the reputation of Mercedes and Mercedes' representations in selecting and continuing to select the Sprinter vans as the focal point of Plaintiff's business model. Even though Plaintiff knew that some of its vehicles had developed leaks, Plaintiff nonetheless continued to rely on Mercedes' reputation and repeated representations that fixes had been issued to resolve the problems associated with the design of the AC unit or its manufacture and installation. Given that Plaintiff had designed its business model and marketing around the Sprinter van, Plaintiff intends to continue to purchase Sprinter Vans if Mercedes would issue a permanent fix for the defects with the AC units.

51. As a result of Mercedes' fraudulent representations, Plaintiff has spent substantial sums to purchase Sprinter Vans with the AC unit and subsequently spent substantial sums to repair the damage caused when water leaked into the interior through and around the AC units. This damage included damage to the vehicle itself but also to cargo being transported in the vehicles, loss of use, loss of goodwill, and having to comp customers for their losses as well.

WHEREFORE, Plaintiff prays for relief as set forth below.

**THIRD CAUSE OF ACTION**
**(Unfair Competition – Unfair Business Practices)**
**(On behalf of Plaintiff and the Class against Defendant)**

52. Plaintiff incorporates the paragraphs alleged above as if fully set forth herein.

53. Business & Professions Code section 17200 *et seq.* (the "Unfair Competition Law" or "UCL") defines unfair competition to include any unlawful, unfair or fraudulent business act or practice. Unfair competition includes engaging in a business practice whose utility is outweighed by the harm it causes.

54. Mercedes has known about the propensity for AC units to leak and damage the interior of Sprinter vans as well as cargo being transported in the vans since, at the very least, 2010. Notwithstanding that knowledge, Mercedes has continued to sell and lease Sprinter vans with AC units installed without any change in the design, materials, workmanship or installation of the AC unit.

55. At the same time, Plaintiff and members of the class have suffered harm in continuing to take possession from Mercedes vans with defective AC units that cause water to leak into the vans' interior where it damages the ceiling, floorboards, seat cushions, and upholstery, as well as any cargo and anything else being transported in the vehicles, including any fixtures that were installed by the owners.

56. The utility of Mercedes' continued placing into commerce vehicles with defective AC units is minimal; at best, it represents a savings that inures to Mercedes strictly at the public's expense. Mercedes' continued placing into commerce vehicles with defective AC units has not benefited anyone but Mercedes.

57. Plaintiff could not have reasonably avoided its injuries. Ford Motor Company introduced the Ford Transit only in 2014. Until then, there was no alternative for the Sprinter, particularly for Plaintiff's purposes. Plaintiff had no choice if it were to continue with its business model but to continue to purchase Sprinter vans with the defective AC units and suffer the consequences. Though Plaintiff may have been aware of the defect, Mercedes repeatedly represented to Plaintiff that a fix had been issued and that the leaking resolved. Plaintiff relied on Mercedes' reputation and Mercedes' marketing, which touts the Sprinter vans as being the best in class and German-engineered. The only way that Plaintiff could have avoided its injury is if Mercedes had informed Plaintiff that the defect had not been addressed and Ford Motor had introduced the Transit earlier than it did.

58. Class members could not have reasonably avoided any injury because Mercedes has never informed the public generally regarding the propensity of the AC units to leak.

59. As a result of Mercedes' practices, Plaintiff and members of the class have suffered and will continue to suffer injury in fact and lost money or property. Specifically, Plaintiff and members of the class have spent substantial sums to purchase Sprinter vans with the AC unit and subsequently spent substantial sums to repair the damage caused when water leaked into the interior through and around the AC units. This damage included damage to the vehicle itself but also to cargo being transported in the vehicles.

WHEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CAUSE OF ACTION**
(Declaratory Relief)
**(On behalf of Plaintiff and the Class against Defendant)**

60. Plaintiff incorporates the paragraphs alleged above as if fully set forth herein.

61. An actual controversy has arisen between Plaintiff and members of the class, on the one hand, and Mercedes, on the other hand, as to their respective rights, remedies and obligations. Specifically, Plaintiff contends and Defendant denies, that:

(a) Sprinter vans equipped with AC units manifest a defect in the design of the AC unit that results in water leaking into the interior of the van;

(b) Sprinter vans equipped with AC units manifest a manufacturing defect that results in water leaking into the interior of the van;

(c) Mercedes is liable for damage to the vehicle and other property as a result of water leaking into the interior of the van through and around the AC units in Sprinter vans;

(d) Mercedes has known or should have known that the AC units were likely to allow water to leak into the interior of the Sprinter vans;

(e) That, despite knowing the AC units were likely to allow water to leak into the interior of Sprinter vans, Mercedes continued to market and put into commerce vehicles with defective AC units;

(f) That the benefit accruing to Mercedes from continuing to market and put into commerce vehicles with defective AC units is substantially outweighed by the harm caused the public; and

(g) That Mercedes has engaged in unfair business practices.

62. Plaintiff further alleges that Plaintiff and members of the class are entitled to recover the amounts they have paid for repairing the vans subsequent to a leak as well as any losses to other property resulting from the leak as alleged herein.

63. Accordingly, Plaintiff seeks a declaration as to the respective rights, remedies, and obligations of the parties.

WHEREFORE, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in favor of itself and the proposed Class for the following:

1. an order certifying the proposed class and appointing Plaintiff and its counsel to represent the Class;
2. injunctive and declaratory relief as pled or as the Court may deem proper;
3. an award of damages and restitution in favor of Plaintiff and the Class;
4. interest as allowable by law;
5. an award of reasonable attorneys' fees as provided by applicable law;
6. all costs of suit; and
7. such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 10, 2014

THE VEEN FIRM, P.C.
CHAVEZ & GERTLER LLP

By: /s/ Dan L. Gildor
      Dan L. Gildor

*Attorneys for Plaintiff and the Proposed Class*