1  THE VEEN FIRM, P.C.
   Anthony L. Label (Bar No. 205920)
2  Steven A. Kronenberg (Bar No. 215541)
   711 Van Ness Avenue, Suite 220
3  San Francisco, CA 94102
   Tel:   (415) 673-4800
4  Fax:   (415) 771-5845

5  CHAVEZ & GERTLER LLP
   Jonathan E. Gertler (Bar No. 111531)
6  Dan L. Gildor (Bar No. 223027)
   Samuel P. Cheadle (Bar No. 268595)
7  42 Miller Avenue
   Mill Valley, California 94941
8  Tel:   (415) 381-5599
   Fax:   (415) 381-5572

9
   *Attorneys for Plaintiff Digby Adler Group, LLC*
10 *and the Proposed Class*

11                **UNITED STATES DISTRICT COURT**

12               **NORTHERN DISTRICT OF CALIFORNIA**

13

14 DIGBY ADLER GROUP, LLC, dba          Case No. CV 14-02349 TEH
   BANDAGO LLC, on behalf of itself and all
15 others similarly situated,            CLASS ACTION
16
                          Plaintiff,     **PLAINTIFF'S OPPOSITION TO**
17 v.                                    **MERCEDES-BENZ USA, LLC'S**
                                         **MOTION TO DISMISS**
18 MERCEDES-BENZ U.S.A., LLC,
19
                          Defendant.     Date:   Dec. 1, 2014
20                                       Time:   10:00 a.m.
                                         Crtrm:  12
21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

3   I.     INTRODUCTION AND STATEMENT OF THE ISSUES ..................................................1

4   II.    RELEVANT FACTS ...........................................................................................................1

5   III.   ARGUMENT ......................................................................................................................2

6          A.     THE SAC STATES A CLAIM FOR PRODUCT LIABILITY ..............................2

7                 1.     The SAC Alleges Damage to Other Property ...............................................2

8                        a)     Damage to the Vans Constitutes Damage to Other Property...........3

9                        b)     The SAC Alleges Damage to Fixtures and Cargo, Which
                                Also Constitutes Damage to Other Property....................................4

10

11                2.     Mercedes' Assumption of the Risk Defense Does Not Bar
                         Plaintiff's Product Liability Cause of Action as a Matter of Law ...............5

12         B.     THE SAC STATES A CLAIM FOR UNFAIR BUSINESS PRACTICES ............7

13                1.     Plaintiff and Members of the Class Have Suffered a Cognizable
                         Injury as a Result of Mercedes' Unfair Business Practices .........................7

14

15                2.     The SAC Contains Allegations Demonstrating that Mercedes'
                         Business Practices Have Been Unfair............................................................9

16                       a)     It Is Enough for the SAC to Allege that the Utility of
                                Mercedes' Conduct Is Outweighed by the Harm to Class

17                              Members ..........................................................................................9

18                       b)     The SAC States a Claim Even under *Cel-Tech's* More
                                Stringent Standard..........................................................................11

19

20                3.     The SAC Need Not Allege that Mercedes' Had a Duty to Disclose
                         to State a Claim for Unfair Business Practices ..........................................12

21         C.     THE SAC ALLEGES A CLAIM FOR ACTUAL FRAUD..................................14

22         D.     THERE IS NO BASIS TO DISMISS THE DECLARATORY RELIEF
                  CAUSE OF ACTION ........................................................................................16

23

24  IV.    CONCLUSION................................................................................................................17

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                    Case No. 14-02349 TEH

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*1st United Bank v. Bank of Am., NA*, No. 10-22935-CIV,
   2011 WL 39088 (S.D. Fla. Jan. 5, 2011) ................................................................16

*Aguila v. Gen. Motors LLC*, No. 1:13-CV-00437-LJO-GSA,
   2013 WL 3872502 (E.D. Cal. July 25, 2013) ..........................................................11

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014) ...............................................................................9

*Anderson v. Baseball Club of Seattle*,
   542 Fed. App'x 618 (9th Cir. 2013) ...........................................................................5

*Benner v. Hooper*,
   112 Cal. App. 53 (1931) ....................................................................................14, 15

*Brady v. Carman*,
   179 Cal. App. 2d 63 (1960) ......................................................................................15

*Cady v. Anthem Blue Cross Life & Health Ins. Co.*,
   583 F. Supp. 2d 1102 (N.D. Cal. 2008) .....................................................................7

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) .......................................................................................2

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...........................................................................................9, 10

*Cholakyan v. Mercedes-Benz USA, LLC*,
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) ......................................................1, 7, 8, 13

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) .................................................................................13

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) .....................................................................................8

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) ..................................................................................12

*Custom LED, LLC v. eBay, Inc.*, No. C 12-00350 SI,
   2012 WL 1909333 (N.D. Cal. May 24, 2012)..........................................................16

*Daugherty v. American Honda Motor Company, Inc.*,
   144 Cal. App. 4th 824 (2006) ..................................................................................13

*Decker v. Mazda Motor of America*, No. SACV 11-0873 AG (MLGx),
   2011 WL 5101705 (C.D. Cal. Oct. 24, 2011)..........................................................13

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .......................................................................................8

*Donohue v. Apple, Inc.,*
    871 F. Supp. 2d 913 (N.D. Cal. 2012) .................................................................................... 14

*Drimmer v. WD-40 Co.*, No. 06-CV-900 W(AJB),
    2007 WL 2456003 (S.D. Cal. Aug. 24, 2007) .......................................................................... 8

*Duffin v. Honeywell Int'l, Inc.,*
    312 F. Supp. 2d 869 (N.D. Miss. 2004) .................................................................................... 4

*Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK,
    2013 WL 3187319 (N.D. Cal. June 21, 2013) ......................................................................... 14

*Fardella v. Downey Sav. & Loan Ass'n*, No. C 00-4393,
    2001 WL 492442 (N.D. Cal. May 9, 2001) ............................................................................. 10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    119 F.R.D. 344 (S.D.N.Y. 1988) .............................................................................................. 7

*Gen. Motors Corp. v. Garza,*
    179 S.W.3d 76 (Tex. App. 2005) .............................................................................................. 7

