THE VEEN FIRM, P.C.
Anthony L. Label (Bar No. 205920)
Steven A. Kronenberg (Bar No. 215541)
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102
P.O. Box 7296
San Francisco, CA 94120-7296
Tel:    (415) 673-4800
Fax:    (415) 771-5845

CHAVEZ & GERTLER LLP
Jonathan E. Gertler (Bar No. 111531)
Dan L. Gildor (Bar No. 223027)
Samuel P. Cheadle (Bar No. 268595)
42 Miller Avenue
Mill Valley, California 94941
Tel:    (415) 381-5599
Fax:    (415) 381-5572

*Attorneys for Plaintiffs*
*and the Proposed Class and Subclass*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DIGBY ADLER GROUP, LLC, dba BANDAGO LLC, and BENJAMIN ROBLES, an individual, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ U.S.A., LLC,<br><br>                              Defendant. | **Case No. 14-CV-02349 TEH**<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:       July 27, 2015<br>Time:       10:00 a.m.<br>Courtroom: 2 |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   STANDARD APPLICABLE TO A MOTION TO DISMISS ............................................ 2

III.  SUMMARY OF PLAINTIFF ROBLES' ALLEGATIONS ............................................. 3

IV.   ARGUMENT ........................................................................................................... 3

    A.   THE TAC STATES A CLAIM FOR VIOLATION OF THE SONG
        BEVERLY CONSUMER WARRANTY ACT .................................................... 4

    B.   PLAINTIFF ROBLES HAS ADEQUATELY ALLEGED HIS FRAUD-
        BASED CLAIMS ........................................................................................... 7

        1.   MBUSA Applies the Wrong Standard.................................................... 7

        2.   The TAC Satisfies Rule 9 to the Extent Necessary ................................. 8

        3.   Taken as a Whole, the FAC Sets Forth Sufficient Allegations
            Regarding MBUSA's Knowledge ................................................................ 9

            a)   The Court Must Evaluate the TAC as a Whole ................................ 9

            b)   MBUSA's Focus on *Wilson* and Its Progeny Is Misplaced ............ 11

    C.   MBUSA'S ATTEMPT TO INJECT TYPICALITY AND ADEQUACY
        CONCERNS INTO ITS MOTION TO DISMISS MUST BE REJECTED.......... 14

V.    CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*American Suzuki Motor Corp. v. Superior Court*,
  37 Cal. App. 4th 1291 (1995) ................................................................4, 6

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ......................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................2

*Avedisian v. Mercedes-Benz USA, LLC*,
  2013 WL 2285237 (C.D. Cal. May 22, 2013) ....................................12, 13

*Baba v. Hewlett Packard Co.*,
  2012 WL 5336971 (N.D. Cal. Oct. 26, 2012) ...........................................5

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ....................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................2, 9, 13

*Bell v. Farmers Ins. Exch.*,
  115 Cal. App. 4th 715 (2004) ...............................................................1, 15

*Braden v. Wal–Mart Stores, Inc.*,
  588 F3d 585 (8th Cir. 2009) .....................................................................11

*Brandon Banks v. Nissan N. Am., Inc.*,
  2012 WL 8969415 (N.D. Cal. Mar. 20, 2012)..........................................12

*Bufil v. Dollar Fin. Grp., Inc.*,
  162 Cal. App. 4th 1193 (2008) .................................................................15

*Cholakyan v. Mercedes-Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal. 2011) ....................................................6

*Cirulli v. Hyundai Motor Co.*,
  2009 WL 5788762 (C.D. Cal. June 12, 2009) .....................................11, 13

*Clancy v. The Bromley Tea Co.*,
  2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ...........................................15

*Cook v. Brewer*,
  637 F.3d 1002 (9th Cir. 2011) ...................................................................3

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
  911 F.2d 242 (9th Cir. 1990) .....................................................................2

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) .....................................................................8

ii

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ............................................................................ 7

*Decker v. Mazda Motor of Am., Inc.*,
  2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) ............................................. 11, 13

*Elias v. Hewlett-Packard Co.*,
  2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ......................................................... 7

*Falco v. Nissan N. Am. Inc.*,
  2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ................................................. 5, 10

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................ 8, 11, 12, 13

*Fed. Ins. Co. v. Harris Farms, Inc.*,
  2005 WL 181884 (N.D. Cal. Jan. 26, 2005) ..................................................... 2, 3

*Fisher v. Honda North America, Inc.*,
  2014 WL 2808188 (C.D. Cal. June 12, 2014) .................................................... 10

*Gertz v. Toyota Motor Corp.*,
  2011 WL 3681647 (C.D. Cal. Aug. 22, 2011) ..................................................... 5

*Greenwood v. Compucredit Corp.*,
  2010 WL 4807095 (N.D. Cal. Nov. 19, 2010) ................................................... 15

*Grodzitsky v. American Honda Motor Company*,
  2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ......................................... 11, 13, 14

*Helm v. Alderwoods Grp., Inc.*,
  696 F. Supp. 2d 1057 (N.D. Cal. 2009) ............................................................ 15

*Hovsepian v. Apple, Inc.*,
  2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) ..................................................... 5

*Hunter v. Ohio Indem. Co.*,
  2006 WL 2458715 (N.D. Cal. Aug. 22, 2006) ..................................................... 2

*In re Carrier IQ, Inc.*,
  2015 WL 274054 (N.D. Cal. Jan. 21, 2015) ................................................. 4, 6, 7

*In re Jamster Mktg. Litig.*,
  2009 WL 1456632 (S.D. Cal. May 22, 2009) ..................................................... 2

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ........................................................... 12, 13

*Isip v. MBUSA-Benz USA, LLC*,
  155 Cal. App. 4th 19 (2007) ........................................................................... 4, 6

