Troy M. Yoshino, Bar No. 197850
  tyoshino@cbmlaw.com
Eric J. Knapp, Bar No. 214352
  eknapp@cbmlaw.com
Steven E. Swaney, Bar No. 221437
  sswaney@cbmlaw.com
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, California 94104
Telephone:   415.989.5900
Facsimile:    415.989.0932

Attorneys for Defendant
MERCEDES-BENZ USA., LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DIGBY ADLER GROUP, LLC, dba BANDAGO LLC, and BENJAMIN ROBLES, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case No. 3:14-cv-02349 TEH<br><br>**MERCEDES-BENZ USA, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>[FED. R. CIV. P. 12(B)(6)]<br><br>Judge:   Hon. Thelton E. Henderson<br>Date:    July 27, 2015<br>Time:    10:00 a.m.<br>Crtrm.:   2 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................................1

ARGUMENT .......................................................................................................................................2

I.  PLAINTIFF ROBLES'S OMISSIONS-BASED CLAIMS FAIL BECAUSE THE FACTS ALLEGED DO NOT ESTABLISH THAT MBUSA HAD A DUTY TO DISCLOSE ............................2

    A.  Plaintiffs Concede That MBUSA Did Not Actively Conceal the "Defect" ..............2

    B.  Even "Taken as a Whole," the TAC's Factual Allegations Fail to Establish MBUSA's Knowledge of the "Defect" at the Relevant Time ...................................3

II. PLAINTIFFS CONCEDE THAT ROBLES'S AFFIRMATIVE MISREPRESENTATION CLAIMS MUST BE DISMISSED ..................................................................................................................6

III. ROBLES'S SONG-BEVERLY CLAIM FAILS BECAUSE THE ALLEGED DEFECT DID NOT UNDERMINE THE OPERABILITY OR SAFETY OF HIS VEHICLE .......................................................7

IV. AS NAMED PLAINTIFFS, DIGBY ADLER AND ROBLES ARE ASSERTING CLAIMS NOW, SO THEY CANNOT RELY ON THEIR STATUS AS "CLASS MEMBERS" TO AVOID THEIR OBLIGATION TO PLEAD FACTS SUPPORTING THE CLAIMS THEY MAKE ...............................10

CONCLUSION ..................................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Suzuki Motor Corp. v. Sup. Ct.*,
    37 Cal. App. 4th 1291 (1995) ................................................................................................8

*Avedisian v. MBUSA*,
    2013 WL 2285237 (C.D. Cal. May 22, 2013) ........................................................................4

*Avedisian v. MBUSA*,
    43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014) ..........................................................................7

*Callaghan v. BMW of N. Am., LLC*,
    2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) ........................................................................6

*Cholakyan v. MBUSA*,
    796 F. Supp. 2d 1220 (C.D. Cal. 2011) ..................................................................................9

*Cirulli v. Hyundai Motor Co.*,
    2009 WL 5788762 (C.D. Cal. June 12, 2009) ........................................................................4

*Curl v. Wilson*,
    1994 WL 323998 (N.D. Cal. June 23, 1994) ..................................................................11, 12

*Daigle v. Ford Motor Co.*,
    713 F. Supp. 2d 822 (D. Minn. 2010) ...................................................................................11

*Decker v. Mazda Motor of Am., Inc.*,
    2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) .........................................................................5

*Elias v. Hewlett-Packard Co.*,
    950 F. Supp. 2d 1123 (N.D. Cal. 2013) ..................................................................................4

*Falk v. General Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................................................................................4

*Fisher v. Honda N. Am., Inc.*,
    2014 WL 2808188 (C.D. Cal. June 12, 2014) ....................................................................4, 6

*Grodzitsky v. Am. Honda Motor Co.*,
    2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ..........................................................................4

*Herremens v. BMW of N. Am., LLC*,
    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ..........................................................................4

*In re MyFord Touch Consumer Litig*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) .....................................................................................4

*Isip v. MBUSA*,
    155 Cal. App. 4th 19 (2007) ...................................................................................................7

# TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

*Keegan v. Am. Honda Motor Co.*,
 838 F. Supp. 2d 929 (C.D. Cal. 2012)..................................................................9, 10

*Kent v. Hewlett-Packard Co.*,
 2010 WL 2681767 (N.D. Cal. July 6, 2010) .................................................................10

*Kowalsky v. Hewlett-Packard Co.*,
 2011 WL 3501715 (N.D. Cal. Aug 10, 2011) ................................................................4

