UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGBY ADLER GROUP, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ U.S.A., LLC,<br><br>Defendant. | Case No. 14-cv-02349-TEH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court on Defendant's motion to dismiss Plaintiffs' Third Amended Complaint ("TAC"). (Docket No. 46). Plaintiffs opposed (Docket No. 50), and Defendant timely replied (Docket No. 51). After carefully considering the Parties' written arguments, the Court finds further argument unnecessary, and hereby GRANTS IN PART AND DENIES IN PART Defendant's motion for the reasons set forth below.

**BACKGROUND**

The Parties are familiar with the background of this case from the previous motion to dismiss adjudicated by this Court in April. After the Court granted that motion in part, (Docket No. 38), Plaintiffs amended their complaint on April 28, 2015. (Docket No. 41). The allegations relating to Plaintiff Digby Adler (d/b/a "Bandago") remain essentially unchanged in the TAC, except Plaintiffs have not re-pled the fraudulent misrepresentation claim that the Court previously dismissed. Most significantly, the TAC adds Benjamin Robles as a named plaintiff and asserts five new causes of action on Robles's behalf.

According to the TAC, Robles purchased a new Sprinter van in June 2012. TAC ¶ 20. The van was covered by a six year/125,000 mile extended warranty. *Id.* Robles alleges that within three days after he took delivery of the van, the rear air-conditioning unit ("AC unit") "leaked water into the van's passenger compartment and on its passenger seats." *Id.* ¶¶ 22-24. On four separate occasions, Robles returned the van to the dealer,

where "temporary" fixes were made to the AC unit under warranty at no cost to Robles. *Id.* When Robles returned the van to the dealership the first time, he was "informed by the service personnel for the first time that Mercedes had issued a 'service advisory' concerning leaking AC units." *Id.* ¶ 21.

Plaintiff Robles now brings claims for common-law fraudulent concealment, fraudulent business practices, unlawful business practices, a violation of California's Consumer Legal Remedies Act (CLRA), and breach of warranty under the Song-Beverly Warranty Act. *Id.* at 14-25. Plaintiff Digby Adler separately reasserts claims for product liability, and both Plaintiffs assert claims for unfair business practices and declaratory relief. *Id.* at 21, 25. These claims are variably brought by Plaintiffs as class representatives and on behalf of all California owners and lessees of 2010-14 Sprinter vans equipped with "Rear Roof Air Conditioning Packages," which are allegedly "defective" due to their propensity to leak water into the passenger compartment. *Id.* ¶¶ 1-3.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."

*Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). Dismissal for failure to state a claim under Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

**DISCUSSION**

**I.     Defendant's Motion to Dismiss the Omissions-Based Claims is DENIED.**

Plaintiff Robles brings three causes of action based on the non-disclosure of the alleged AC unit defect: common-law fraudulent concealment, a CLRA claim, and a fraud-based claim under California's Unfair Competition Law (UCL). TAC ¶¶ 14, 17, 23. Defendant seeks the dismissal of these causes of action under Rule 12(b)(6). Mot. at 4.

For an omission to be actionable in California, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). Plaintiffs state that "the fraud-based claims in the TAC are based entirely on fraudulent omissions. There are no fraudulent misrepresentation claims for the Court to dismiss."[1] Opp'n at 7 n. 4. Accordingly, the Court limits its inquiry to whether Defendant had a duty to disclose the alleged AC defect to Plaintiffs.

"Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the

---

[1] Because Plaintiffs have expressly disclaimed any affirmative misrepresentation claims, the Court DISMISSES WITH PREJUDICE Robles's CLRA and UCL claims to the extent they are based on affirmative misrepresentations. *See* TAC ¶¶ 73-74, 85.

3

1  plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and
2  (4) when the defendant makes partial representations but also suppressed some material
3  facts." *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010).

### A. Plaintiffs concede that Defendant did not actively conceal the defect.

In its moving papers, Defendant contended that the TAC pleads no facts to support a claim of "active concealment." Mot. at 8-9. Plaintiffs failed to respond to this argument and have therefore conceded the point. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014) ("Defendant moves for summary judgment on Plaintiff's claims for breach of warranty. Plaintiff failed to address these arguments in his opposition brief, and therefore conceded these claims.") (citing *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6 (N.D. Cal. Mar. 10, 2010) (failure to respond in opposition brief to claim challenged in motion to dismiss is an "abandonment of those claims")). Consequently, any allegations of active concealment, *see e.g.*, TAC ¶ 75, are hereby DISMISSED WITH PREJUDICE.