*Harlan v. Roadtrek Motorhomes, Inc.*, No. 07-CV-0686 IEG (BLM),
    2009 WL 928309 (S.D. Cal. Apr. 2, 2009) ............................................................................... 3

*Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB,
    2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) ......................................................................... 11

*In re NVIDIA GPU Litig.*, No. C 08-04312 JW,
    2009 WL 4020104 (N.D. Cal. Nov. 19, 2009) ........................................................................ 14

*In re Paxil Litig.,*
    212 F.R.D. 539 (C.D. Cal. 2003) .............................................................................................. 5

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products
    Liab. Litig.,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................................... 8

*Jimenez v. Superior Court,*
    29 Cal. 4th 473 (2002) ....................................................................................................... 2, 3, 4

*Johnson v. Geico Gen. Ins. Co.,*
    2008 WL 4793616 (S.D. Fla. Nov. 3, 2008) ........................................................................... 16

*Kenneth F. Hackett & Associates, Inc. v. GE Capital Info. Tech. Solutions, Inc.,*
    744 F. Supp. 2d 1305 (S.D. Fla. 2010) .................................................................................... 16

*Long v. Graco Children's Products Inc.*, No. 13-CV-01257-WHO,
    2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ........................................................................ 10

*Lozano v. AT & T Wireless Servs., Inc.,*
    504 F.3d 718 (9th Cir. 2007) ................................................................................................... 10

*Luque v. McLean,*
    8 Cal. 3d 136 (1972) ................................................................................................................. 5

-iii-

*Mappin v. Atchison, T. & S.F. Ry. Co.*,
  198 Cal. 733 (1926) ............................................................................................................ 6

*McGough v. Wells Fargo Bank, N.A.*, No. C12-0050 TEH,
  2012 WL 2277931 (N.D. Cal. June 18, 2012) .................................................................. 11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ............................................................................................ 2

*Motors, Inc. v. Times Mirror Co.*,
  102 Cal. App. 3d 735 (1980) ............................................................................................. 10

*Nat'l Oilwell Varco, L.P. v. Elite Coil Tubing Solutions, LLC*, No. 4:13-CV-00374,
  2013 WL 4735574 (S.D. Tex. Sept. 3, 2013) .................................................................... 3

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) .......................................................................................... 17

*Newman v. RCN Telecom Servs., Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) .......................................................................................... 6

*Parker v. District of Columbia*,
  478 F.3d 370 (D.C. Cir. 2007) ............................................................................................ 9

*Parks School of Business, Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) .............................................................................................. 2

*Price v. Philip Morris, Inc.*,
  219 Ill. 2d 182 (2005) ......................................................................................................... 6

*Progressive W. Ins. Co. v. Yolo Cnty. Super. Ct.*,
  135 Cal. App. 4th 263 (2005) ........................................................................................... 10

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) ............................................................................................ 6

*Saratoga Fishing Co. v. J.M. Martinac & Co.*,
  520 U.S. 875 (1997) ............................................................................................................ 4

*Schnall v. Hertz Corp.*,
  78 Cal. App. 4th 1144 (2000) ........................................................................................... 10

*Smith v. Ford Motor Company*,
  749 F. Supp. 2d 980 (N.D. Cal. 2010) .............................................................................. 13

*Spivey v. Adaptive Mktg. LLC*,
  622 F.3d 816 (7th Cir. 2010) .............................................................................................. 6

*Stallman v. Schwartz*,
  76 Cal. App. 2d 406 (1946) ............................................................................................... 15

*State of Cal. By & Through Dep't of Water Res. v. Oroville-Wyandotte Irr. Dist.*,
  409 F.2d 532 (9th Cir. 1969) ............................................................................................ 16

*Sullivan v. Helbing*,
  66 Cal. App. 478 (1924) .................................................................................................... 15

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                              Case No. 14-02349 TEH

*Tech. & Intellectual Prop. Strategies Grp. PC v. Fthenakis*, No. C 11-2373 MEJ,
   2011 WL 3501690 (N.D. Cal. Aug. 10, 2011) .......................................................................... 16

*Tomek v. Apple, Inc.*, No. 2:11-CV-02700-MCE-DAD,
   2012 WL 2857035 (E.D. Cal. July 11, 2012) ........................................................................... 3

*Tracy v. Smith*,
   175 Cal. 161 (1917) ................................................................................................................. 15

*Wade v. Tiffin Motorhomes, Inc.*,
   686 F. Supp. 2d 174 (N.D.N.Y. 2009) ..................................................................................... 4

*Wang v. OCZ Tech. Grp., Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) .............................................................................................. 8

*Webb v. Carter's*,
   272 F.R.D. 489 (C.D. Cal. 2011) .............................................................................................. 8

*Wells v. Zenz*,
   83 Cal. App. 137 (1927) ......................................................................................................... 14

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................................................ 13

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ................................................................................................................ 16

## STATUTES

Cal. Civ. Code § 1572 ................................................................................................................ 14

Cal. Civ. Code § 3523 .................................................................................................................. 1

## OTHER AUTHORITIES

Miller and Starr,
   California Real Estate (3d ed.) ................................................................................................ 14

## RULES

Fed. R. Civ. P. 57 ....................................................................................................................... 16

1   **I.      INTRODUCTION AND STATEMENT OF THE ISSUES**

2              Instead of joining the issue of whether it has installed defective optional rear-mounted air

3   conditioning units ("AC units") into its line of Sprinter passenger and cargo vans, Defendant

4   Mercedes-Benz U.S.A., LLC ("Mercedes") has filed a second dilatory motion to dismiss seeking

5   to disclaim any responsibility for the damage caused by the substantial amounts of water that leak

6   into the vans as a result of defects in the design, manufacture, and installation of the AC units.

7   But for every wrong, there is a remedy;[1] and installing an optional AC unit that costs upwards of

8   $3,000 that causes it to "rain" inside a vehicle is a quintessential wrong.  *See Cholakyan v.*

9   *Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1238 (C.D. Cal. 2011) ("it cannot be argued,

10  for example, that any car purchaser expects his vehicle's interior to experience periodic

11  flooding").  The allegations in the SAC are sufficient to support each and every claim asserted

12  therein, including the claims for product liability, unfair business practices, fraud, and declaratory

13  relief.  The Court, therefore, should deny Mercedes' motion and force Mercedes to answer for the

14  harm its defective AC units have caused consumers.