*Jewel v. Nat'l Sec. Agency*,
  673 F.3d 902 (9th Cir. 2011) ............................................................................. 2

*Jones v. H.S.B.C.*,
  2012 WL 1299203 (S.D. Cal. Apr. 13, 2012) .................................................... 10

iii

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................. 6, 9

*Kent v. Hewlett-Packard Co.*,
    2010 WL 2681767 (N.D. Cal. July 6, 2010) ........................................................ 5

*Kowalsky v. Hewlett-Packard Co.*,
    2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) .............................................. 9, 12, 13

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ................................................................................ 14

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014) .................................................................. 6

*LiMandri v. Judkins*,
    52 Cal. App. 4th  (1997) ....................................................................................... 7

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ........................................................ 8, 9, 10, 13

*Marcus v. Apple Inc*,
    2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ........................................................... 5

*Marsikian v. MBUSA–Benz USA, LLC*,
    2009 WL 8379784 (C.D. Cal. May 4, 2009) .................................................. 12, 13

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ................................................................................ 9

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013) ........................................................... 12, 13

*Nelson v. Nissan N. Am., Inc.*,
    894 F. Supp. 2d 558 (D.N.J. 2012) ...................................................................... 6

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) .................................................................................... 9

*Osborne v. Subaru of Am., Inc.*,
    198 Cal. App. 3d 646 (Ct. App. 1988) ................................................................. 6

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) .............................................................................. 3

*Peloza v. Capistrano Unified Sch. Dist.*,
    37 F.3d 517 (9th Cir. 1994) .................................................................................. 2

*Porter v. Chrysler Grp. LLC*,
    2013 WL 6839872 (M.D. Fla. Dec. 27, 2013) ..................................................... 15

*Priebe v. Autobarn, Ltd.*,
    240 F.3d 584 (7th Cir. 2001) ................................................................................ 5

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ................................................................................ 2

*Rosen v. Unilever U.S., Inc.*,
   2010 WL 4807100 (N.D. Cal. May 3, 2010) ........................................................................10

*Smajlaj v. Brocade Commc'ns Sys. Inc.*,
   2007 WL 2457534 (N.D. Cal. Aug. 27, 2007) ...............................................................8, 10

*Smedley v. Reid*,
   2010 WL 391831 (S.D. Cal. Jan. 27, 2010) ........................................................................8

*Stahl Law Firm v. Judicate W.*,
   2013 WL 4873065 (N.D. Cal. Sept. 12, 2013) ...................................................................3

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................................................................................14

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................................10

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..............................................................................5

*United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala.*,
   941 F.2d 1428 (11th Cir. 1991) .........................................................................................12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................................9

*Weis-Buy Farms, Inc. v. Quality Sales LLC*,
   2012 WL 2237166 (D. Conn. June 15, 2012) ....................................................................1

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ..........................................................................................3, 8

*Wilson* v. Hewlett-Packard Co.,
   668 F.3d 1136 (9th Cir. 2012) ........................................................................11, 12, 13, 14

*Zambrano v. CarMax Auto Superstores, LLC*,
   2014 WL 228435 (S.D. Cal. Jan. 21, 2014) .......................................................................5

**OTHER AUTHORITIES**

7AA Wright et al., *Federal Practice and Procedure*, § 1758.1 (3d. 2005) ...................................15

1   **I.      <u>INTRODUCTION</u>**

2          Apparently unwilling to accept responsibility for installing optional rear-mounted air

3   conditioning units ("AC units") in its line of Sprinter passenger and cargo vans that leak

4   substantial amounts of water into the interior of the vans whenever it rains or the AC unit is run at

5   its highest setting, Defendant Mercedes-Benz U.S.A., LLC ("MBUSA") has once again filed a

6   motion to dismiss, this time seeking to dismiss the causes of action asserted in the third amended

7   complaint ("TAC") filed on April 28, 2015 on behalf of a newly joined plaintiff—Benjamin

8   Robles.  MBUSA contends that the Court should dismiss these newly alleged claims because the

9   allegations "are insufficient to state fraud- and warranty-based claims."  (Mot. at 1:11.)

10         The TAC's allegations, however, are more than sufficient to state claims for relief for

11  violation of the Song Beverly Consumer Warranty Act, violation of the Consumer Legal

12  Remedies Act ("CLRA"), fraudulent concealment, and unlawful and fraudulent business

13  practices.  Those facts include the fact that Plaintiff Robles bought a Sprinter van with the

14  optional AC unit; that water leaked through the AC unit within three days after he took delivery;

15  that when he took the van to be repaired, he was advised that MBUSA had known about the leaks

16  and issued a service bulletin setting out how to repair the leaks; and that the AC unit has leaked

17  on three other occasions, all following attempts by MBUSA to repair the leaks.  (TAC ¶¶ 20-24.)

18         The TAC also alleges that MBUSA at all relevant times should have known that the AC

19  units leak given replacement part sales and warranty repair requests, direct customer complaints

20  and feedback, indirect complaints from consumers, NHTSA complaints, and pre-release and

21  subsequent testing and investigations that MBUSA has conducted to determine the cause or

22  causes of the leaks, particularly in repairing the leaks.  (TAC ¶ 26-28.)  Despite this knowledge,

23  MBUSA never informed the public about the AC unit leaks.  (TAC ¶ 28.)

24         What MBUSA contends are inadequate or speculative allegations that the Court should

25  disregard are simply factual averments that MBUSA disputes.  That MBUSA disputes the alleged

26  facts is of no consequence at this stage of the litigation.  *Weis-Buy Farms, Inc. v. Quality Sales*

27  *LLC*, No. 3:11CV02011 WIG, 2012 WL 2237166, at *3 (D. Conn. June 15, 2012).  After all, a

28  motion to dismiss is not about whether a plaintiff can establish the alleged facts at trial.  *Bell Atl.*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                          Case No. 14-CV-02349 TEH

1    *Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("a well-pleaded complaint may proceed even if it

2    strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

3    remote and unlikely'"); *In re Jamster Mktg. Litig.*, No. MDL 1751, 2009 WL 1456632, at *10

4    (S.D. Cal. May 22, 2009) ("It is generally inappropriate to determine factual matters on a motion

5    to dismiss."). A motion to dismiss is only about whether a plaintiff has alleged "enough facts to

6    state a claim to relief that is plausible on its face." *Twombly*, at 556–57.