*Lacey v. Maricopa County*,
 693 F.3d 896 (9th Cir. 2012) ...................................................................................2, 12

*Larsen v. Trader Joe's Co.*,
 2012 WL 5458396 (N.D. Cal. Dec. 10, 2012) ..........................................................11, 12

*Lewis v. Casey*,
 518 U.S. 343 (1996) ...................................................................................................11

*Mariscal v. Graco, Inc.*,
 52 F. Supp. 3d 973 (N.D. Cal. 2014) .......................................................................2, 7

*Metz v. Soares*,
 142 Cal. App. 4th 1250 (2006) ..................................................................................12

*Nelson v. Nissan N. Am., Inc.*,
 894 F. Supp. 2d 558 (D.N.J. 2012) ..............................................................................9

*Qureshi v. Countrywide Home Loans, Inc.*,
 2010 WL 841669 (N.D. Cal. Mar. 10, 2010) ...............................................................3

*Rosen v. Unilever U.S., Inc.*,
 2010 WL 4807100 (N.D. Cal. May 3, 2010) ...............................................................3

*Stevenson v. Mazda Motor of Am., Inc.*,
 2015 WL 3487756 (D.N.J. June 2, 2015) ..................................................................11

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
 992 F. Supp. 2d 962 (C.D. Cal. 2014)...............................................................8, 9, 10

*Tietsworth v. Sears, Roebuck & Co.*,
 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................8, 10

*Troup v. Toyota Motor Corp.*,
 545 Fed. App'x 668 (9th Cir. 2013)...................................................................1, 7, 10

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S.Ct. 2541 (2011)................................................................................................11

*Williams v. Yamaha Motor Corp., U.S.A.*,
 -- F. Supp. 3d --, 2015 WL 2375906 (C.D. Cal. April 29, 2015) ...............................4, 5, 6

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Wilson v. Hewlett-Packard Co.*,
　　668 F.3d 1136 (2012) .................................................................................................. 1, 3, 4, 5

*Zambrano v. CarMax Auto Superstores, LLC*,
　　2014 WL 228435 (S.D. Cal. Jan. 21, 2014) ........................................................................ 10

**Statutes**

Federal Rules of Civil Procedure
　　Rule 8 ........................................................................................................................... 2, 11, 12
　　Rule 12(b)(6) ................................................................................................................ 3, 11, 12
　　Rule 9(b) ................................................................................................................................ 11
　　Rule 23 .............................................................................................................................. 11, 12

# INTRODUCTION

In opposition to MBUSA's motion to dismiss the TAC, plaintiffs concede they do not base MBUSA's disclosure obligation on "active concealment" of the purported defect, and they make no meaningful response to MBUSA's argument that the TAC lacks facts establishing MBUSA had "exclusive knowledge" of the "defect " at the time plaintiff Benjamin Robles purchased his vehicle in June 2012.  They contend that the TAC, "taken as a whole," sufficiently alleges MBUSA's knowledge—but they fail to point to a single factual allegation establishing that MBUSA knew of the claimed defect at the time of sale.  The cases upon which plaintiffs rely are inapposite, as they either (1) do not address this issue at all; or (2) contained specific factual allegations allowing a plausible inference of knowledge at the relevant time.  The Ninth Circuit's decision in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), is controlling here, and that decision, and its progeny, require fraudulent non-disclosure claims to be supported by factual allegations that are more detailed and robust than those in the TAC.  Undated customer complaints, warranty claims, and the like, cannot establish knowledge of the alleged defect at the time Robles bought his vehicle.

Plaintiffs concede Robles's Song-Beverly Act claim is based only on an alleged breach of the implied warranty of merchantability, not on a breach of express warranty, and they argue the TAC states such a breach by claiming that water leaked into Robles's vehicle four times during the three years he has owned and operated it.  But this alleged issue cannot constitute a breach of the implied warranty because it does not "drastically undermine[ ] the ordinary operation of the vehicle." *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 669 (9th Cir. 2013).  Plaintiffs cite no decision in which a defect of this nature—which undisputedly has no effect on the vehicle's operability or safety—can render the vehicle unmerchantable.  Plaintiffs' only resort is to argue, without citation to authority, that the Court should evaluate the rear air-conditioning unit independently of the vehicle, as if it were a distinct product to which an implied warranty separately applied.  But Robles did not purchase a rear air-conditioning unit; he purchased a motor vehicle, and the law is clear that it is the functionality of the *vehicle*, not individual component parts, that informs the implied warranty inquiry.  An alleged sporadically leaking air-conditioning unit is not the type of "fundamental defect" that renders the vehicle unfit for its ordinary purpose of providing transportation.