### B. The TAC supports an inference of exclusive knowledge.

Robles claims that Defendant had exclusive knowledge that the Sprinter vans' rear air-conditioning unit was defective based on the existence of customer complaints, warranty service requests and the sale of replacement parts, and a 2010 Technical Service Bulletin ("TSB"). TAC ¶ 26. Defendant contends that these allegations are insufficient to support an inference that Defendant had exclusive knowledge of the alleged defect and, therefore, a duty to disclose the defect to Plaintiffs. Mot. at 4. This Court disagrees.

Defendant holds Plaintiffs to an inappropriately high standard. Contrary to Defendant's assertion, the TAC does not need to "establish MBUSA knew to a substantial certainty" that the AC units were defective. Mot. at 1. Instead, Plaintiffs are required to "plead[ ] factual content that allows the court to draw a reasonable inference that the defendant is liable," with allegations of more substance than "naked assertions devoid of

4

1  further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).
2  While claims that sound in fraud must usually be pled with particularity, Fed. R. Civ. P.
3  9(b), when a fraud claim is based on an alleged omission, the claim "can succeed without
4  the same level of specificity required by a normal fraud claim." *MacDonald v. Ford*
5  *Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014). "This is because a plaintiff
6  alleging an omission-based fraud will not be able to specify the time, place, and specific
7  content of an omission as would a plaintiff in a false representation claim." *Id.* (internal
8  quotation marks omitted). Furthermore, "[k]nowledge need not be pleaded with
9  particularity." *Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *4 (N.D. Cal.
10  Aug. 10, 2011).
11  Numerous courts have addressed factual allegations similar to those in this case,
12  and a casual observer would note that they appear to be divided as to whether such
13  allegations are sufficient to support an inference of exclusive knowledge. *Compare Mui*
14  *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (complaint alleging
15  knowledge based on "pre-release testing data, early consumer complaints about the defect
16  to Defendants' dealers who are their agents for vehicle repairs, dealership repair orders,
17  testing conducted in response to those complaints, and other internal sources" sufficient to
18  support a CLRA claim); *with Grodzitsky v. Am. Honda Motor Co.*, Inc., 2013 WL 690822,
19  at *6-7 (C.D. Cal. Feb. 19, 2013) (complaint alleging knowledge based on "pre-release
20  testing data, early consumer complaints to Honda and dealers, testing done in response to
21  complaints, replacement part sales data, aggregate data from Honda dealers, and other
22  internal sources" insufficient to support a CLRA claim). However, in *MacDonald*, a court
23  from this district recently explained that the "dispositive" issue in these cases "was
24  whether the plaintiffs provided additional information supporting their allegations." 37 F.
25  Supp. 3d at 1098. For the *MacDonald* court, the allegations were sufficient because the
26  plaintiffs in that case pointed to other supporting evidence in addition to the evidence
27  provided in *Grodzitsky*, including a series of TSBs. Plaintiffs in this case do the same by
28  offering the 2010 TSB.

5

This Court previously decided that the 2010 TSB could not form the basis for fraud, because state law prohibited Plaintiffs from alleging that the bulletin was an assurance made to purchasers about the existence or nonexistence of a defect in current or future Sprinter vans. Order on Motion to Dismiss at 5. Plaintiffs now use the TSB for a different purpose – this time a permissible one. Specifically, Plaintiffs argue that the TSB supports an inference that Defendant knew of the defective AC units at the time of Robles's purchase. Opp'n at 10. The Court joins the MacDonald court in finding that TSBs may be used for this purpose. *See MacDonald*, 37 F. Supp. 3d at 1093 ("One plausible inference that can be drawn from the three TSBs is that Ford was generally aware of problems with the coolant pump, and that despite this awareness it continued to sell vehicles containing the defective part."). Moreover, unlike the TSBs at issue in *Fisher v. Honda N. Am., Inc.*, 2014 WL 2808188, at *6 (C.D. Cal. June 12, 2014), which were insufficient to support an inference of knowledge because they did not refer to the generation of vehicle purchased by the plaintiff and did not clearly relate to the alleged defect, the 2010 TSB clearly identified the specific defect and detailed the steps recommended to address it. *See* TAC ¶¶ 26, 47.