15  **II.     RELEVANT FACTS**

16             Mercedes recommends that consumers purchasing its Sprinter line of vans also purchase

17  optional AC units to enhance the comfort and wellbeing of passengers in the rear.  These AC

18  units are defective—they cause substantial amounts of water to leak into the vans.[2]  (SAC ¶¶ 37-

19  39.)  All that is required for such leaking to occur is that it rain.  (SAC ¶ 12.)  The leaks also occur

20  when the units are run at cold on the highest blower setting.  *Id.*

21             Mercedes has known about the propensity for the optional AC units to leak since it first

22  began installing them in the Sprinter vans in 2007.  (SAC ¶ 19.)  Nonetheless, Mercedes has

23  failed to take any decisive action to remedy the defects that cause the leaks.  Instead, Mercedes

24  _____

25  [1]  Cal. Civ. Code § 3523.

26  [2]  The internet is replete with testimonials about these leaks, which damage the vans as well as
    any fixtures that owners install in the vans, not to mention any cargo being transported in the
    vans.  The Court need only search for "sprinter van water leak" on youtube.com, or the Sprinter

27  owner forum at http://sprinter-source.com/forum/, to see videos and testimonials posted by
    Sprinter owners who have experienced it "raining" in their vans.  Once such video is available at

28  http://www.youtube.com/watch?v=2cVGXq3wi7M

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                    Case No. 14-02349 TEH

has continued to install the defective AC units into the Sprinter vans, leaving the customer to foot the bill for the damage caused by the leaks.

This Court should not allow Mercedes to continue to cheat customers this way. The Court should deny Mercedes' motion and allow this case to proceed on the merits.

## III.   <u>ARGUMENT</u>

In adjudicating a motion to dismiss pursuant to Rule 12(b)(6), the Court must take all allegations of material fact in the complaint as true, construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint should not be dismissed for failure to state a claim "unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). In this context, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In the present case, the SAC states a claim for product liability. The SAC also states claims for unfair business practices, fraud, and declaratory relief. Accordingly, the Court should deny Mercedes' motion.

### A.   THE SAC STATES A CLAIM FOR PRODUCT LIABILITY

Mercedes contends that the Court should dismiss Plaintiff's product liability cause of action because it is barred by the economic-loss doctrine and because Plaintiff purchased the vans with AC units while being fully aware of the defects therein. Neither of these contentions warrants dismissal.

#### 1.   <u>The SAC Alleges Damage to Other Property</u>

Mercedes' contends that the SAC does not adequately allege damage to "other property" so as to trigger the exception stated in *Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002) to the economic-loss rule, which would otherwise bar Plaintiff's claim. According to Mercedes, allegations of damage to the vans are insufficient. So too are allegations of damage to fixtures and cargo. Mercedes is incorrect.

2

a)    <u>Damage to the Vans Constitutes Damage to Other Property</u>

The damage done by the AC units to the vans themselves constitutes damage to "other property."  *See Jimenez*, 29 Cal. 4th at 484 (holding that economic loss rule "does not bar a homeowner's recovery in tort for damage that a defective window causes to other parts of the home in which it has been installed").  The rule is that a final product—like the Sprinter van—is considered to be "other property" as long as the component—the AC unit—is separately bargained for.  *Nat'l Oilwell Varco, L.P. v. Elite Coil Tubing Solutions, LLC*, No.  4:13-CV-00374, 2013 WL 4735574, at *4 (S.D. Tex. Sept. 3, 2013) ("When a product or machinery is damaged by the failure of a component part, the product or machinery is considered 'other property' when 'the parties bargained separately for individual components' of the product or machinery.").

Though Mercedes contends that the automobiles at issue in the present case with their optional AC units are distinguishable from the mass-produced homes at issue in *Jimenez* and the defective windows installed therein, any distinction is without a difference.  After all, in both cases, a finished product—the mass-produced homes in *Jimenez* and the Sprinter vans in the present case—was damaged by a component installed therein—the windows in *Jimenez* and the optional AC unit in the present case.  *Jimenez* is squarely on point, particularly in light of the fact that the AC units are separately bargained for.  *Varco*, 2013 WL 4735574, at *4.

The cases upon which Mercedes relies do not commend a different result.[3]  *Harlan v. Roadtrek Motorhomes, Inc.*, No. 07-CV-0686 IEG (BLM), 2009 WL 928309 (S.D. Cal. Apr. 2, 2009) directly conflicts with the rule stated in *Varco* and was likely wrongly decided.  *Tomek v. Apple, Inc.*, No. 2:11-CV-02700-MCE-DAD, 2012 WL 2857035 (E.D. Cal. July 11, 2012) is inapposite.  As an initial matter, there is no indication in *Tomek* whether the laptop battery that the plaintiff contended was "other property" was separately bargained for.  *See* 2012 WL 2857035, at *7.  Moreover, the court in *Tomek* left unanswered the question presented in the instant case.

---

[3]  As discussed, *infra*, the cases are also distinguishable because unlike the plaintiffs in those cases, who did not allege any damage to property aside from the finished product, the SAC here alleges damage to fixtures and cargo, which constitutes prototypical "other property."

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                    Case No. 14-02349 TEH

While the court in *Tomek* held that the laptop battery does not constitute other property in relation to the laptop as a whole, it is not clear that the court would have held in a case analogous to the present case that the laptop would not constitute other property in relation to a defective battery.

In sum, Mercedes has not presented any convincing authority suggesting that *Jimenez* should not be applied in the present case. Accordingly, the Court should deny Mercedes' motion.

b) <u>The SAC Alleges Damage to Fixtures and Cargo, Which Also Constitutes Damage to Other Property</u>

In its motion, Mercedes dismisses the SAC's allegations that the leaking AC units damage cargo and other fixtures. But Mercedes has not presented the Court with any authority to support the proposition that damage to fixtures and transported cargo does not constitute damage to "other property." This is not surprising given that the authorities all hold that fixtures installed into vehicles, such as higher quality seating, video screens, power inverters, upgraded stereos, and walls to separate passengers from cargo, as well as the cargo transported in the vans, constitute prototypical "other property." *See Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 877 (1997) (holding that equipment added by a user constitutes "other property"); *see also Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 189 (N.D.N.Y. 2009) ("the property inside of the motor home is property separate and apart from the motor home"). In alleging damage to such property, the SAC states a claim for product liability. *Jimenez*, 29 Cal. 4th at 484.