7         In the present case, Plaintiff Robles has alleged sufficient facts to state all of the claims he

8    brings on behalf of himself and the class of those who own or lease Sprinter vans and a subclass

9    of consumers. The Court, therefore, should deny MBUSA's motion and require MBUSA to

10   answer the TAC.[1]

11   **II.    <u>STANDARD APPLICABLE TO A MOTION TO DISMISS</u>**

12        "[M]otions to dismiss are viewed with some disfavor, and are rarely granted." *Harris*

13   *Farms*, 2005 WL 181884, at *1; *accord Hunter v. Ohio Indem. Co.*, No. C06-03524 JSW, 2006

14   WL 2458715, at *1 (N.D. Cal. Aug. 22, 2006). To survive a motion to dismiss, a plaintiff must

15   allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 556–57.

16   "A claim has facial plausibility when the pleaded factual content allows the court to draw the

17   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

18   556 U.S. 662, 663 (2009).

19        In this context, it is not necessary for a plaintiff to adduce specific evidence that proves the

20   alleged facts. That an allegation summarizes underlying evidence or asserts basic facts does not

21   render the allegation conclusory or speculative such that the Court should disregard the allegation.

22   In fact, a court is "required . . . to assume that all general allegations embrace whatever specific

23   facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517,

24   521 (9th Cir. 1994); *accord Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011); *Stahl*

25   *Law Firm v. Judicate W.*, No. C13-1668 TEH, 2013 WL 4873065, at *2 (N.D. Cal. Sept. 12,

26

27   _____

     [1]  Plaintiff Robles requests leave to amend the complaint to set forth additional facts as necessary

28   if the Court disagrees. *Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 246–47 (9th Cir. 1990).

1    2013) (Henderson, J.).  That is because all factual averments must be construed in the light most

2    favorable to plaintiff, even if the defendant disputes those averments.  *Williams v. Gerber*

3    *Products Co.*, 552 F.3d 934, 937 (9th Cir. 2008); *accord Fed. Ins. Co. v. Harris Farms, Inc.*, No.

4    C04-04085JSW, 2005 WL 181884, at *1 (N.D. Cal. Jan. 26, 2005).  A court may only disregard

5    an allegation if the allegation is a pure legal conclusion or is otherwise contradicted by documents

6    referred to in the complaint.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

7    Accordingly, "[a] claim may be dismissed only if 'it appears beyond doubt that the plaintiff can

8    prove no set of facts in support of his claim which would entitle him to relief.'"  *Cook v. Brewer*,

9    637 F.3d 1002, 1004 (9th Cir. 2011).

10   **III.    SUMMARY OF PLAINTIFF ROBLES' ALLEGATIONS**

11          Plaintiff Robles purchased a new Sprinter van on June 9, 2012.  (TAC ¶ 20.)  Three days

12   later, he had to return the van to the dealer because the AC unit leaked water inside the passenger

13   compartment, dampening the seats.  (TAC ¶ 21.)  It was only then that Plaintiff Robles was

14   informed by the service personnel that Mercedes had issued a "service advisory" concerning

15   leaking AC units.  (*Id.*)

16          Since then, the AC unit has leaked three more times notwithstanding the repairs applied by

17   MBUSA.  (TAC ¶¶ 22-24.)  Each time, Plaintiff Robles' had to take the vehicle in to be repaired;

18   each time, he was not able to use the vehicle while it was being repaired.  (TAC ¶ 60.)  Moreover,

19   his enjoyment of the vehicle diminished given drenched seating and musty odors.  (TAC ¶ 24.)  A

20   key option for Plaintiff Robles was the AC unit given that the Sprinters do not have windows that

21   can be opened to ventilate the passenger compartment.  (TAC ¶ 25.)  Had Mercedes disclosed

22   prior to the purchase that the AC unit has a propensity to leak, either in the marketing materials he

23   read or in person, Plaintiff Robles would have read or heard the disclosure and elected not to

24   purchase the van.  (*Id.*)  Instead, Plaintiff Robles would likely have purchased a Nissan NV or

25   other full size van.  (*Id.*)

26   **IV.    ARGUMENT**

27          In its motion, MBUSA contends that the Court should dismiss all of the claims asserted by

28   Plaintiff Robles for failure to state a claim.  Plaintiff Robles, however, has stated a claim for

breach of the Song Beverly Consumer Warranty Act given that he alleges a breach of the implied warranty of merchantability—namely the sale of an optional AC unit that leaks.  Plaintiff Robles has also set forth sufficient facts to state claims for fraudulent concealment, violation of the CLRA, and fraudulent business practices—namely that MBUSA never disclosed that the AC unit would leak despite knowing that the AC units leak.  The Court, therefore, should deny the motion.

## A.   THE TAC STATES A CLAIM FOR VIOLATION OF THE SONG BEVERLY CONSUMER WARRANTY ACT

MBUSA contends that the TAC does not "allege facts establishing any breach of the implied warranty of merchantability" because—according to MBUSA—water leaking into the interior of a Sprinter van is not a "fundamental defect" that renders the vans unfit for their ordinary purpose.  (Mot. at 12:5-8.)  According to MBUSA, Plaintiff Robles must allege that he had to discontinue use of the vehicle.  (Mot. at 12:19-21.)