Finally, plaintiffs take the surprising—and legally unprecedented—position that they need not allege facts supporting certain of their claims because, "as members of the class," their claims cannot be addressed in the context of a motion to dismiss. Opp. at 14. Plaintiffs are wrong, because they are the **named** plaintiffs and each are asserting their claims in the TAC **now**; distinct from the absent class members who are not parties to the action until and unless a class is certified. It is already established that Digby Adler cannot allege any claim based on fraudulent concealment of the alleged defect. Digby Adler cannot avoid dismissal of a claim which it undeniably cannot assert. The argument for dismissal of Digby Adler's claim has nothing to do with typicality or adequacy issues, as plaintiffs misleadingly suggest. MBUSA's motion to dismiss is based on the fact that Digby Adler is currently before the Court, asserting a claim without factual support that that it previously waived by amending it out of the case. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (claims not repled in amended complaint are waived). Robles's strict liability claim also must be dismissed because, as a named plaintiff before the Court now, he must allege facts stating that claim on his own behalf—and fails to do so. Plaintiffs cite no case, and MBUSA is aware of none, allowing a named plaintiff to ignore the pleading requirements of Rule 8 by arguing it is merely as "a member of the class." In fact, the law is to the contrary.

## ARGUMENT

### I. PLAINTIFF ROBLES'S OMISSIONS-BASED CLAIMS FAIL BECAUSE THE FACTS ALLEGED DO NOT ESTABLISH THAT MBUSA HAD A DUTY TO DISCLOSE

#### A. Plaintiffs Concede That MBUSA Did Not Actively Conceal the "Defect"

As MBUSA explained in its opening brief (at 8-9), plaintiffs' attempt to base MBUSA's disclosure obligation on alleged "active concealment" of the purported defect fails because the TAC pleads no facts to support it. *See* TAC ¶ 75 (CLRA claim based on MBUSA's alleged "active concealment of material facts from Plaintiff Robles"). Plaintiffs offer no response to this argument and have therefore conceded the point. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014) (Henderson, J.) ("Defendant moves for summary judgment on Plaintiff's claims for breach of warranty. Plaintiff failed to address these arguments in his opposition brief, and therefore conceded these claims.") (citing *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6

n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss as an "abandonment of those claims")).  Accordingly, to the extent Robles's CLRA claim is based on "active concealment," it should be dismissed.

### B. Even "Taken as a Whole," the TAC's Factual Allegations Fail to Establish MBUSA's Knowledge of the "Defect" at the Relevant Time

Plaintiffs' attempt to base a disclosure obligation on "exclusive knowledge" fails as well, because the TAC's allegations aimed at establishing MBUSA's knowledge lack facts establishing *when* MBUSA first knew of the alleged defect.  Tellingly, plaintiffs make no response to this argument because they cannot; nowhere does the TAC plead facts demonstrating MBUSA's knowledge of the alleged defect in June 2012, when Robles purchased his vehicle.  Instead, plaintiffs argue that the TAC, "taken as a whole," "sets forth sufficient allegations from which the Court may infer that MBUSA knew of the leaks."  Opp. at 9.  But plaintiffs miss the point—even assuming for argument's sake that the TAC's allegations permit an inference "that MBUSA knew of the leaks," plaintiffs must also plead facts establishing that MBUSA "was aware of the [alleged] defect *at the time of sale*."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (emphasis in original).  Plaintiffs point to no factual allegations establishing the timing of MBUSA's knowledge.

Plaintiffs rely on *Rosen v. Unilever U.S., Inc.*, 2010 WL 4807100 (N.D. Cal. May 3, 2010), to contend that MBUSA's argument regarding the absence of necessary factual allegations is based on "the fallacy of composition" (Opp. at 10), but in *Rosen* it was the ***plaintiff's*** legal theory of fraudulent misrepresentation that the court found fallacious—not the defendant's argument that, under Rule 12(b)(6), the complaint lacked essential facts to support that claim.  *See* 2010 WL 4807100, at *5.  Indeed, in *Rosen* the court agreed with the defendant that the complaint failed to allege facts sufficient to state a claim and dismissed the plaintiffs' claims with prejudice.  *Id*. at *6.