Defendant's argument that the TAC is factually insufficient to support an inference of exclusive knowledge relies primarily on distinguishable cases, including *Grodzitsky*, which the Court distinguished above, and *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012). In *Wilson*, the plaintiffs alleged that the defendant was aware of the defect because it had "access to the aggregate information and data regarding the risk of overheating," and had been subject to a previous lawsuit involving the same defect but in a different model. *Id.* at 1146. Additionally, the plaintiffs pointed to fourteen customer complaints, but did not indicate where or how the complaints were made. *Id.* at 1148. Furthermore, of the fourteen complaints, twelve were undated and two were made over two years after the plaintiffs purchased the defective laptops. *Id.* The Ninth Circuit affirmed the district court's finding that these allegations were insufficient to support an inference of knowledge. *Id.*

1   Here, Plaintiffs provide more compelling factual support than was available to the
2 court in *Wilson*. Plaintiffs allege that Defendant had access to multiple sources of
3 information that support an inference of knowledge: replacement part sales and warranty
4 repair requests, direct customer feedback (including Digby Adler's complaints), indirect
5 complaints from consumers through online fora, at least six National Highway
6 Transportation Safety Administration ("NHTSA") complaints from as early as 2007,[2] and
7 the pre-release and subsequent testing and investigations undertaken by Defendant
8 resulting in the 2010 TSB. TAC ¶ 26. Where dates are provided, they precede Robles's
9 2012 purchase, unlike the complaints found insufficient in *Wilson*. 668 F.3d at 1148.

When read as a whole, the factual allegations contained in the TAC make this case more like those cited by Plaintiffs, which survived similar motions to dismiss, than those identified by Defendant, which did not. *See Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. 05-02042-CRB, 2007 WL 2457534, at *1 (N.D. Cal. Aug. 27, 2007) ("In considering the strength of the inference established by the allegations, a district court cannot consider allegations 'in a vacuum,' but instead must 'consider the complaint in its entirety'"). Having sufficiently alleged facts supporting the inference that Defendant had exclusive knowledge of the AC defect prior to Robles's purchase of the Sprinter van, Plaintiffs' TAC sufficiently pleads a claim for fraudulent omission. Consequently, Defendant's motion to dismiss Plaintiffs' fraudulent omission-based claims is hereby DENIED.

## II. Defendant's Motion to Dismiss the Song-Beverly Act Claim Is GRANTED IN PART.

The Song-Beverly Consumer Warranty Act ("Song-Beverly Act") was enacted to regulate warranties and strengthen consumer remedies for breaches of warranty. *National*

---

[2] Various courts have found that NHTSA complaints support an inference of knowledge. *See, e.g.*, *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *3-4 (C.D. Cal. June 12, 2009). The cases cited by Defendant, *Callaghan v. BMW of N. Am., LLC*, 2014 WL 669254, at *4 (N.D. Cal. Nov. 21, 2014), and *Fisher*, 2014 WL 2808188, at *5, dealt almost exclusively with undated NHTSA complaints or complaints that post-dated the plaintiff's purchase. This is not true of the NHTSA complaints in this case, which predate Robles's purchase by up to five years. TAC ¶ 26.

7

*R.V., Inc. v. Foreman*, 34 Cal. App. 4th 1072, 1077 (1995). The Act is intended to protect purchasers of "consumer goods," defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a). Unless specific disclaimer methods are followed, an implied warranty of merchantability accompanies every retail sale of consumer goods in the state. *Id.* § 1792.

### A. Defendant's motion to dismiss the express warranty claim is GRANTED.

Defendant asks the Court to dismiss Plaintiffs' breach of express warranty claim under the Song-Beverly Warranty Act. Mot. at 11. As an initial matter, the Court GRANTS Defendant's request for judicial notice (Docket No. 47) of the New Vehicle Limited Warranty applicable to Plaintiff Benjamin Robles's model-year 2011 Sprinter van and referenced in the TAC. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (in ruling on Rule 12(b)(6) motion, court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading"); *see, e.g.*, *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 814 n.1 (N.D. Cal. 2014) (taking judicial notice of warranty in product defect case).