The fact that the SAC does not specifically identify what fixtures and cargo have been damaged is of no consequence. Rule 8 does not require such specificity for a product liability claim. *See Duffin v. Honeywell Int'l, Inc.*, 312 F. Supp. 2d 869, 872 (N.D. Miss. 2004) ("A complaint does not need a great deal of specificity to convey that plaintiffs are seeking to hold retailers liable under a strict products liability theory.") It suffices that the SAC alleges that the water introduced into the interior by the optional AC units damages the fixtures installed by owners—particularly by Plaintiff—and the cargo that might be transported by any other owner.[4]

---

[4]  Mercedes contends that the SAC's allegations of damage to other property are insufficient because plaintiff can invoke the "other property" exception, "if at all, only for those specific Sprinter vans in which 'other property' was actually damaged." So what? The SAC alleges actual damage. It is not clear what more Mercedes would have Plaintiff allege in order to be able to state a claim for such damages. The cases on which Mercedes relies are inapposite. *In re Paxil*

1    Mercedes' focus on the SAC's "failure" to allege facts showing "how the unidentified

2    'cargo' [or fixtures] was allegedly damaged" is similarly misplaced. (*See* Opp'n at 17.) The SAC

3    plainly alleges that "[t]he leaks," i.e., the water entering into the vans, "damage cargo and

4    anything else being transported in the vehicles, including any fixtures that were installed by the

5    owners." (SAC ¶ 2.) It is common sense that water damages most things with which it comes in

6    contact. In any event, the SAC alleges that the water causes mold and renders the vans unusable

7    for some period of time while they are left to dry and air out. (SAC ¶¶ 2, 12.) There is nothing

8    more that is required to meet the plausibility standard.

9        Finally, the fact that the other property that forms the basis for the exception to the

10   economic loss rule must be owned by the party alleging damage does not alter the conclusion that

11   the SAC states a claim. While the damages to be awarded to Plaintiff may be limited only to the

12   damage to Plaintiff's property, the SAC alleges damage to such property—namely the fixtures

13   Plaintiff has installed in the vans. In sum, the SAC states a claim for product liability such that

14   the Court should deny Mercedes' motion.

15       2.    **Mercedes' Assumption of the Risk Defense Does Not Bar Plaintiff's**
             **Product Liability Cause of Action as a Matter of Law**

16

17       Mercedes contends in its motion that "common sense and basic fairness" bars Plaintiff

18   from any recovery on the product liability claim. (Opp'n at 17.) While Mercedes couches the

19   defense in terms of equity, this defense is nothing more than an "assumption of risk" defense.

20       "Ordinary contributory negligence does not bar recovery in a strict liability action."

21   *Luque v. McLean*, 8 Cal. 3d 136, 145, 501 P.2d 1163, 1169-70 (1972). "The only form [of]

22   plaintiff's negligence that is a defense to strict liability is that which consists in Voluntarily [sic]

23   and unreasonably proceeding to encounter a known danger, more commonly referred to as

24   assumption of risk." *Ibid.* "For such a defense to arise, the user or consumer must become aware

25   of the defect and danger and still proceed unreasonably to make use of the product." *Ibid.*

26   *Litig.*, 212 F.R.D. 539 (C.D. Cal. 2003) involved a motion for class certification, not a motion to
     dismiss for failure to state a claim. *Anderson v. Baseball Club of Seattle*, 542 Fed. App'x 618
27   (9th Cir. 2013) involved a motion for summary judgment on a section 1983 claim for alleged due
     process violations, which bears no relation to a product liability claim based on defects that
28   inevitably damage other property.

---

5

1      Though affirmative defenses "may be considered properly on a motion to dismiss," they

2    may be considered only "where the allegations in the complaint suffice to establish the defense."

3    *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotations omitted).

4      In the present case, the SAC's allegations—which must be accepted as true—do not

5    suffice to establish the assumption of risk defense.  *See Mappin v. Atchison, T. & S.F. Ry. Co.*,

6    198 Cal. 733, 742, 247 P. 911, 915 (1926) (question of assumption of risk becomes a question of

7    law for the court only "when the evidence in the case is clear, direct, and undisputed").  Rather,

8    the opposite is true—the allegations rebut the application of the assumption of risk defense.

9    Those allegations include the allegations in the SAC that Plaintiff believed that Mercedes would

10   fix the problem after the leaks were reported.  (SAC ¶ 15.)  The SAC further alleges that

11   Mercedes informed Plaintiff at various times that Mercedes had identified the problem and issued

12   fixes for it.  (SAC ¶ 16.)  Plaintiff further believed that Mercedes would honor its word and

13   address the defective AC units in the following model year, as Mercedes had done with other

14   issues in the past.  (SAC ¶¶ 15, 16.)  Plaintiff has continually relied on Mercedes' reputation and

15   representations that the defects in the AC unit would be fixed and had no way of knowing that

16   Mercedes would not live up to its word or reputation.  (SAC ¶ 22.)  Plaintiff had heavily invested

17   in the Sprinter as its flagship vehicle and could not reasonably discontinue its annual purchase of

18   the vans, particularly as long as Mercedes held a monopoly on the niche filled by the Sprinter

19   vans.  (*Id.*)  These allegations are sufficient to rebut the assumption of risk defense at least at the

20   pleadings stage.

21      Once again, the cases upon which Mercedes relies are inapposite and distinguishable.

22   None of them address product liability; instead the cases all involve warranty and deceptive

23   business practice claims and defenses specific to those claims, such as the voluntary-payment

24   doctrine, that are inapposite to a product liability claim.  *See Spivey v. Adaptive Mktg. LLC*, 622

25   F.3d 816, 823 (7th Cir. 2010) (applying voluntary-payment doctrine in dismissing breach of

26   contract claim); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006)

27   (applying voluntary-payment doctrine); *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 278, 848

28   N.E.2d 1, 57 (2005) (no damages as a result of misrepresentations where plaintiff continued to

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                     Case No. 14-02349 TEH

purchase cigarettes); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 119 F.R.D. 344, 348 (S.D.N.Y. 1988) *aff'd,* 903 F.2d 176 (2d Cir. 1990) (materiality and reliance "crucial in any fraud case" undermined by conduct); *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 83 (Tex. App. 2005) (breach of warranty claim).