But under California law, a product need not be entirely inoperable for the implied warranty of merchantability to be breached.  *Isip v. MBUSA-Benz USA, LLC*, 155 Cal. App. 4th 19, 27, 65 Cal. Rptr. 3d 695, 700 (2007) (distinguishing and limiting *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 44 Cal. Rptr. 2d 526 (1995)).  As the California Court of Appeals recognized in *Isip*, adopting the preclusion of any use as the standard against which breaches of the implied warranty of merchantability are measured would result in "an unjustified dilution of the implied warranty of merchantability."  *Isip*, at 27.

The Court, moreover, should reject MBUSA's attempt to so narrowly define the purpose of the Sprinter vans so as to exclude anything other than providing transportation from point A to point B.  *See Isip*, 155 Cal. App. 4th at 27 ("MBUSA's attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability.")  After all, "[i]n defining a product's core functionality, a court should not seek to reduce a product to its most basic, bare minimum purpose, but rather should take a common sense view informed by reasonable consumers' expectations about the function of the type of product in a general sense."  *In re Carrier IQ, Inc.*, No. C-12-MD-2330 EMC, 2015 WL 274054, at *44 (N.D. Cal. Jan. 21, 2015); *accord Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP

4

1  MANX, 2013 WL 5575065, at *9 (C.D. Cal. Oct. 10, 2013).  Indeed, the functionality at issue

2  here is less the vehicle's functionality and more the optional AC unit's functionality.  Those units,

3  which are separately bargained for, are plainly unfit for their ordinary purpose, which is to

4  provide a comfortable (and dry) environment within the Sprinter vans notwithstanding the

5  weather outside the vans.

6          The cases on which MBUSA relies are either distinguishable or inapposite.  For instance,

7  *Marcus v. Apple Inc*, No. C 14-03824 WHA, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015), involves

8  logic boards that ceased to work well after an implied warranty expired.  The same is true of

9  *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 2591445 (N.D. Cal. Aug. 21, 2009),

10  which also involved computers that stopped working well after any implied warranty expired.  By

11  contrast, Plaintiff Robles' van developed its first leak *three days* after delivery and then a month

12  after the first attempted repair, all within the implied warranty period and leaving him unable to

13  ever truly enjoy the use of his vehicle.

14          *Kent v. Hewlett-Packard Co.*, No. 09-5341 JF PVT, 2010 WL 2681767 (N.D. Cal. July 6,

15  2010), *Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010), and *Gertz v. Toyota Motor*

16  *Corp.*, No. CV 10-1089 PSG VBKX, 2011 WL 3681647 (C.D. Cal. Aug. 22, 2011), are also all

17  distinguishable.  *Kent* involves computers that would freeze and lock up but would otherwise

18  function; *Tietsworth* involves washing machines that would stop working mid-cycle; and *Gertz*

19  involves gas tanks that shrink in cold weather, providing inaccurate fuel level indications.  None

20  of these cases are comparable to having substantial amounts of water leak into the interior of a

21  vehicle when it rains or when the AC units are used in their ordinary use.

22          The rest of MBUSA's cases are simply inapposite.  *Priebe v. Autobarn, Ltd.*, 240 F.3d 584

23  (7th Cir. 2001), involves a used car sold on an "as is" basis such that no implied warranty of

24  merchantability attached; *Baba v. Hewlett Packard Co.*, 2012 WL 5336971 (N.D. Cal. Oct. 26,

25  2012), applies Ohio law; and *Zambrano v. CarMax Auto Superstores, LLC*, 2014 WL 228435

26  (S.D. Cal. Jan. 21, 2014), involves a complaint that failed to state when problems with the air

27  conditioning in a used car began and only alleged that the vehicle became undrivable after the

28  implied warranty expired.  Finally, *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962

1   (C.D. Cal. 2014), involves an alleged failure of an on-board pre-collision system to reduce speed

2   that the plaintiffs could not "truthfully allege in light of the IIHS report" that contradicted those

3   allegations.  992 F. Supp. 2d at 980.  None of these cases have any bearing on whether an AC unit

4   that leaks substantial amounts of water so as to "make it rain" within Sprinter vans breaches the

5   implied warranty of merchantability under California law.  In fact, two of MBUSA's cases

6   actually support denying MBUSA's motion: *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558

7   (D.N.J. 2012) and *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012).  In

8   *Nelson*, the car's transmission slipped, hesitated and had an unpredictable hesitation response.

9   894 F. Supp. 2d at 567.  In *Keegan*, the rear suspension would cause uneven and premature tire

10   wear as well a "rough ride" and an "exceptionally loud and disruptive noise." 838 F. Supp. 2d at

11   948.  The courts in both cases held that such allegations were sufficient to withstand a motion to

12   dismiss even though the vehicles were still driven by the plaintiffs.  The Court, here, should

13   likewise find that the allegations that AC units leak, drenching seats and otherwise making it

14   unpleasant to ride in the van (*i.e.*, musty odors), are sufficient to withstand a motion to dismiss

15   even though Plaintiff Robles' vehicle was not inoperable.

16           Though MBUSA contends that a vehicle need not be perfect and that a vehicle need not

17   conform to every expectation of a *buyer*,[2] that does not mean that the implied warranty of

18   merchantability does not nonetheless "protect[] the normal expectations of *consumers*." *Osborne*

19   *v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656, 243 Cal. Rptr. 815, 820 (Ct. App. 1988)

20   (emphasis added); *see also In re Carrier IQ*, 2015 WL at *45-46.  In this connection, it simply

21   "cannot be argued . . . that any car purchaser expects his vehicle's interior to experience periodic

22   flooding." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1238 (C.D. Cal.