There is nothing illogical or fallacious about MBUSA's argument that the TAC lacks the facts necessary to establish MBUSA's knowledge of the "defect" at the time plaintiff purchased the product, and numerous courts—including the Ninth Circuit—have held that dismissal of fraud-based claims is warranted where such facts are absent.  *See, e.g.*, *Wilson*, 668 F.3d at 1147; *Williams v. Yamaha Motor Corp., U.S.A.*, -- F. Supp. 3d --, 2015 WL 2375906, at *8 (C.D. Cal.

1  Apr. 29, 2015) (fraud claims dismissed where the plaintiffs "failed adequately to plead presale
2  knowledge [of the alleged defect] by Defendant"); *Fisher v. Honda N. Am., Inc.*, 2014 WL
3  2808188, at *4 (C.D. Cal. June 12, 2014) (dismissing fraud-based claims where the plaintiff
4  "failed to plead facts that plausibly suggest that Honda knew about the alleged defect at the time in
5  2009 that he purchased his Accord"); *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at
6  *6 (C.D. Cal. Feb. 19, 2013) (alleged "pre-release testing data, early consumer complaints to
7  Honda and dealers, testing done in response to complaints, replacement part sales data, [and]
8  customer complaints" were insufficient because the allegations "fail[ed] to suggest how this
9  information could have informed Defendant of the alleged defect at the time of sale"); *Herremens
10 v. BMW of N. Am., LLC*, 2014 WL 5017843, at *16-*17 (C.D. Cal. Oct. 3, 2014) (same); *Elias v.
11 Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1138 (N.D. Cal. 2013) (same).

12        Plaintiffs fail to distinguish *Wilson* and its progeny in any meaningful way.  Instead, they
13 merely claim that the TAC's allegations "taken as a whole" support an inference of knowledge
14 and cite a string of cases in support, without explaining how any fact alleged in the TAC
15 establishes knowledge before Robles purchased his vehicle.  *See* Opp. at 11-12.  Moreover, many
16 of plaintiffs' cases do not address the argument at issue here—*i.e.*, that the facts in the TAC are
17 insufficient to establish that MBUSA was aware of the alleged defect *at the time of sale*—and
18 those that do found that the plaintiffs had made specific factual allegations establishing presale
19 knowledge.  *See Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *4 (N.D. Cal. Aug 10,
20 2011) (finding that defendant's presale representations that the product met ISO/IEC testing
21 standards allowed plausible inference that pre-release testing should have informed defendant of
22 alleged defect); *In re MyFord Touch Consumer Litig*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014)
23 (complaint specified dates of alleged customer complaints and warranty claims that preceded
24 plaintiffs' purchases); *Avedisian v. MBUSA*, 2013 WL 2285237, at *7 (C.D. Cal. May 22, 2013)
25 (same); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (same);
26 *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (alleged
27 corrosion issue was well known in auto industry and defendant failed to follow industry-
28 established best practices and also knew of corrosion issues with its vehicles based substantial

number of NHTSA complaints).[1]

The Ninth Circuit's decision in *Wilson*, and the more recent decisions following it, make clear that in order to establish a duty to disclose based on a defendant's "exclusive knowledge" of an alleged defect, a complaint must, at a minimum, include facts establishing that such knowledge existed at the time the plaintiff purchased the product at issue. The TAC's factual allegations fall short of this requirement, whether analyzed individually or collectively.

The recent decision in *Williams v. Yamaha Motor Corp., U.S.A.*, is instructive, as the plaintiffs' generic allegations regarding knowledge were nearly identical to those in the TAC. Like the TAC at issue here, the complaint in *Yamaha* based allegations of knowledge on "pre-release testing data and engineering research," "customer complaints," and "warranty claims," and the court found those allegations insufficient—whether alone or in combination—to establish the defendant's "presale knowledge of a product defect." 2015 WL 2375906, at *8-*12. Specifically, the court found that generic allegations of "pre-release testing" were inappropriate because (among other things) the defendant—like MBUSA here—was merely the distributor of the products at issue, and alleged pre-release product testing "that may reveal a defect cannot establish presale knowledge on behalf of a distributor." *Id*. at *9.

Similarly, the court rejected the plaintiffs' reliance on "customer complaints" where the facts alleged failed to identify any such complaints "during [the relevant] timeframe." *Id*. at *10. Relying on *Wilson*, the court expressed doubt that customer complaints could establish knowledge of defect but concluded, in any event, that plaintiffs "failed to allege even a single complaint that predates the sale of" the allegedly defective product to the plaintiffs. *Id*. The court also found allegations regarding "many warranty claims" relating to the alleged symptom (corrosion of the engine's exhaust system) to be "speculative because it requires the Court to infer that Defendant's

---

[1] Only one case cited by plaintiffs suggests that a fraudulent non-disclosure claim can survive a motion to dismiss without facts establishing the defendant's knowledge of the defect at the time of sale. *See Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *1 (C.D. Cal. Oct. 24, 2011) (denying motion to dismiss fraud claims even though complaint "does not state when or from whom" the plaintiff purchased her vehicle). MBUSA respectfully suggests that the reasoning in *Decker* cannot survive the Ninth Circuit's holding in *Wilson*, which requires facts establishing the defendant's knowledge at the time of sale.