The TAC provides that each time Robles brought his van to the dealership for repairs, the dealership performed repairs under the warranty at no cost. TAC ¶¶ 20-24. Robles, therefore, cannot assert a breach of express warranty claim because the facts alleged in the TAC demonstrate that Defendant "more than fulfilled its obligations under the warranty." *Sumer v. Carrier Corp.*, 2015 WL 758314, at *1 (N.D. Cal. Feb. 20, 2015). Consequently, insofar as Robles claims a breach of express warranty because of a design defect in the AC unit, *see* TAC ¶ 67, his claim fails as a matter of California law. *See* Ex. A to RJN (Docket No. 47-1) (warranty covers "defects in material, workmanship or factory preparation"); *Bros. v. Hewlett-Packard Co.*, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12,

2007) (finding that, under California law, a warranty that guarantees against defects in "materials and workmanship" "does not guarantee against design defects").

Finally, because Plaintiffs do not respond to Defendant's motion to dismiss this claim, the Court considers the claim abandoned and the argument conceded. *See Qureshi v. Countrywide Home Loans, Inc.*, No. 09-4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss as an "abandonment of those claims"); *see also Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (noting that a party abandoned claims not defended in opposition to a motion for summary judgment). Plaintiffs' breach of express warranty claim is therefore DISMISSED WITH PREJUDICE.

**B.     Defendant's motion to dismiss the implied warranty claim is DENIED.**

Defendant also moves to dismiss Plaintiffs' claim for breach of the implied warranty of merchantability. Mot. at 12. Under the Song-Beverly Act, an implied warranty of merchantability guarantees that "consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; (4) Conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a). "Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law . . . . [I]t provides for a minimum level of quality." *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96 (1995). "Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade." *Pisano v. American Leasing*, 146 Cal. App. 3d 194, 198 (1983).

In order to assert a breach of implied warranty claim, a product must suffer from a "fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010). Defendant argues that, for automobiles, this means that the vehicle must be unfit for the ordinary purpose of

9

1    providing transportation. Mot. at 12 (citing *Am. Suzuki Motor Corp.*, 37 Cal. App. 4th at
2    1296). The Court finds this articulation of the law to be too narrow, and notes that
3    *American Suzuki* has been distinguished and limited by more recent cases. *See, e.g.*, *Isip v.*
4    *MBUSA-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) (distinguishing *American Suzuki*
5    and finding "MBUSA's attempt to define a vehicle as unfit only if it does not provide
6    transportation is an unjustified dilution of the implied warranty of merchantability. We
7    reject the notion that merely because a vehicle provides transportation from point A to
8    point B, it necessarily does not violate the implied warranty of merchantability.").
9    Ultimately, "[i]n defining a product's core functionality, a court should not seek to reduce
10   a product to its most basic, bare minimum purpose, but rather should take a common sense
11   view informed by reasonable consumers' expectations about the function of the type of
12   product in a general sense." *In re Carrier IQ, Inc.*, 2015 WL 274054, at *44 (N.D. Cal.
13   Jan. 21, 2015).
14       In *Isip*, a California state court held that a vehicle that "smells, lurches, clanks, and
15   emits smoke over an extended period of time" violated the implied warranty of
16   merchantability, despite the fact that it could still provide transportation. *Isip*, 155 Cal.
17   App. 4th at 27. The same is true of a cargo transport vehicle equipped with an AC unit
18   that essentially "rains" down water upon its passengers and cargo despite multiple efforts
19   to repair the defect. Defendant's argument that a vehicle must be essentially inoperable
20   before it can breach the implied warranty of merchantability is belied by one if its own
21   cases, *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012). In *Keegan*,
22   a defect in the vehicle's rear suspension caused uneven and premature tire wear, resulting
23   in a "rough ride" and an "exceptionally loud and disruptive noise" during operation. *Id.* at
24   948. The court determined that these factual allegations were enough to survive a motion
25   to dismiss. While Defendant argues that the defect in *Keegan* was only sufficient for a
26   breach of implied warranty claim because it "led to blowout incidents resulting in a
27   significant safety hazard," mot. at 10, the court in *Keegan* nowhere discusses safety in
28   determining that the breach of implied warranty claim was appropriately pled.