In sum, there is no basis for the Court to dismiss Plaintiff's product liability claim.[5]

## B.   THE SAC STATES A CLAIM FOR UNFAIR BUSINESS PRACTICES

Mercedes contends that the Court should dismiss the third cause of action for unfair business practices because it is precluded under prevailing law.  According to Mercedes, the SAC fails to state a claim for unfair business practices because (1) the SAC does not allege a cognizable injury, (2) the SAC does not allege a duty to disclose, (3) the SAC does not allege that Mercedes' practices are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and (4) the SAC generally does not allege any facts that would support a finding under the applicable legal standards that Mercedes' practices are unfair within the meaning of the UCL.  Mercedes' contentions are all wrong.

### 1.   Plaintiff and Members of the Class Have Suffered a Cognizable Injury as a Result of Mercedes' Unfair Business Practices

Mercedes contends that its practice of installing defective optional AC units in Sprinter vans is not unfair because a consumer does not suffer a legally cognizable injury when purchasing a "defective" product.  (Opp'n at 13-14.)  Mercedes is wrong.

As an initial matter, the installation by Mercedes of a defective AC unit that causes water to leak into the vans—particularly an AC unit that costs upwards of $3,000—constitutes injury.  As noted previously, a vehicle that leaks water "does not function as expected."  *Cholakyan*, 796 F. Supp. 2d at 1238.  As such, there is an actual and measurable loss incurred by each class member that purchased a Sprinter van into which Mercedes installed a defective AC unit.  *Ibid*;

---

[5]  Plaintiff requests leave to amend to the extent that the Court would require that Plaintiff plead damage to "other property" with more specificity.  Notwithstanding this request for leave to amend, Plaintiff believes that requiring such specificity elevates form over substance.  *Cady v. Anthem Blue Cross Life & Health Ins. Co.*, 583 F. Supp. 2d 1102, 1108 (N.D. Cal. 2008) (denying motion to dismiss because doing so at the pleading stage "would elevate form over substance").

7

1   *see also Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (holding that plaintiff had

2   standing through purchase of a defective vehicle).

3         Notwithstanding the quintessential harm that Plaintiff and class members have incurred in

4   taking delivery of a vehicle whose AC unit leaks, the SAC also alleges that the defective AC units

5   have caused water to leak into the interior of Sprinter vans, causing property damage, loss of use

6   during repairs, and loss of goodwill.  (SAC ¶¶ 2, 12.)  Such losses constitute harm against which

7   the utility of Mercedes' practices must be balanced.  *See Cholakyan*, 796 F. Supp. 2d at 1238; *In*

8   *re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*,

9   754 F. Supp. 2d 1145, 1162 (C.D. Cal. 2010); *accord Cole*, 484 F.3d at 723; *Wang v. OCZ Tech.*

10  *Grp., Inc.*, 276 F.R.D. 618, 625 (N.D. Cal. 2011).

11        The cases upon which Mercedes relies are distinguishable.  For instance, in *Webb v.*

12  *Carter's*, 272 F.R.D. 489 (C.D. Cal. 2011), the issue was whether injury arose with the purchase

13  of certain no-tag clothing that only caused allergic reactions in some children with sensitive skin.

14  *Webb*, at 498.  By contrast, the injury in the present case is not conditioned on any variable

15  characteristic among Sprinter owners.  Rather, as in *Cole*, 484 F.3d 717, the defects at issue here

16  inevitably damage the vans, fixtures, and cargo—a critical factor that distinguishes *Webb*.[6]  *See*

17  *Webb*, at 498.

18        *Drimmer v. WD-40 Co.*, No. 06-CV-900 W(AJB), 2007 WL 2456003 (S.D. Cal. Aug. 24,

19  2007) is also inapposite.  In that case, the court held that class certification was not warranted

20  because not everyone who purchased a 2000 Flushes product "*ipso facto* suffer[ed] injury."  In

21  the context of that case, however, the court was referring to damages, not injury in fact.  2007 WL

22  2456003, at *2.  Notably, an entitlement to damages is conceptually different from the question of

23  whether a plaintiff has suffered injury.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264-65 (2d

24  Cir. 2006) ("an injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable

25  of sustaining a valid cause of action under applicable . . . law"); *Cole*, 484 F.3d at 723 ("Whether

26

27      [6]  The SAC alleges that all that is necessary for the defects to manifest is that it rain, or that the
    units are run at their maximum setting.  (SAC ¶¶ 12, 40.)  In other words, it is inevitable that the

28  AC units will leak.

8

recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."); *see also Parker v. District of Columbia,* 478 F.3d 370, 377 (D.C. Cir. 2007).

Mercedes' contention that Plaintiff cannot have been damaged because it is "common sense that making repeat purchases indicates that the customer's expectations have been met" is misplaced.  That proposition fails in the present context given that Plaintiff had no choice given its investment but to continue to purchase the Sprinter vans.  (SAC ¶ 22.)  Moreover, the proposition fails in the context of Plaintiff's practice of purchasing all of its vehicles for each new model year at once.  Finally, the case upon which Mercedes relies for this proposition—*Algarin v. Maybelline, LLC,* 300 F.R.D. 444, 454 (S.D. Cal. 2014)—is inapposite given that the claim in that case was a CLRA claim, not a claim for an unfair business practice.

In sum, the SAC sets forth sufficient allegations that Plaintiff and the class have suffered cognizable injury such as to state a claim for unfair business practices pursuant to the UCL.