23   2011).  This is not just Plaintiff Robles' expectation, but the reasonable expectation of *any*

24

25   ─────────────────────
     [2]  Mot. at 13:17-23.  MBUSA's reliance on *American Suzuki* is misplaced.  As the Court of

26   Appeals in *Isip* noted, the language in *American Suzuki* upon which MBUSA and many cases
     arose in the specific context of that case where the majority of the vehicles at issue had not

27   manifested the defect.  *Isip*, 155 Cal. App. 4th at 25-26.  By contrast, the vast majority of the AC
     units in the present case have repeatedly leaked.  (*See* TAC ¶ 13.)  Given the prevalence of the

28   leaks, the leaks render the AC units and the vehicles unfit for their ordinary purpose of
     transporting people and cargo in comfort notwithstanding the environment outside the van.

purchaser.  Given that the TAC alleges that the AC units leak and that the vehicles are thereafter

taken out of service for repair and drying, the Court should deny the motion to dismiss given that

there is no need under California law for the vehicle to become inoperable before a claim for the

breach of the implied warranty can lie.

### B.   PLAINTIFF ROBLES HAS ADEQUATELY ALLEGED HIS FRAUD-BASED CLAIMS

MBUSA contends that the TAC fails to set forth facts from which it could be inferred that

MBUSA had a duty to disclose that the AC units leak.  But that is not true; the TAC sets forth

facts that establish that MBUSA had exclusive knowledge of material facts—namely the

propensity of the AC units to leak.[3]  Though MBUSA contends that the allegations are

insufficient, MBUSA is incorrect.[4]

#### 1.   MBUSA Applies the Wrong Standard

MBUSA contends that "the facts pled in the TAC do not establish [that] MBUSA knew to

a *substantial certainty* that the rear air-conditioning unit in Robles's [sic] model-year 2011

Sprinter van was 'defective' at the time Robles purchased it in June 2012."  (Mot. at 1:12-14

[emphasis added].)  At the pleading stage, however, a plaintiff need not establish any facts, let

---

[3]  MBUSA does not appear to challenge as insufficient allegations regarding the materiality of leaking AC units.  Nor could it given that the TAC alleges that had Plaintiff Robles known about the leaking AC units, he would not have purchased a Sprinter van.  (TAC ¶ 25.)  That is more than sufficient.  *In re Carrier IQ*, 2015 WL 274054, at *47; *Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2014 WL 493034, at *6 (N.D. Cal. Feb. 5, 2014) ("Plaintiff has adequately pleaded materiality by alleging that he would have acted differently by not purchasing the computer as ordered had he known about the insufficiency of the included PSU.").

[4]  For an omission to be actionable in California, "the omission must be contrary to a representation actually made by the defendant, *or an omission of a fact the defendant was obliged to disclose*."  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835, 51 Cal. Rptr. 3d 118, 126 (2006) (emphasis added.  A defendant has a duty to disclose

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539 (1997).  For some reason, MBUSA attacks the TAC for failing to allege facts in support of fraudulent misrepresentation claims.  The TAC does not assert any claims based on fraudulent misrepresentations.  Rather the fraud-based claims in the TAC are based entirely on fraudulent omissions.  There are no fraudulent misrepresentation claims for the Court to dismiss.

7

1   alone establish facts regarding MBUSA's knowledge to a "substantial certainty."  The question at

2   the pleading stage "is whether the facts as plead[ed] plausibly suggest a claim," not "whether the

3   facts themselves are plausible."  *Smedley v. Reid*, No. 08CV1602 BTM BLM, 2010 WL 391831,

4   at *9 n.8 (S.D. Cal. Jan. 27, 2010).  In this connection, even "unrealistic or nonsensical"

5   allegations must be accepted as true.  *Iqbal*, 556 U.S. at 681.

6          Moreover, it does not matter if there are multiple inferences that may arise from any given

7   fact.  On a motion to dismiss, there is no need for the inferences that could be drawn to

8   "necessarily be the 'most plausible' of all competing inferences."  *Smajlaj v. Brocade Commc'ns*

9   *Sys. Inc.*, No. C 05-02042 CRB, 2007 WL 2457534, at *1 (N.D. Cal. Aug. 27, 2007).  There is

10  also no need "for allegations of 'the smoking gun genre.'"  *Id*.  Rather, the Court is to view *all*

11  inferences in a light most favorable to the plaintiff, including the inference that MBUSA had

12  exclusive knowledge of the propensity for the AC units to leak.  *Williams*, 552 F.3d at 937.

### 2.      The TAC Satisfies Rule 9 to the Extent Necessary

14         MBUSA formulaically contends without any explanation or substantive argument that

15  Plaintiff Robles' allegations fail to satisfy Rule 9.  (*See* Mot. at 4:15-16.)  However, when claims

16  are based on an omission, the claims "can succeed without the same level of specificity required

17  by a normal fraud claim."  *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal.

18  2014) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  That is because "a

19  plaintiff . . . alleging a failure to act instead of an affirmative act . . . cannot point out the specific

20  moment when the defendant failed to act."  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d

21  1261, 1267 (C.D. Cal. 2007).  Accordingly, courts refuse to dismiss fraud by omission claims

22  "purely for failure to precisely state the time and place of the fraudulent conduct."  *Falk v. Gen.*

23  *Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).