1 exposure to these warranty claims necessarily led it to discover" the specific defect at issue. *Id*. at
2 *11; *accord Fisher*, 2014 WL 2808188, at *4 (allegations that defendant tracked complaints to
3 NHTSA, received customer complaints, and issued service bulletins relating to alleged defect were
4 collectively insufficient to establish knowledge of the alleged defect at the time of sale).

5       Although plaintiffs claim that MBUSA issued a service bulletin in 2010, the Court has
6 already held that the TAC's allegations regarding the bulletin are insufficient to support a claim
7 because, among other things, the TAC "does not provide the actual content of the bulletin." Dkt.
8 38 at 5:16.  Plaintiffs' only response, which is relegated to a footnote, simply ignores the Court's
9 ruling and insists that the TAC does allege the bulletin's content. Opp. at 10 n.5.  Regardless, the
10 TAC's allegations regarding the service bulletin fall short of establishing MBUSA's knowledge
11 that Robles's model year 2011 Sprinter van contained a defect in the rear air-conditioning unit.
12 *See Fisher*, 2014 WL 2808188, at *6 (service bulletin relating to alleged defect in class vehicles
13 was insufficient to show presale knowledge where allegations did not sufficiently explain how the
14 bulletin demonstrated knowledge of defect in plaintiff's vehicle).

15       Finally, plaintiffs curiously assert that MBUSA "elected not to address the NHTSA
16 complaints in its motion" (Opp. at 13 n.7), despite MBUSA's detailed analysis and explanation
17 why the TAC's allegations regarding NHTSA complaints were insufficient.  *See* Br. at 6-7.  To
18 reiterate, the TAC's vague reference to six undated NHTSA complaints cannot establish
19 MBUSA's knowledge of a "defect" at all, let alone at the relevant time, *i.e.*, before June 2012.  *See*
20 *Callaghan v. BMW of N. Am., LLC*, 2014 WL 6629254, at *4 (N.D. Cal. Nov. 21, 2014) (eleven
21 consumer complaints to NHTSA insufficient to impute knowledge of defect); *Fisher*, 2014 WL
22 2808188, at *5 (allegations that defendant was aware of undated NHTSA complaints regarding
23 alleged defect insufficient to establish defendant's knowledge at the time of sale).

24
25 **II.    PLAINTIFFS CONCEDE THAT ROBLES'S AFFIRMATIVE MISREPRESENTATION CLAIMS MUST BE DISMISSED**

26       Plaintiffs concede that "the TAC does not assert any claims based on fraudulent
27 misrepresentations."  Opp. at 7 n.4.  Thus, the Court should dismiss Robles's CLRA and UCL
28 claims to the extent they are based on alleged misrepresentations—as plaintiffs include in the TAC

allegations that now are admitted and agreed-upon as invalid.  *See* TAC ¶¶ 73-74 (CLRA cause of action based in part on allegation that MBUSA "has represented … that the AC units do not have any defects"); *id*. ¶ 85 (UCL cause of action based in part on allegation that Robles "relied on the reputation of Mercedes and the affirmative representations that [MBUSA] had made in its promotional materials and warranties").  For the reasons stated in MBUSA's opening brief (at 10-11), the dismissal of these claims should be with prejudice.

### III.  ROBLES'S SONG-BEVERLY CLAIM FAILS BECAUSE THE ALLEGED DEFECT DID NOT UNDERMINE THE OPERABILITY OR SAFETY OF HIS VEHICLE

Plaintiffs do not address MBUSA's argument that the TAC fails to allege facts establishing any breach of express warranty, and thus plaintiffs concede that Robles cannot state a Song-Beverly Act claim on that basis.  *See Mariscal*, 52 F. Supp. 3d at 984.  Plaintiffs' only argument—that because the rear air-conditioning unit in Robles's vehicle leaked water on four occasions, the vehicle was unmerchantable—finds no support under California law.