10

Much ink is spilled between the Parties over whether the defect alleged by Plaintiffs is enough to qualify as a breach of the implied warranty of merchantability. The Court here addressed only a few of the cases cited in the submitted briefs. Ultimately, while it is true that the "implied warranty of merchantability does not promise a perfect or even problem-free vehicle," *Zambrano v. CarMax Auto Superstores, LLC*, 2014 WL 228435, at *7 (S.D. Cal. Jan. 21, 2014), it seems inconceivable to this Court that it would be in keeping with ordinary consumer expectations that a new cargo van should regularly drench its occupants and their property, resulting in repeated damage and requiring extended periods of disuse. Time will tell whether these allegations are accurate and this claim meritorious. For now, Defendant's motion to dismiss this claim is DENIED.

## III. Defendant's Motion to Dismiss the Products Liability Claim as to Robles is DENIED.

The TAC's products liability claim is brought on behalf of "Plaintiff Bandago and the Class." TAC at 12. As defined by the TAC, the Class includes Robles. TAC ¶ 35. However, the TAC does not include any factual allegation that Robles personally suffered some non-economic loss, as it does with Digby Adler. Robles's argument that he should be able to recover because the TAC alleges that the water leaks "dampened the interior and damaged the headliner" of his vehicle, Opp'n at 14 n.14 (citing TAC ¶ 24), is unconvincing, as the TAC explains that the damaged headliner is being repaired by the dealership under warranty and at no cost to Robles. TAC ¶ 24 ("The dealership has since agreed to repair the leak and the damaged headliner under warranty."); *Metz v.* Soares, 142 Cal. App. 4th 1250, 1255 (2006) (plaintiff cannot recover in tort for damages to vehicle where plaintiff had already been fully compensated for damages). Consequently, given the current factual allegations, Robles cannot individually maintain a products liability cause of action. *See, e.g.*, *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004) ("Damages available under strict products liability do not include economic loss").

11

Nonetheless, this cause of action is not brought on Robles's behalf as a representative plaintiff, and his ability to recover as a Class member is not currently at issue. "On the contrary, our law keys on the representative party, not all of the class members, and has done so for many years." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). At this stage of the proceedings, the Court only inquires whether "at least one named plaintiff meets the [pleading] requirements." *Id.* (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)). Whether Robles can recover as a member of the Class, which seems unlikely given the above, is a question left for another day.

## IV. Defendant's Motion to Dismiss the Omissions-Based Claims as to Digby Adler is DENIED.

For the same reason, the Court declines to dismiss claims as to Digby Adler where it does not assert them as a representative plaintiff. The second and seventh causes of action, for fraudulent concealment and fraudulent business practices under the UCL, are only brought on behalf of Robles and the Class. TAC at 14, 21. The Class is alleged to include Digby Adler. *Id.* ¶ 35. Because Digby Adler originally brought these claims in the FAC as a representative plaintiff, and then omitted them in the SAC, Defendant argues that Digby Adler waived these claims and is barred from reasserting them in the TAC. Mot. at 14 (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc)).[3] The Court is inclined to agree that these claims were abandoned and cannot be reasserted. However, the Court need not make any finding of dismissal because Digby Adler has not reasserted them as a representative plaintiff. As explained above, the Court only addresses the adequacy of the representative plaintiff's claims at this stage of the proceedings.

---

[3] The Court notes, however, that *Lacey* addressed the waiver of rights to appeal, not waiver of the right to reassert a claim in a later amended complaint. *See Lacey*, 693 F.3d at 928 ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.").

12

**CONCLUSION**

For the foregoing reasons, Plaintiffs' breach of express warranty claim is hereby DISMISSED WITH PREJUDICE, as are the CLRA and UCL claims to the extent that they are predicated on the theories of active concealment or affirmative misrepresentation. Defendant's motion to dismiss is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: 09/01/15 _____
THELTON E. HENDERSON
United States District Judge