2.   **The SAC Contains Allegations Demonstrating that Mercedes' Business Practices Have Been Unfair**

Mercedes contends that in order for the SAC to state a claim for unfair business practices, the SAC must allege that the practice of installing defective AC units in Sprinter vans is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  But that is not the only standard against which Mercedes' business practices are to be measured.  The "fairness" of business practices may also be measured by weighing the utility of defendant's conduct against the gravity of the harm to consumers.  Contrary to Mercedes' contention, the California Supreme Court did not in *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 973 P.2d 527 (1999) overrule the application of this type of "balancing test" in the present context.  However, even if it did, the SAC sets forth sufficient allegations to state a claim under the *Cel-Tech* rule.

a)   It Is Enough for the SAC to Allege that the Utility of Mercedes' Conduct Is Outweighed by the Harm to Class Members

To state a claim for non-fraudulent unfair business practices, it is sufficient to allege that Mercedes has engaged in business practices the utility of which is outweighed by the harm those

9

1   practices have caused consumers, what Mercedes call the "balancing test."  *Long v. Graco*

2   *Children's Products Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *8-9 (N.D. Cal. Aug.

3   26, 2013); *accord Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740, 162 Cal. Rptr.

4   543, 546 (1980) ("The court must weigh the utility of the defendant's conduct against the gravity

5   of the harm to the plaintiff a weighing process quite similar to the one enjoined on us by the law

6   of nuisance.").

7        Though allegations that acts are immoral, unethical, oppressive, unscrupulous, or

8   substantially injurious to consumers can form the basis for an unfair prong claim under the UCL,

9   such allegations are not the exclusive basis for such a claim.  *E.g.*, *Fardella*, 2001 WL 492442, at

10   *3 (noting that the balancing test is "[a]n alternative definition").  After all, "'unfairness' is an

11   equitable concept that cannot be mechanistically determined."  *Schnall v. Hertz Corp.*, 78 Cal.

12   App. 4th 1144, 1167, 93 Cal. Rptr. 2d 439, 456 (2000).  Accordingly, if a pleading "states a prima

13   facie case of harm, having its genesis in an apparently unfair business practice, the defendant

14   should be made to present its side of the story."  *Ibid.*

15        Mercedes' contention that the California Supreme Court rejected the use of the "balancing

16   test" in the present context in *Cel-Tech* is incorrect.  Though the California Supreme Court did

17   reject the use of the balancing test in the context of antitrust cases, the Court did so strictly in the

18   context of such actions, specifically holding that "[n]othing we say relates to actions by

19   consumers."  *Cel-Tech.*, 20 Cal. 4th at 187, n.12.  Within the Ninth Circuit, the "balancing test"

20   remains as vital as before *Cel-Tech.  Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736

21   (9th Cir. 2007); *accord Progressive W. Ins. Co. v. Yolo Cnty. Super. Ct.*, 135 Cal. App. 4th 263,

22   286, 37 Cal. Rptr. 3d 434, 453 (2005) ("We conclude that the balancing test should continue to

23   apply in consumer cases."); *Fardella v. Downey Sav. & Loan Ass'n*, No. C 00-4393, 2001 WL

24   492442, at *3, n.3 (N.D. Cal. May 9, 2001) ("The California Supreme Court's adoption of a more

25   precise definition of 'unfair' in the context of anti-competitive practices in *Cel–Tech* did not

26   overturn the appellate court 'unfair' definitions that relate to other kinds of unfair competition

27   violations.").

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS         Case No. 14-02349 TEH

1    In the present case, the SAC alleges that Mercedes has installed and continues to install

2    defective AC units in its Sprinter line of vehicles despite the fact that Mercedes knows about the

3    defects in those units.  Customers who purchase these vehicles are injured whenever it rains or the

4    units are run at the highest setting and water leaks into the interior of the vans.  This harm

5    outweighs any purported benefit to Mercedes, which at all times has had reasonable alternatives

6    to placing the defective AC units in the stream of commerce.

7    Such allegations are sufficient to state a claim for unfair business practices.  For instance,

8    in *Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 WL

9    2861160 (S.D. Cal. Feb. 13, 2012), the court denied a motion to dismiss a cause of action under

10   the unfair prong where the plaintiff alleged that defendant continued to sell defective phones after

11   learning about the defect and otherwise misled Plaintiff about the defect.  2012 WL 2861160, at

12   *11.  The court held that the harm to the plaintiff outweighed any purported benefit to defendant,

13   which had at all times reasonable alternatives to placing defective phones in the stream of

14   commerce.  *Ibid*.  The same outcome held in *Aguila v. Gen. Motors LLC*, No. 1:13-CV-00437-

15   LJO-GSA, 2013 WL 3872502 (E.D. Cal. July 25, 2013).  In that case, the court denied a motion

16   to dismiss a claim for violation of the UCL's prohibition of unfair practices where the defendant

17   sold vehicles with steering defects that could result in injury.  2013 WL 3782502, at *7.  In sum,

18   the SAC states a claim for unfair business practices under the UCL.

     b)    The SAC States a Claim Even under *Cel-Tech's* More Stringent
           Standard

19

20   As demonstrated above, the SAC states a claim for unfair business practices.  This is true

21   even if the Court were to apply the "more stringent" test from *Cel-Tech*.  That test requires that

22   there be substantial consumer injury that is not outweighed by countervailing benefits to

23   consumers or competition and that the injury was not reasonably avoidable.  *McGough v. Wells*

24   *Fargo Bank, N.A.*, No. C12-0050 TEH, 2012 WL 2277931, at *6 (N.D. Cal. June 18, 2012).  The

25   allegations noted above satisfy these requirements.

26   On reply, Mercedes is likely to respond that Plaintiff's injury is one that could have been

27   reasonably avoided given that Plaintiff was aware of the leaks.  But as discussed *supra*, Mercedes

28

11

1    repeatedly represented to Plaintiff that a fix had been issued and that the leaks resolved.  In fact,

2    the part of Mercedes' conduct that renders it so unfair is that it sought to reassure Plaintiff even

3    when the fixes would prove to be inadequate.  Moreover, the Sprinter market has until recently

4    been captive, giving Mercedes an effective monopoly.  (SAC ¶ 57.)  In light of that monopoly,

5    Plaintiff and members of the class had no reasonable option available to them.

6            In sum, Plaintiff has adequately alleged that Mercedes engaged in unfair business

7    practices in violation of the UCL.  The Court, therefore, should deny Mercedes' motion with

8    regard to that cause of action.