24         But even if Rule 9 did apply, the TAC unambiguously sets forth the "who, what, when,

25  where and how" of MBUSA's alleged misconduct.  To wit, the "who" is MBUSA; the "what" is

26  MBUSA's knowledge of the leaks, the "when" is prior to the sale of the vehicles, the "where" is

27  in MBUSA's marketing and promotional materials, website, and through sales personnel, and the

28  "how" is that but for MBUSA's omissions, Plaintiff Robles would not have purchased the

vehicle.  (TAC ¶¶ 11, 25, 58-59, 73, 78, 104.)  That is all that is required to satisfy Rule 9.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

**3.      Taken as a Whole, the FAC Sets Forth Sufficient Allegations Regarding MBUSA's Knowledge**

Though MBUSA contends that the allegations regarding its knowledge are threadbare or speculative, such a contention is misplaced given that the rule stated in *Iqbal* against naked assertions devoid of further factual enhancement "may be relaxed as to matters within the opposing party's knowledge."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Indeed, "[k]nowledge need not be pleaded with particularity."  *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011).  Given that Plaintiff cannot be expected to have personal knowledge of the facts constituting MBUSA's wrongdoing, allegations based on information and belief are sufficient.  *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1095 (N.D. Cal. 2014); *accord Keegan*, 838 F. Supp. 2d at 961 n.85 ("*Twombly's* plausibility standard does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, . . . or where the belief is based on factual information that makes the inference of culpability plausible."); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

In any event, the TAC sets forth sufficient allegations from which the Court may infer that MBUSA knew of the leaks.  Though MBUSA contends that each allegation fails as a matter of law, MBUSA's analysis of each allegation exists in a vacuum divorced from the other allegations and from the TAC as a whole.  The fact is that courts have found allegations like those in the TAC regarding MBUSA's knowledge to be sufficient to state a claim.

a)      The Court Must Evaluate the TAC as a Whole

In contending that the TAC fails to sufficiently allege facts from which it can be inferred that MBUSA knew or should have known that the AC units leak, MBUSA analyzes each of the facts alleged in the TAC in isolation from the other facts, contending that if each fact on its own is

1  insufficient, all of the facts must be insufficient.  (*See* Mot. at 4:21 ("Each of these allegations

2  fails as a matter of law.").)

3      Though MBUSA's argument is seemingly persuasive, it embodies a logical fallacy:  the

4  fallacy of composition.  Such a fallacy is committed "when one reasons from the properties of a

5  'part' to the properties of the 'whole.'"  *Rosen v. Unilever U.S., Inc.*, No. C 09-02563 JW, 2010

6  WL 4807100, at *5 (N.D. Cal. May 3, 2010).  The fallacy is sometimes referred to as "the whole

7  is nothing more than the sum of its parts."  *Id.*  "The reasoning is fallacious because things joined

8  together may have different properties as a whole than they do separately."  *Id.*

9      Applied in the present context, MBUSA's argument is logically flawed.[5]  By analyzing

10  each of the allegations separately and apart from the other allegations, MBUSA assumes that the

11  totality of the allegations can be nothing more than the sum of each allegation.  But that is an

12  unjustified assumption.  That is why "the Court must consider the allegations of the complaint as

13  a whole" in determining whether a complaint states a plausible claim for relief.  *Jones v. H.S.B.C.*,

14  No. 11-CV-02939-CAB NLS, 2012 WL 1299203, at *2 (S.D. Cal. Apr. 13, 2012); *Stichting*

15  *Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1129 (C.D. Cal. 2011) ("A

16  court reads the complaint as a whole, together with matters appropriate for judicial notice, rather

17  than isolating allegations and taking them out of context."); *see also Smajlaj*, 2007 WL 2457534,

18  at *1 ("a district court cannot consider allegations 'in a vacuum,' but instead must 'consider the

19  
--------
20  [5]  MBUSA's argument is also misplaced.  For instance, MBUSA contends that the TAC's
   allegations about a technical service bulletin ("TSB") that MBUSA issued in 2010 does not
21  establish the existence of a defect.  While that might be true, the point is that one "plausible
   inference" that can be drawn from the issuing of the TSB is that MBUSA was generally aware of
   the problems with the AC units and that it never disclosed this material fact despite this
22  awareness.  *MacDonald.*, 37 F. Supp. 3d at 1093; *see also Falco*, 2013 WL 5575065, at *7.
   While MBUSA states that the TAC does not allege the contents of the bulletin, that is not true.
23  The TAC specifically alleges that the bulletin "state[s] that the leaks can be caused by improper
   installation of the AC unit and defects in the sealant and/or the installation of the sealant used
24  around the AC unit."  (TAC ¶ 47; *see also* TAC ¶ 26 (bulletin "detail[s]the steps to take to
   address leaks").)  Though MBUSA cites to *Fisher v. Honda North America, Inc.*, 2014 WL
25  2808188 (C.D. Cal. June 12, 2014), as support for the proposition that the TSB cannot form the
   basis for any inference regarding knowledge, *Fisher* is distinguishable.  In *Fisher*, the TSBs did
26  not relate to any of the class vehicles; moreover, the repairs identified did not address the alleged
   defect.  2014 WL 2808188, at *6.  By contrast, the TAC alleges that the TSB regarding leaking
27  AC units addresses class vehicles and is directly related to leaking AC units.  To the extent that
   the Court is not satisfied, Plaintiff Robles requests leave to amend to attach the TSB to the
28  complaint and more specifically plead its contents.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS            Case No. 14-CV-02349 TEH

1    complaint in its entirety"); *Braden v. Wal–Mart Stores, Inc.*, 588 F3d 585, 594 (8th Cir. 2009)

2    ("the complaint should be read as a whole, not parsed piece by piece to determine whether each

3    allegation, in isolation, is plausible").  Taken as a whole, Plaintiff Robles' allegations more than

4    plausibly state a claim for relief under the CLRA, particularly if the Court presumes the truth of

5    those allegations, which it must.