Plaintiffs rely primarily on *Isip v. MBUSA*, 155 Cal. App. 4th 19 (2007) (Opp. at 4), but that decision is readily distinguishable.  There, the plaintiff alleged a laundry list of problems with the vehicle, including that it "made a loud tugging noise when she engaged the gear and . . . a clanking noise when [she] released the brake in reverse"; "pulled back, hesitated, and then took off like a slingshot" when the gears shifted and before slowing down; the engine "made a loud knocking sound" and leaked fluid; "[w]hite smoke came out of the exhaust system"; and "the air-conditioning emitted an offensive smell ***every time*** it was turned on."  *Id*. at 22 (emphasis added).  As the Ninth Circuit observed in addressing *Isip*'s applicability to other alleged vehicle defects, these allegations sufficiently stated a claim for breach of the implied warranty because the purported problems "drastically undermined the ordinary operation of the vehicle."  *Troup*, 545 Fed. App'x at 669.

Here, by contrast, plaintiff Robles alleges that on four occasions in years of driving, water leaked into the van through the rear air-conditioning unit.  This allegedly sporadic issue does not "drastically undermine[ ] the ordinary operation of the vehicle" or pose a safety hazard and, therefore, cannot render the vehicle unmerchantable.  *See id*.; *Avedisian v. MBUSA*, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014) (alleged defect that did not "impact the operability of Plaintiff's

vehicle" or pose an unreasonable safety hazard could not breach the implied warranty of merchantability as a matter of law).

Recognizing that the alleged defect in this case does not affect the vehicle's operability or safety, plaintiffs suggest that the functionality of the rear air-conditioning unit should be assessed independently of the vehicle's overall functionality. Opp. at 5.  This argument conflates principles of express warranty with implied warranty because, unlike an express warranty, the implied warranty does not cover independent component parts but rather "requires only that *a vehicle* be reasonably suited for ordinary use." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (emphasis added).  It is therefore unsurprising that plaintiffs cite no authority, and MBUSA is aware of none, in which a court has analyzed the "functionality" of a single component part, as opposed to the vehicle's overall functionality, in determining whether the implied warranty was breached.  Indeed, the law is to the contrary.  *See id.* (under the implied warranty of merchantability, "[t]he basic inquiry [ ] is whether *the vehicle* was fit for driving") (emphasis added); *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995) ("[I]n the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders *the vehicle* unfit for its ordinary purpose of providing transportation.") (emphasis added); *see also Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("The mere manifestation of a defect by itself does not [ ] breach the implied warranty of merchantability.").

Plaintiffs suggest that the functionality of the rear air-conditioning unit should be assessed apart from the vehicle in which it is installed because it was "separately bargained for." Opp. at 5. Again, plaintiffs cite not a single case applying this standard.  And again, the law is to the contrary. For example, in *Tae Hee Lee*, the plaintiffs alleged that their vehicles' "pre-collision system ('PCS')," which was part an optional "Advanced Technology Package," failed to function properly because the automatic braking feature of the PCS achieved "only a 'negligible' reduction in speed." 992 F. Supp. 2d at 967-68.  In analyzing whether the plaintiffs stated a claim for breach of the implied warranty of merchantability, the court did not independently focus on the performance of the "separately bargained for" automatic braking system; rather, it made clear that "[t]he basic

CBM-MERCEDES\SF660495-1                         -8-                    Case No. 3:14-cv-02349 TEH
MBUSA'S REPLY ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT

1  inquiry [] is whether *the vehicle* was fit for driving." *Id*. at 980 (emphasis added). And because the
2  alleged braking defect did not significantly impair the vehicles' ability to provide safe and reliable
3  transportation, the court dismissed the implied warranty claim with prejudice. *Id*.[2]

4  Plaintiffs additionally argue that the implied warranty is breached if the vehicle does not meet
5  "the expectations of consumers" (Opp. at 6)—but again, plaintiffs cite not a single authority
6  indicating that the "expectations" protected by the implied warranty relate to each discrete
7  component part, as opposed to the *vehicle's* overall operability and safety. The relevant authorities
8  make clear that the implied warranty guarantees a *vehicle* will possess "a minimum level of quality";
9  it does not guarantee that consumers' "expectations" will be met with respect to the individual
10 performance of every component part in the vehicle. *Tae Hee Lee*, 992 F. Supp. 2d at 980.