9                    3.    **The SAC Need Not Allege that Mercedes' Had a Duty to Disclose to**
                           **State a Claim for Unfair Business Practices**

10

11           Mercedes contends that its conduct cannot be unfair because it had no duty to disclose the

12   defects in the AC units in light of the fact that Plaintiff was well aware of the propensity for the

13   AC units to leak.  This contention is misplaced given that the unfairness in the present case arises

14   from Mercedes' continued and ongoing installation of the optional AC units in each subsequent

15   Sprinter van model year despite its knowledge that the AC units were defective.  The unfairness

16   of this conduct has nothing to do with whether Mercedes had a duty to disclose or whether

17   Plaintiff was aware of defects in prior model years.  (*See infra* section III.B.2.)  Mercedes cannot

18   import the requirements for a fraudulent business to be unfair where the underlying unfairness is

19   not based on any fraud.

20           But even if Mercedes' conduct could only be considered unfair if it had a duty to disclose

21   the defects, the SAC alleges sufficient facts to establish that Mercedes has such a duty.  Notably,

22   Mercedes only focuses on one of the bases for establishing a duty to disclose—whether the

23   defendant has exclusive knowledge of material facts not known or reasonably accessible to the

24   plaintiff.  But there are three other bases for establishing a duty to disclose: (1) when the

25   defendant is the plaintiff's fiduciary; (2) when the defendant actively conceals a material fact from

26   the plaintiff; and (3) when the defendant makes partial representations that are misleading because

27   some other material fact has not been disclosed.  *Collins v. eMachines, Inc.,* 202 Cal. App. 4th

28   249, 255–56 (2011) (modified) (citing *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 336 (1997)).

1    As an initial matter, there should be no dispute that the fact that the AC units that

2    Mercedes installs in Sprinter vans cause water to inundate the inside of a vans is perforce a

3    material fact. *Cholakyan*, 796 F. Supp. 2d at 1238; *see also Decker v. Mazda Motor of America*,

4    No. SACV 11-0873 AG (MLGx), 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011) ("[i]t makes

5    logical sense that the average consumer would expect the manufacturer to disclose significant

6    defects of any nature that arise within the warranty period").

7    Mercedes' contention that it did not have exclusive knowledge given Plaintiff's awareness

8    of the propensity for the AC units to leak ignores the fact that the SAC alleges that Plaintiff was

9    effectively ignorant of this propensity in each ensuing model year until after the leaks developed.

10   Only Mercedes knew that it was not implementing a fix in each model year; in fact, it

11   communicated the exact opposite to Plaintiff.  (SAC ¶ 16.)  Accordingly, Mercedes had a duty to

12   disclose whether or not it had fixed the leaking—particularly to Plaintiff—given that Mercedes

13   had exclusive knowledge of whether it had in fact done so.

14   But even if the Court finds that Mercedes did not have exclusive knowledge, the SAC

15   nonetheless alleges sufficient facts to establish the second and third grounds for a duty to disclose

16   to exist, namely that Mercedes actively concealed the fact that the AC units leak and that it made

17   partial misleading representations regarding the AC units.  (SAC ¶¶ 16, 20-21.).

18   Mercedes contends that cases such as *Daugherty v. American Honda Motor Company,*

19   *Inc.*, 144 Cal. App. 4th 824 (2006), *Smith v. Ford Motor Company*, 749 F. Supp. 2d 980 (N.D.

20   Cal. 2010), *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), and *Wilson v.*

21   *Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) dictate a conclusion that there is no duty to

22   disclose in the present case regardless of the allegations.

23   *Daugherty* and its progeny, however, are inapposite given that all those cases concern a

24   latent defect that manifested only *after* the warranty period expired.  In the present case, there is

25   nothing to suggest that the leaks only occur after the warranty period for the Sprinter vans expires.

26   Rather, the leaks occur whenever it rains or the AC units are run at cold on their highest setting—

27   all within the applicable warranty period.  *Daugherty* and its progeny, therefore, are inapposite.

28   *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104, at *10 (N.D. Cal. Nov. 19,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                    Case No. 14-02349 TEH

1   2009) ("The cases cited by Defendant to show the absence of a duty are inapposite because those

2   cases all dealt with product failures that manifested after the warranty period expired."); *see also*

3   *Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2013 WL 3187319, at *12 (N.D. Cal.

4   June 21, 2013) ("Several district court decisions agree that *Wilson* does not preclude non-safety

5   based omission claims for malfunctions during the warranty period."); *Donohue v. Apple, Inc.*,

6   871 F. Supp. 2d 913, 926 (N.D. Cal. 2012) (finding *Wilson* and related cases materially

7   distinguishable where defect manifests within warranty period).

8       In sum, the SAC states a claim for unfair business practices even if the predicate for such

9   a cause of action is a duty to disclose.

10       **C.**    **THE SAC ALLEGES A CLAIM FOR ACTUAL FRAUD**

11       Mercedes contends that the SAC fails to state a claim for actual fraud.  According to

12   Mercedes, the SAC does not set forth any statements by Mercedes that are patently false.

13       As an initial matter, Mercedes' exclusive focus on its representations—false or

14   otherwise—is misplaced given that fraud, in California, is not only actionable in the context of

15   "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true," it

16   is also actionable in the context of "[a]ny other act fitted to deceive."  Cal. Civ. Code § 1572(5).

17   Accordingly, "any wrongful act that deceives another party to that party's detriment is an

18   appropriate basis for recovery, even in the absence of one of the traditional elements of a fraud

19   cause of action, either on the basis of a general fraud, or more appropriately, on proof of deceit."

20   Miller and Starr, California Real Estate § 1:124 (3d ed.).

21       As the Court of Appeal noted in *Wells v. Zenz*, 83 Cal. App. 137, 256 P. 484 (1927),

22   "[f]raud is a generic term which embraces all the multifarious means which human ingenuity can

23   devise and are resorted to by one individual to get an advantage over another."  *Wells*, 83 Cal.