6                    b)      MBUSA's Focus on *Wilson* and Its Progeny Is Misplaced

7            Though MBUSA contends that cases like *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136

8    (9th Cir. 2012 and *Grodzitsky v. American Honda Motor Company*, No. 2:12-CV-1142-SVW-

9    PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013), commend dismissing Plaintiff Robles' CLRA

10   claim, the present case is actually more similar to a series of cases that have found allegations like

11   the ones in the TAC sufficient to state a claim than it is to *Wilson* and *Grodzitsky*.

12           For instance, in *Decker v. Mazda Motor of Am., Inc.*, No. SACV 11-0873 AG MLGX,

13   2011 WL 5101705 (C.D. Cal. Oct. 24, 2011), the plaintiff alleged that Mazda had "superior and

14   exclusive knowledge of the 'Crank No Start' defect, through its 'dealerships, pre-release testing

15   data, warranty data, customer complaint data, and replacement part sales data, among other

16   internal sources of aggregate information about the problem.'"  *Decker*, 2011 WL 5101705, at *5.

17   The court found that these allegations were sufficient to state a claim.  *Id.*  Similarly, in *Cirulli v.*

18   *Hyundai Motor Co.*, No. SACV 08-0854 AG MLGX, 2009 WL 5788762 (C.D. Cal. June 12,

19   2009), the court held that the plaintiff had sufficiently pled that Hyundai was aware that its

20   vehicles were unusually vulnerable to premature oxidation and corrosion, and consequently

21   structural deterioration, where the plaintiff alleged, among other things, that "[s]ince 1999,

22   [defendant] has . . .  constantly tracked the National Highway Traffic Safety Administration . . .

23   database to track reports of defective Sonata sub-frames."  *Cirulli*, 2009 WL 5788762, at *4.

24   "From this source, [defendant] knew that its 1999–2004 Sonatas were experiencing unusually

25   high levels of sub-frame deterioration, steering control arm separation, steering loss, and highway

26   accidents."  *Id.*  Likewise, in *Falk*, 496 F. Supp. 2d 1088, the plaintiff alleged that there was a

27   record of complaints to GM between 2003 and 2007 that showed that GM was aware of a

28   problem with its speedometers and that customers only became aware of the problem if they

                                                    11

actually experienced it first-hand.  *Falk*, 496 F. Supp. 2d at 1096-97.  Finally, in *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237 (C.D. Cal. May 22, 2013), the plaintiff alleged that MBUSA learned about the defect from pre-release testing data, consumer complaints, dealer complaints, further testing, warranty data, goodwill data, repair dates, and parts purchase information.  Given these allegations, the court found that there was a plausible inference that MBUSA knew of the defect at the time of the sale notwithstanding *Wilson*.[6]  *Avedisian*, 2013 WL 2285237, at *7; *see also Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (holding allegations that defendant had access to "pre-release testing data, early consumer complaints, testing, and other internal investigation conducted in response to those complaints" sufficient to allege exclusive knowledge); *Marsikian v. MBUSA–Benz USA, LLC*, No. CV 08–04876, 2009 WL 8379784, at *8 (C.D. Cal. May 4, 2009) (allegations that defendant learned about defect from internal testing, customer complaints, and dealership repair orders sufficiently showed defendant's knowledge of the defect); *Kowalsky v. Hewlett–Packard Co.*, No. 10–CV–02176–LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (finding sufficient allegations that defendant had advertised that it tested its printers using recognized standards that would have revealed the alleged defect); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014); *Brandon Banks v. Nissan N. Am., Inc.*, No. C 11-2022 PJH, 2012 WL 8969415, at *1 (N.D. Cal. Mar. 20, 2012).

The critical distinction between these cases and *Wilson* and the other cases cited by MBUSA is that, taken as a whole, the allegations in the former present a plausible basis from which knowledge could be inferred, while those in the latter did not.  For example, in *Wilson*, the plaintiffs alleged that "since the Laptops suffer from an inadequate Design for Reliability, HP also has been on notice, since the time it began manufacturing and selling these Laptops that these computers were seriously defective."  *Wilson*, 668 F.3d at 1146.  Plaintiff also alleged that HP

---

[6]  It is significant that the Ninth Circuit in *Wilson* did not overrule any of the district court opinions that preceded *Wilson*.  Instead, the Ninth Circuit distinguished the preceding cases from *Wilson*, thereby maintaining the validity of those opinions.  *See United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1436 n.17 (11th Cir. 1991) ("Because we distinguish this case from Manuel Arnus . . .  we do not overrule it.").

was aware of the defect because it had "access to the aggregate information and data regarding the risk of overheating" and that there had been another lawsuit involving the same defect on a different model. *Id.* The Ninth Circuit found these allegations to be insufficient, noting that "plaintiffs who successfully allege that a manufacturer was aware of a defect present a stronger factual basis for their claims." *Id.* The court in *Grodzitsky*, 2013 WL 690822, likewise granted a motion to dismiss where the plaintiff only alleged knowledge based on "pre-release testing data" and "aggregate data from Honda dealers." The court held that those allegations failed "to suggest how this information could have informed Defendant of the alleged defect at the time of sale." *Grodzitsky*, 2013 WL 690822 at *6.

By contrast, in the present case, Plaintiffs have set forth a plausible basis to draw the inference that MBUSA had knowledge of the leaks given all of the sources of information it had available to it. Those sources include MBUSA records regarding replacement part sales and warranty repair requests, direct customer complaints and feedback—including calls by Plaintiff Bandago's staff regarding all of the AC units that had developed leaks and for which repairs were attempted, indirect complaints from consumers, NHTSA complaints,[7] and pre-release and subsequent testing and investigations that MBUSA has conducted to determine the cause or causes of the leaks, particularly in repairing the leaks. (*See* FAC ¶¶ 13-15, 25.) While MBUSA might dispute that these sources plausibly provided it with any information, the Court cannot be swayed by such misdirection. *MacDonald*, 37 F. Supp. 3d at 1093 (that defendant "is able to identify competing inferences from the same set of facts does not mean that Plaintiffs' claims should be dismissed"). As the Supreme Court noted in *Twombly*, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. The point is that the TAC, and the allegations found therein, are more like those found in *Decker*, *Cirulli*, *Falk*, *Avedisian*, *Mui-Ho*, *Marsikian*, *Kowalsky*, *In re MyFord Touch*, and *Banks* than they are to those found in

---

[7] For some reason, MBUSA has elected not to address the NHTSA complaints in its motion. Yet, several courts have found allegations of NHTSA complaints to be sufficient to withstand a motion to dismiss. *See*, *e.g.*, *Cirulli*, 2009 WL 5788762, at *4.