11 Plaintiffs' reliance on *Cholakyan v. MBUSA*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011) (*cited in*
12 Opp. at 6), is misplaced. The court's decision in *Cholakyan* was ***not*** based on consumers'
13 expectations regarding water leaks, as plaintiffs misleadingly suggest (Opp. at 6). *See* 796 F. Supp.
14 2d at 1238 (discussing consumer expectations regarding water leaks in context of CLRA and UCL
15 claims, not implied warranty claim). Rather, the court found that the complaint stated an implied
16 warranty claim because it claimed that "the water leak defect [at issue in *Cholakyan* allegedly could]
17 . . . cause engine failure, suddenly and unexpectedly, at any time and under any driving condition or
18 speed, thereby contributing to traffic accidents, which can result in personal injury or death.'
19 Vehicles subject to engine failure cannot be said to be merchantable." 796 F. Supp. 2d at 1244. No
20 such consequences are alleged in this case; nor could they be. Plaintiffs' reliance on *Nelson* and
21 *Keegan* (Opp. at 6) is misplaced for the same reason, as both cases alleged that the defect affected
22 the ordinary operation of the vehicle and presented a safety hazard. *Nelson v. Nissan N. Am., Inc.*,
23 894 F. Supp. 2d 558, 561 (D.N.J. 2012) (allegedly defective transmissions caused "delayed shift
24 patterns, excessive heat buildup, slippage, harshness, premature internal part wear, metal debris" and

---

[2] In addition to being contrary to established law, plaintiffs' "separately bargained for" standard would lead to absurd and inconsistent results. For example, a vehicle would be unmerchantable under plaintiffs' theory if an upgraded sound system was defective in a vehicle where the system was "separately bargained for" as optional equipment, yet the result would be different in a vehicle where the same system came a standard equipment. In any event, the TAC does not allege facts showing Robles "separately bargained for" the rear air-conditioning unit. *See* TAC ¶¶ 20-25.

"pose significant safety risks due to an unpredictable acceleration response and sudden total transmission failure"); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 942-43 (C.D. Cal. 2012) (allegedly defective rear suspension caused extremely rough ride, exceptionally loud noise, and uneven and premature tire wear that allegedly led to blowout incidents resulting in a significant safety hazard).

Tellingly, plaintiffs do not respond to MBUSA's point that they have continued driving their vans—and Digby Adler has continued purchasing vans for its fleet—notwithstanding the alleged defect, which undermines any claim that the van are unmerchantable. *See, e.g.*, *Tae Hee Lee*, 992 F. Supp. 2d at 980 (implied warranty claim dismissed because, among other reasons, "Plaintiffs have not alleged that they stopped using their vehicles" due to the defect) (citing *Kent v. Hewlett-Packard Co.*, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010) (dismissing implied warranty claim because "[p]laintiffs do not allege that they have been forced to abandon the use of their computers"). MBUSA's point is not, as plaintiffs wrongly suggest, that a vehicle must be "entirely inoperable for the implied warranty of merchantability to be breached." Opp. at 4. Rather, plaintiffs' ongoing use and continued purchase of the vehicles illustrates that the alleged defect is not one that "drastically undermine[s] the ordinary operation of the vehicle." *Troup*, 545 Fed. App'x at 669.

It is beyond dispute that the "implied warranty of merchantability does not promise a perfect or even problem-free vehicle." *Zambrano v. CarMax Auto Superstores, LLC*, 2014 WL 228435, at *7 (S.D. Cal. Jan. 21, 2014); *Tietsworth*, 720 F. Supp. 2d at 1142 ("The mere manifestation of a defect by itself does not [ ] breach the implied warranty of merchantability."). Again, plaintiffs cite no case—and MBUSA is aware of none—holding that the sporadic failure of a passenger-comfort component, which has no effect on the vehicle's operability or safety, is sufficient to render the vehicle unmerchantable. An air-conditioning unit that occasionally leaks is not the stuff of which implied warranty claims are made.

**IV.   AS NAMED PLAINTIFFS, DIGBY ADLER AND ROBLES ARE ASSERTING CLAIMS NOW, SO THEY CANNOT RELY ON THEIR STATUS AS "CLASS MEMBERS" TO AVOID THEIR OBLIGATION TO PLEAD FACTS SUPPORTING THE CLAIMS THEY MAKE**

Even though Digby Adler abandoned its fraudulent omission claim by voluntarily dismissing and not repleading it, and even though the Court held that Digby Adler's "fraudulent omissions

1 theory is unsupported" by the current factual allegations (Dkt. No. 38 at p. 8), plaintiffs argue that
2 MBUSA's motion to dismiss that claim is improper because a motion to dismiss "keys on the
3 representative party, not all of the class members." Opp. at 14.