24   App. at 140, 256 P. at 485.  Accordingly, "[n]o definite and invariable rule can be laid down as a

25   general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and

26   unfair ways by which another is deceived."  *Id.*; *accord Benner v. Hooper*, 112 Cal. App. 53, 58,

27   296 P. 660, 662 (1931) ("No hard and fast rule can be laid down as to what constitutes a

28   fraudulent representation in any given case, since this depends upon the peculiar circumstances

    

1    and conditions involved.").  In this connection, it is not necessary that a party's representations be

2    a direct lie in order to constitute remediable fraud.  *Benner*, at 58.  "[T]he false representation

3    may consist in a deceptive answer, or any other indirect but misleading language."  *Id.*; *accord*

4    *Brady v. Carman*, 179 Cal. App. 2d 63, 68, 3 Cal. Rptr. 612, 615 (1960) ("A representation need

5    not be a *direct falsehood* to constitute fraud." (emphasis original)).

6           The SAC in the present case alleges that Mercedes deceived Plaintiff though a series of

7    statements that never fully addressed Plaintiff's inquiries and requests that Mercedes fix the

8    leaks.[7]  (SAC ¶ 16.)  As the Court of Appeal explained in *Sullivan v. Helbing*, 66 Cal. App. 478,

9    483, 226 P. 803, 805 (1924), "[t]hough one may be under no duty to speak as to a matter, if he

10   undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state

11   truly what he tells, but also not to suppress or conceal any facts within his knowledge which

12   materially qualify those stated."  *Sullivan*, 66 Cal. App. at 483.  "If he speaks at all, he must make

13   a full and fair disclosure."  *Id.*

14          Notwithstanding this admonition, Mercedes never made a full and fair disclosure to

15   Plaintiff about the nature and extent of the defects in the AC units, or about what Mercedes was

16   going to do to cure those defects, or that the defects remained unresolved in each ensuring model

17   year.  As such, the SAC sets forth all that is required to state a claim for fraud.  *Stallman v.*

18   *Schwartz*, 76 Cal. App. 2d 406, 411, 173 P.2d 388, 390 (1946); *see also Tracy v. Smith*, 175 Cal.

19   161, 165, 165 P. 535, 537 (1917) ("The fraudulent vendor cannot escape from liability by asking

20   the law to applaud his fraud and condemn his victim for his credulity.").

21   ///

22   ///

23   ///

---

24

25   [7]  Contrary to Mercedes' contention, the SAC also adequately alleges the intent to deceive given
     that such intent is implied by the law.  *See Benner*, 112 Cal. App. at 53, 59, 296 P. at 663 ("When
26   the evidence shows a false representation, and that the person making such representation knew it
     was false, the law supplies the fraudulent intent.").  In the present case, the SAC evinces
27   Plaintiff's dissatisfaction with the AC units and the leaks.  Mercedes knew this through Plaintiff's
     repeated requests that Mercedes address the leaks.  The "intent to deceive," therefore, was
28   "necessarily involved" in Mercedes conduct in responding to (as well as ignoring) Plaintiff's
     requests.  *Id.*

---

15

### D.   THERE IS NO BASIS TO DISMISS THE DECLARATORY RELIEF CAUSE OF ACTION

Mercedes contends that the Court should dismiss Plaintiff's cause of action for declaratory relief because the relief sought is the same relief sought in Plaintiff's other substantive causes of action.  According to Mercedes, "courts routinely dismiss declaratory relief claims where, like here, they duplicate the relief sought under companion substantive claims."  (Mot. at 18.)

What Mercedes does not tell the Court is that the cases in which courts have dismissed declaratory relief claims are all cases involving breach of contract.  The two cases Mercedes cites—*Tech. & Intellectual Prop. Strategies Grp. PC v. Fthenakis*, No. C 11-2373 MEJ, 2011 WL 3501690 (N.D. Cal. Aug. 10, 2011) and *Custom LED, LLC v. eBay, Inc.*, No. C 12-00350 SI, 2012 WL 1909333 (N.D. Cal. May 24, 2012)—both involve breach of contract causes of action; and the only cases that Plaintiff has been able to find in which this issue even arises are breach of contract actions.  The present case, obviously, is not based on a breach of contract.

What Mercedes also does not tell the Court is that dismissing a "duplicative" declaratory relief cause of action is left entirely to the court's discretion,[8] and that many courts have exercised that discretion to deny motions to dismiss potentially duplicative declaratory relief causes of action, even in the context of a breach of contract action.  *See, e.g.*, *Johnson v. Geico Gen. Ins. Co.*, 2008 WL 4793616 (S.D. Fla. Nov. 3, 2008).  These courts have exercised their discretion in this way because they have recognized that a plaintiff may lose the breach of contract cause of action but still be entitled to some declaratory relief.  *Kenneth F. Hackett & Associates, Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010) (finding declaratory relief to not be duplicative because plaintiff could lose on breach of contract claim and still be entitled to declaratory relief); *1st United Bank v. Bank of Am., NA*, No. 10-22935-CIV, 2011 WL 39088, at *3 (S.D. Fla. Jan. 5, 2011) (same).

---

[8]  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  Such discretion is embodied in Rule 57 of the Federal Rules of Civil Procedure, which specifically authorizes a declaratory relief cause of action even though there is an alternate, adequate, and equally effective remedy.  Fed. R. Civ. P. 57; *accord State of Cal. By & Through Dep't of Water Res. v. Oroville-Wyandotte Irr. Dist.*, 409 F.2d 532, 535 (9th Cir. 1969).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                    Case No. 14-02349 TEH

1      Given that it is too early to determine that the declaratory relief cause of action will not be

2   meaningful in this case, the Court here should exercise its discretion and deny the motion to

3   dismiss. The Court could always decline to enter a declaratory judgment at a future date if there

4   truly is no point to such a judgment. In the interim, maintaining the cause of action will not

5   unduly consume any judicial resources or jeopardize judicial economy, particularly given that the

6   present case does not duplicate any another separately-filed action. *Newcal Indus., Inc. v. Ikon*

7   *Office Solution*, 513 F.3d 1038, 1056-57 (9th Cir. 2008). Accordingly, the Court should deny

8   Mercedes' motion.

9   **IV.**    **CONCLUSION**

10      For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Mercedes'

11  motion and allow this case to proceed to the merits.

12

13                           Respectfully submitted,

14  Dated: November 10, 2014        THE VEEN FIRM, P.C.

15                           CHAVEZ & GERTLER LLP

16

17                       By: _____

18                           Dan L. Gildor

                               *Attorneys for Plaintiff and the Proposed Class*

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS           Case No. 14-02349 TEH