1   *Wilson*, *Grodzitsky*, and the other cases MBUSA cites in its motion, particularly where a plaintiff

2   cannot be expected to have personal knowledge of the facts constituting a defendant's

3   wrongdoing, and particularly given that the allegations are to be construed in the light most

4   favorable to Plaintiff.  *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  In

5   sum, the Court should deny the motion with regard to Plaintiff Robles' fraud-based claims.

6        **C.**    **MBUSA'S ATTEMPT TO INJECT TYPICALITY AND ADEQUACY CONCERNS INTO ITS MOTION TO DISMISS MUST BE REJECTED**

7

8       MBUSA contends that the Court should dismiss Plaintiff Robles' claim for product

9   liability—even though the cause of action is alleged solely on his behalf as a member of the

10   class—because the TAC "alleges no facts showing damages suffered by Robles that could be

11   recovered under a product-liability theory."  (Mot. at 14:2-3.)  MBUSA likewise contends that the

12   Court should dismiss the fraudulent concealment claim as to Plaintiff Bandago even though that

13   cause of action is alleged solely on its behalf as a member of the class.  (Mot: 14:8-20.)

14       Aside from MBUSA's mischaracterization of the allegations in the TAC,[8] MBUSA's

15   contentions are misplaced.  After all, on a motion to dismiss, the "law keys on the representative

16   party, not all of the class members."  *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020–21 (9th

17   Cir. 2011) *cert. denied,*132 S.Ct. 1970, 182 L.Ed.2d 819 (2012).  What MBUSA is really

18   contending is that Plaintiff Robles is neither adequate nor typical with regard to Plaintiff Bandago

19   and that Plaintiff Bandago is neither adequate nor typical with regard to Plaintiff Robles because

20   each has suffered different injuries, including the potential of no injury at all.

21       A question concerning whether a plaintiff may be allowed to present claims on behalf of

22   others who have different injuries "depends . . . on an assessment of typicality and adequacy of

23   representation."  *Greenwood v. Compucredit Corp.*, No. CIV. 08-04878 CW, 2010 WL 4807095,

---

[8]  By way of example, though MBUSA contends that the TAC does not allege any damage that would qualify to state a claim for product liability, the TAC does allege that the leaks in Plaintiff Robles' AC unit "have dampened the interior and damaged the headliner."  (TAC ¶ 24.)  In ruling on MBUSA's previous motion to dismiss the product liability cause of action, the Court specifically declined to find that damage to the vehicle was an insufficient basis to state a claim for product liability.  (Order Granting in Part Defendant's Motion to Dismiss, Dkt #38 at 14 (April 7, 2015).)  Given that there has been no further factual development to determine whether the AC units are integrated components or not, the Court should decline to dismiss Plaintiff Robles' claim as a class member.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS        Case No. 14-CV-02349 TEH

1    at *3 (N.D. Cal. Nov. 19, 2010) (quoting 7AA Wright et al., *Federal Practice and Procedure*,

2    § 1758.1, pp. 388–89 (3d. 2005)).  Such a question cannot be properly addressed on a motion to

3    dismiss.  Rather, it is best left to the class certification stage.[9]  *Clancy v. The Bromley Tea Co.*,

4    No. 12-CV-03003-JST, 2013 WL 4081632, at *5 (N.D. Cal. Aug. 9, 2013) ("Transmogrifying

5    typicality or commonality into an issue of standing would undermine the well-established

6    principles that 'in a class action, standing is satisfied if at least one named plaintiff meets the

7    requirements.'"); *accord Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal.

8    2009) (deferring consideration of whether plaintiffs share the same interests and suffered the same

9    injuries to the class certification stage); *Porter v. Chrysler Grp. LLC*, No. 6:13-CV-555-ORL-37,

10   2013 WL 6839872, at *2 (M.D. Fla. Dec. 27, 2013).

11        In sum, MBUSA's request that the Court dismiss claims made on behalf of Plaintiffs

12   Bandago and Robles as class members should be denied as improper.

13   **V.    <u>CONCLUSION</u>**

14        For all the foregoing reasons, the Court should deny MBUSA's motion and require

15   MBUSA to answer the TAC within 10 days.

16                                       Respectfully submitted,

17   Dated:  June 16, 2015              THE VEEN FIRM, P.C.
                                        CHAVEZ & GERTLER LLP
18

19                                      By:    */s/ Dan L. Gildor* _____
20                                             Dan L. Gildor
                                        *Attorneys for Plaintiffs and the Proposed Class*
21                                      *and Subclass*

22

23

24

25

---

26   [9]  Even then, the existence of individuals within a class who lack injury is of no consequence.  *See*
     *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 743, 9 Cal. Rptr. 3d 544, 568 (2004), *as*
27   *modified on denial of reh'g* (Mar. 9, 2004) (presence of nonclaimants "did not make the class less
     ascertainable or significantly reduce the required community of interest); *accord Bufil v. Dollar*
28   *Fin. Grp., Inc.*, 162 Cal. App. 4th 1193, 1208, 76 Cal. Rptr. 3d 804, 815 (2008).

15