4 Plaintiff's argument is incorrect—all of Digby Adler's claims can be attacked by motion to
5 dismiss because they are **presently** before the Court. See, e.g., *Larsen v. Trader Joe's Co.*, 2012 WL
6 5458396, at *5 (N.D. Cal. Dec. 10, 2012) ("At th[e pleading] stage plaintiffs must state a claim that
7 can survive a Rule 12(b)(6) motion, irrespective of the future class."); *Curl v. Wilson*, 1994 WL
8 323998, at *2 (N.D. Cal. June 23, 1994) ("that the pleadings are framed as a 'class action' does not
9 change [the requirement that] the named representative plaintiff [ ] must allege facts supporting all
10 of the elements of a cognizable claim for relief to avoid dismissal under Rule 12"); see also
11 *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *4 (D.N.J. June 2, 2015) ("In the
12 context of a class action, the individual named plaintiffs' claims should each satisfy Rule 9(b)
13 independently.") (internal quotation marks omitted). Because TAC fails to allege facts establishing
14 a particular cause of action on behalf Digby Adler, then that cause of action must be dismissed as to
15 Digby Adler. See, e.g., *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 827 (D. Minn. 2010) (in
16 putative class action with four named plaintiffs, warranty-based claims of two named plaintiffs
17 dismissed under Rule 12(b)(6) where complaint failed to allege facts supporting claims as to those
18 two plaintiffs). This is **not** a situation where Digby Adler is an absent class member, who is not a
19 party asserting any claim until and unless a class is certified.

20 Plaintiffs cite no case, and MBUSA is aware of none, by which a named plaintiff—presently
21 before the Court—can fail to assert facts supporting a claim on its own behalf but still preserve its
22 right to recover for that claim "as a member of the class," if one is certified. The law is to the
23 contrary. See, e.g., *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a
24 class must allege and show that they personally have been injured, not that injury has been suffered
25 by other, unidentified members of the class to which they belong and which they purport to
26 represent.") (internal quotation marks omitted). Digby Adler cannot hide behind Rule 23 to avoid
27 the requirements of Rule 8 or Rule 9(b). See, e.g., *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541,
28 2561 (2011) ("the Rules Enabling Act forbids interpreting Rule 23 to "'abridge, enlarge or modify

any substantive right'"). Digby Adler's indisputably abandoned fraudulent omission claim must be dismissed now—with prejudice. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (claims not repled in amended complaint are waived).[3]

Plaintiffs similarly try to skirt their basic obligations under Rule 8 with respect to the product liability claim, which is nominally brought "on behalf of Plaintiff Bandago and the Class." TAC at p. 12. To the extent plaintiff Robles—who, like Digby Adler, is a representative plaintiff—is pursuing a product liability claim, he must plead facts establishing that he has such a claim. *See, e.g., Larsen*, 2012 WL 5458396, at *5; *Curl*, 1994 WL 323998, at *2.

Plaintiffs suggest that Robles has adequately alleged damages that could be recovered under a product liability theory, by claiming that water leaks "dampened the interior and damaged the headliner" in his vehicle. Opp. at 14 n.14 (citing TAC ¶ 24). But the TAC makes clear that the damaged headliner is being repaired under warranty at no cost to Robles. TAC ¶ 24 ("The dealership has since agreed to repair the leak and the damaged headliner under warranty."). Accordingly, this cannot provide a basis for a product liability claim. *See, e.g., Metz v. Soares*, 142 Cal. App. 4th 1250, 1255 (2006) (plaintiff could not recover in tort for damages to vehicle where plaintiff had already been fully compensated for those damages). As such, Robles's product liability claims also should now be dismissed.

## CONCLUSION

For the foregoing reasons, the Second, Third, Fourth, Fifth, and Seventh Causes of Action in the Third Amended Complaint should be dismissed with prejudice.

Dated: June 30, 2015

Respectfully submitted,

CARROLL, BURDICK & McDONOUGH LLP

By /s/ *Troy M. Yoshino*
TROY M. YOSHINO
Attorneys for Defendant Mercedes-Benz USA, LLC

---

[3] MBUSA's argument is in no way based on the Rule 23 concepts of typicality or adequacy, as plaintiffs suggest. Opp. at 14. Plaintiffs are certainly correct that Digby Adler is an atypical and inadequate representative with respect to the claims based on fraudulent concealment—because Digby Adler cannot itself assert those claims. But that does not somehow immunize Digby Adler's factually deficient and legally abandoned claim from dismissal under Rule 12(b)(6).