THE VEEN FIRM, P.C.
Anthony L. Label (Bar No. 205920)
Steven A. Kronenberg (Bar No. 215541)
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102
P.O. Box 7296
San Francisco, CA 94120-7296
Tel:    (415) 673-4800
Fax:    (415) 771-5845

CHAVEZ & GERTLER LLP
Jonathan E. Gertler (Bar No. 111531)
Dan L. Gildor (Bar No. 223027)
Samuel P. Cheadle (Bar No. 268595)
42 Miller Avenue
Mill Valley, California 94941
Tel:    (415) 381-5599
Fax:    (415) 381-5572

*Attorneys for Plaintiffs*
*and the Proposed Class and Subclasses*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGBY ADLER GROUP, LLC, dba BANDAGO LLC, and BENJAMIN ROBLES, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ U.S.A., LLC,<br><br>Defendants. | **Case No. 3:14-cv-02349 TEH**<br><br>CLASS ACTION<br><br>**STIPULATION REGARDING FOURTH AMENDED COMPLAINT AND EXTENDING TIME FOR DEFENDANT MERCEDES-BENZ USA TO RESPOND TO COMPLAINT; DECLARATION OF DAN L. GILDOR IN SUPPORT THEREOF** |

By and through their attorneys of record, plaintiffs Digby Adler Group LLC and Benjamin Robles ("Plaintiffs"), on behalf of themselves and all others similarly situated, and defendant Mercedes-Benz USA, LLC ("MBUSA") stipulate and agree as follows:

1.    On April 14, 2014, Plaintiff Digby Adler filed this putative class action in San Francisco County Superior Court.  MBUSA was served with the summons and complaint on April 21, 2014.  On May 21, 2014, MBUSA removed the case from San Francisco County Superior Court to this Court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1331(a)(1) and 1331(d)(2)(A).

2.    On April 28, 2015, Plaintiff Digby Adler filed a Third Amended Complaint ("TAC") [Dkt. 41].  On May 26, 2015, MBUSA filed a motion to dismiss the TAC [Dkt. 46]. Plaintiffs filed a response on June 16, 2015 [Dkt. 50].  On September 1, 2015, the Court ruled on MBUSA's motion to dismiss the TAC, granting the motion in part and dismissing it in part [Dkt. 53].

3.    On September 15, 2015, the Court granted the Parties' request to extend MBUSA's deadline to file its answer to the TAC until December 14, 2015 [Dkt. 56].

4.    Counsel for the Parties have met and conferred and, pursuant to Fed. R. Civ. P. 15(a)(2), MBUSA hereby consents to the filing of the Fourth Amended Complaint, attached hereto as Exhibit A.

5.    The Parties agree that upon MBUSA's consent, the Fourth Amended Complaint becomes the operative pleading in the case, superseding the Third Amended Complaint.  Thus, MBUSA shall have no obligation to respond to the Third Amended Complaint.

6.    The Parties further agree that MBUSA shall have 30 days from the time of service to respond to the Fourth Amended Complaint.

7.    There are no scheduled matters in this case other than the Case Management Conference on January 25, 2016.  The requested time modification would have no effect on the schedule for the case other than as described herein.

IT IS SO STIPULATED.

1  Dated:  December 11, 2015                Respectfully submitted,

2                                           THE VEEN FIRM, P.C.
                                            CHAVEZ & GERTLER LLP
3

4

5                                          By _____

6                                             Dan L. Gildor
                                              Attorneys for Plaintiff and the Proposed Class and
7                                             Subclasses

8  Dated:  December 11, 2015                Respectfully submitted,

9                                           CARROLL, BURDICK & McDONOUGH LLP
10

11

12                                         By _____  /s/ Troy M. Yoshino _____

13                                            Troy M. Yoshino
                                              Attorneys for Defendant
14                                            MERCEDES-BENZ USA, LLC

15  **L.R. 5-1(i)(3) Certification**
    Pursuant to Local Rule 5-1(i)(3), the filer of the document attests that concurrence in the filing of
16  the document has been obtained from each of the other Signatories

17

18

19  **PURSUANT TO STIPULATION, IT IS SO ORDERED**

20

21

22

23  Dated: _____              By:_____

24                                        Thelton E. Henderson
                                          United States District Judge
25

26

27

28

**DECLARATION OF DAN L. GILDOR IN SUPPORT OF STIPULATION
EXTENDING TIME FOR MBUSA TO RESPOND TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

I, Dan L. Gildor, declare and state as follows:

1.     I am an attorney duly licensed to practice before this Court and am associated with Chavez & Gertler LLP, counsel for plaintiffs Digby Adler Group LLC and Benjamin Robles ("Plaintiffs") in the above-entitled action.  The matters referred to in this Declaration are based upon my best personal knowledge and belief, and if called and sworn as a witness, I could and would competently testify as to each of them.

2.     On April 14, 2014, Plaintiffs filed this putative class action in San Francisco County Superior Court.  Defendant Mercedes-Benz USA, LLC ("MBUSA") was served with the summons and complaint on April 21, 2014.  On May 21, 2014, MBUSA removed the case from San Francisco County Superior Court to this Court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1331(a)(1) and 1331(d)(2)(A).

3.     On July 25, 2014, plaintiff filed an amended complaint; MBUSA filed a motion to dismiss the amended complaint on August 25, 2014.  *See* Dkt. Nos. 13 and 16.  On September 10, 2014, plaintiff filed a second amended complaint (SAC), and the Court granted the parties' stipulated request to dismiss the amended complaint and accept the SAC for filing on September 16, 2014.  *See* Dkt. Nos. 20 and 23.  On October 20, 2014, MBUSA filed a motion to dismiss the SAC; plaintiff filed an opposition on November 10, 2014; and MBUSA filed its reply on November 24, 2014.  *See* Dkt. Nos. 24, 26, and 30.  The hearing on the motion was scheduled December 1, 2014.  *See* Dkt. No. 24.

4.     After MBUSA's motion to dismiss was submitted to the Court, the parties agreed to discuss an individual settlement of this case.  Pursuant to that agreement, the parties requested that the hearing on MBUSA's motion to dismiss the SAC be continued to February 23, 2015.  Dkt. No. 27.  The Court granted the parties' stipulated request on November 25, 2014.  Dkt. No. 33.

5.     On January 28, 2015, the parties filed a stipulation requesting a further continuance of the hearing on MBUSA's motion to dismiss and the CMC.  Dkt. No. 28.  The Court granted the parties' stipulated request on the same day, continuing the hearing to April 6, 2015, and the CMC

1    to April 20, 2015.  Dkt. No. 35.

2          6.   The hearing on MBUSA's motion to dismiss the SAC was held on April 6, 2015.

3    On April 7, 2015, the Court granted the motion in part and gave Plaintiff until April 28. 2015, to

4    file an amended complaint.

5          7.   On April 13, 2015, the Court—*sua sponte*—continued the CMC from April 20,

6    2015, to May 18, 2015.

7          8.   Plaintiff filed a Third Amended Complaint on April 28, 2015, adding a new

8    plaintiff—Benjamin Robles—and five statutory and common-law causes of action that were not

9    contained in the SAC.

10         9.   On May 4, 2015, the parties filed a stipulation setting the briefing schedule

11   regarding MBUSA's motion to dismiss the TAC.  Dkt. No. 42.  The Court granted the parties'

12   stipulation on May 5 and gave MBUSA until May 26 to file a motion to dismiss, the plaintiffs

13   until June 16 to file an opposition, and MBUSA until June 30 to file a reply.  Dkt. No. 43.  The

14   parties adhered to this schedule in submitting their briefings.  *See* Dkt. Nos. 46, 50, and 51.

15         10.  On September 1, 2015, the Court ruled without a hearing on MBUSA's motion to

16   dismiss the TAC, granting the motion in part and dismissing it in part.  Dkt. No. 53.

17         11.  On September 11, 2015, the parties filed a stipulation setting the briefing schedule

18   regarding MBUSA's motion to dismiss the TAC.  Dkt. No. 54.  The Court granted the parties'

19   stipulation on September 15 and gave MBUSA until December 14 to file a motion an answer.

20   Dkt. No. 56.

21         12.  On September 11, 2015, the parties' filed a Joint Case Management Conference

22   Statement, wherein they requested that the Court continue the case management conference from

23   September 21, 2015 to January 25, 2016.  Dkt. No. 55.  The Court granted this request on

24   September 15, 2015.  Dkt. No. 57.

25         13.  The parties are in the process of discussing issues related to the amendment of the

26   complaint and how the litigation will proceed, so the parties now stipulate to an extension of time

27   for MBUSA to respond to the operative complaint.  MBUSA shall have 30 days from the time of

28   service to respond to the Fourth Amended Complaint.

1      14.  There are no scheduled matters in this case other than the Case Management

2  Conference on January 25, 2016.  The requested time modification would have no effect on the

3  schedule for the case other than as described herein.

4      I declare under penalty of perjury under the laws of the United States that the foregoing is

5  true and correct.

6      Executed this 11th day of December 2015 at Mill Valley, California.



DAN L. GILDOR

STIPULATION REGARDING FOURTH AMENDED COMPLAINT AND EXTENDING MBUSA'S TIME TO RESPOND

**EXHIBIT 5**

THE VEEN FIRM, P.C.
Anthony L. Label (Bar No. 205920)
Steven A. Kronenberg (Bar No. 215541)
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102
P.O. Box 7296
San Francisco, CA 94120-7296
Tel:    (415) 673-4800
Fax:    (415) 771-5845

CHAVEZ & GERTLER LLP
Jonathan E. Gertler (Bar No. 111531)
Dan L. Gildor (Bar No. 223027)
Samuel P. Cheadle (Bar No. 268595)
42 Miller Avenue
Mill Valley, California 94941
Tel:    (415) 381-5599
Fax:    (415) 381-5572

*Attorneys for Plaintiffs*
*and the Proposed Class and Subclasses*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGBY ADLER GROUP, LLC, dba BANDAGO LLC, and BENJAMIN ROBLES, an individual, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ U.S.A., LLC,<br><br>                    Defendant. | **Case No. CV 14-02349 TEH**<br><br>CLASS ACTION<br><br>**FOURTH AMENDED COMPLAINT FOR PRODUCT LIABILITY, FRAUDULENT CONCEALMENT, VIOLATIONS OF THE SONG-BEVERLY WARRANTY ACT, VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT, UNFAIR COMPETITION, AND VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT** |

1    Plaintiffs DIGBY ADLER GROUP, LLC, dba BANDAGO, LLC ("Bandago"), and

2    BENJAMIN ROBLES, individually and on behalf of all others similarly situated, hereby

3    complain against Defendant MERCEDES-BENZ U.S.A., LLC ("Mercedes" or "Defendant") and

4    alleges as follows:

5                                    **INTRODUCTION**

6         1.    This is a class action brought against Mercedes-Benz U.S.A on behalf of Plaintiffs

7    and all others who have—at any time in the four years preceding the filing of this action through

8    such time as this action is pending—purchased or leased Sprinter 2500 and Sprinter 3500 model

9    vans (the "Sprinter") in the United States that were designed and manufactured by Mercedes-

10   Benz and were equipped with a Rear Roof Air Conditioning Package ("AC unit").

11        2.    The AC units leak water into the interior of the vehicle, damaging the vehicles,

12   including the ceiling, floorboards, seat cushions, and upholstery, and causing mold to form inside

13   the affected vehicles.  The leaks also damage cargo and anything else being transported in the

14   vehicles, including any fixtures that were installed by the owners.  Mercedes has known about the

15   propensity of the AC units to leak water into the interior of the vans but has failed to either recall

16   the AC units to address the leaks, alter its manufacturing processes and/or materials, or pay for

17   the damage arising from the leaks.

18        3.    Plaintiffs bring this class action to enjoin Defendant's ongoing unfair business

19   practices and to compensate class members for their losses caused by the leaks.

20                                        **PARTIES**

21        4.    Plaintiff Bandago is a limited liability company registered in California with its

22   principle place of business in San Francisco.

23        5.    Plaintiff Benjamin Robles is a resident of California.

24        6.    Defendant Mercedes-Benz U.S.A., LLC is a limited liability company organized

25   under the laws of the State of Delaware with its principal place of business in Montvale, New

26   Jersey.  Mercedes is registered to conduct business in California and has dealerships throughout

27   the state, including several in San Francisco County.

28

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this controversy.  Plaintiff Bandago's principal place of business is in San Francisco and Defendant regularly conducts business in and has multiple dealerships in San Francisco County.  Mercedes removed this action from the Superior Court in and for the County of San Francisco on May 21, 2014.

8.    Venue is proper in this Court because it was removed from the San Francisco Superior Court and because the acts and omissions alleged herein took place in this district.

## PLAINTIFF BANDAGO'S EXPERIENCE

9.    Bandago's business centers on renting Sprinter vans to clients, many of whom are touring bands and musicians.  Bandago's founder and CEO, Sharky Laguana, drove versions of the Sprinter while touring in a band around Europe.  Based on this personal experience, Bandago has adopted the Sprinter as its flagship vehicle in its rental fleet.  The Sprinter is unique in that, at the time Bandago decided on its flagship vehicle, the Sprinter was the only vehicle of its size in the United States, with features that align perfectly with Bandago's clients' needs.  Specifically, the Sprinter can have a separate cargo hold to keep safe musical equipment worth upwards of one hundred thousand dollars.  The Sprinter is also tall enough to stand up in, which is important to clients who spend a lot of time around a group of people in tight quarters.

10.    Prior to 2006, Bandago's fleet did not include any Sprinter vans.  Bandago, however, noted a need for such a vehicle among its clientele.  In deciding whether to invest and add Sprinter vans to its fleet, Bandago did its research.  Mr. Laguana researched the Sprinter on the web, including Mercedes' own website.  He "googled" the Sprinter and found that the reviews were largely favorable—that the Sprinter had high marks for ease of use, good fuel economy, drivability, and comfort.  Once he got a fleet number, he received written material, including a detailed booklet about the Sprinter.  Mr. Laguana read this material with great interest given that Bandago was contemplating a large investment in the vans with no track record for whether clients would be willing to pay the extra amount necessary to break even given the high cost of the vehicles.

FOURTH AMENDED CLASS ACTION COMPLAINT                                    Case No. 14-02349 TEH

1       11.      Through his research, Mr. Laguana concluded that the Sprinter vans—designed

2 and manufactured by Mercedes, with a corresponding price tag—epitomized "German

3 engineering" and quality.  Mercedes in fact intends the Sprinter to be the best commercial vehicle

4 in its segment, and says so on its website and marketing materials.  Mercedes also touts on its

5 website and its marketing materials the awards that the Sprinter has received, including three

6 2013 Best Fleet Value in America™ awards.  Mr. Laguana's research, combined with Mr.

7 Laguana's personal experience with the Sprinter in Europe, led Bandago to invest heavily in

8 Sprinter vans for its fleet.

9       12.      Mercedes released a second generation Sprinter van in the United States in 2007.

10 One of the options on the particular "passenger" configuration that Bandago purchases is the AC

11 unit.  This high-performance air conditioning system is fitted in front of the sunroof aperture over

12 the van's rear compartment.  It is driven by its own compressor.  The roof-mounted unit also

13 extends some way into the interior of the vehicle and supplements the cooling provided by the

14 standard front air conditioning system.  Mercedes particularly recommends the AC unit for

15 vehicles used in hot climates so that rear passengers can individually adjust the air outlets for

16 improved comfort and well-being.  Mercedes installs the AC unit prior to distribution and sale of

17 the vans to the public.

18       13.      It was only after Bandago incorporated the second generation Sprinter with the AC

19 unit into its fleet that Bandago began to notice that vans were being plagued by water leaking in

20 and around the AC unit.  For instance, Plaintiff purchased at least 98 Sprinter vans between

21 January 2010 and January 2014.  At least 83 of those vans have experienced leaks in and around

22 the AC unit.  While some leaks occurred after steady rain, others have occurred after the unit was

23 run at its coldest setting with high blower settings.  The leaks have damaged the vehicles as well

24 as the cargo being transported in the vehicles, and fixtures that Plaintiff Bandago has installed,

25 such as higher quality seating, video screens, power inverters, separator walls, and an upgraded

26 stereo.  On information and belief none of these alterations involved modifying the roof, drains,

27 seals, or the rooftop AC unit in any way.

28

FOURTH AMENDED CLASS ACTION COMPLAINT               Case No. 14-02349 TEH

14.     As a result of the leaks, Bandago has had to reimburse customers in exchange for the inconvenience and damage caused by the leaks, and pay the cost of repairing the damage caused by the leaks.  Bandago has also had to take the vehicles with the leaks out of service to let upholstery and carpeting dry and to perform repairs after a leak would occur; Bandago would not be able to rent out the vehicle that experienced the leak until it had fully dried and was repaired. Finally, Bandago has lost the goodwill of the customers who rented from Bandago and who experienced the leaks first hand.  Bandago has received complaints online about vans that had wet seats due to either leaks or cleaning to repair the damage from leaks.

15.     Bandago had not experienced any such problems with any of the previous-generation model vans in its fleet.  Given that Bandago's vans are dispersed across the United States and that Bandago does not maintain centralized repair records, it took a while before Bandago realized that the leaks were occurring across the fleet.

16.     Though Bandago's previous generation Sprinter vans did not experience leaks, they did experience issues with the turbo resonator that caused the van's on-board computer to switch into "limp home" mode—a mode that limits the van to 45 mph.  Once Mercedes was made aware of this problem, Mercedes fixed it in the following model year.

17.     Based on this experience, Bandago believed that the leaks in the second generation vehicles would be handled in a similar manner, with a fix coming in the next model year.  This belief was buttressed by representations by Mercedes that it had identified the problem and issued a fix as well as Mercedes' reputation and Mercedes' apparent commitment to making the Sprinter the "best commercial vehicle" in its segment.  Bandago arranges its purchases such that it orders all of the new vehicles to be added to its fleet in a given year at the same time.  As such, each purchase covers a new model year, and accompanied with the expectation that Mercedes had resolved the problem with the AC units.

18.     Once Bandago realized that the second generation Sprinter had a propensity to develop leaks in and around the AC unit, and after leaks occurred in the following model year such that Bandago realized that the problem had not been fixed, Bandago reached out to Mercedes.  At all times, Mercedes has repeatedly assured Bandago that it was aware of the

4

1    problem and was issuing fixes to resolve the problem in the future.  For instance, in May 2009,

2    Eric Gierst, Chrysler's Regional Fleet Service Manager, issued a "fix" that was supposed to

3    resolve the problem of leaks occurring.  It seemed to Bandago that Mercedes was on top of the

4    problem, and so Bandago continued to purchase Sprinter vans to add to its fleet.  This was

5    repeated with each model year, with Bandago complaining to Mercedes of the problem, and

6    Mercedes reassuring Bandago that they were aware of the problem and issuing fixes.  The

7    reassurances were not limited to communications between Bandago and Mercedes.  In 2010,

8    Mercedes issued a Technical Service Bulletin addressing how to fix the AC unit leaks, furthering

9    Bandago's belief that Mercedes had identified the issue and that the problem would be fixed in

10   subsequent model years.  Plaintiff received further assurances from Mercedes, including a series

11   of communications between Gale Young, Mercedes' senior engineer in the United States, and Mr.

12   Laguana in August and September 2013.  Mr. Young represented that Mercedes had identified the

13   issue, that the issue had been fixed, and that the AC units would not leak in the future.  Bandago

14   relied on Mercedes' representations that it had identified the problem and issued a fix in

15   continuing its annual purchase of Sprinter vans.

16            19.     Plaintiff Bandago designed its business model around the Mercedes Sprinter

17   passenger van, providing high-end vehicles for bands on tour.  At the time, there were no other

18   vehicles with a comparable body style being sold in the U.S.  Throughout the class period,

19   Plaintiff Bandago relied on Mercedes' representations that the vehicles Plaintiff purchased were

20   free of defects.  Once Plaintiff Bandago learned that the AC unit leaks in its fleet of Sprinter vans

21   were a recurring problem, it was too late to change Plaintiff Bandago's entire business model,

22   marketing, and promotion.  Even though Plaintiff Bandago knew that some of the vehicles had

23   developed leaks, Plaintiff Bandago nonetheless continued and continues to rely on Mercedes'

24   reputation and representations that the defects in the design of the AC unit or its manufacture and

25   installation have been identified and fixes issued.  Had Mercedes not disclosed on numerous

26   occasions that it identified the cause of the leaks and issued a fix, Plaintiff Bandago would not

27   have adopted the Sprinter as its flagship vehicle and continued to purchase the vehicles that

28   Bandago, which due to its financing arrangements, would not be able to sell on the market for at

FOURTH AMENDED CLASS ACTION COMPLAINT                        Case No. 14-02349 TEH

1    least three years.  At the very least, Plaintiff Bandago would not have agreed to pay as much for

2    the vans with the defective AC unit.

3                          **PLAINTIFF ROBLES' EXPERIENCE**

4            20.      Plaintiff Robles purchased a new Sprinter van on June 9, 2012 from Mercedes-

5    Benz of West Covina to transport his family.  At that time, he also purchased an extended 6

6    year/125,000 mile warranty.  The van was equipped with the optional factory AC unit.

7            21.      On or about June 12, 2012, Plaintiff Robles brought the van to his local dealer.

8    The AC unit leaked water inside the passenger compartment of the van and on its passenger seats.

9    When Plaintiff Robles returned the vehicle to the dealership, he was informed by the service

10   personnel for the first time that Mercedes had issued a "service advisory" concerning leaking AC

11   units.  The dealership represented that it then repaired the leak.

12           22.      On or about June 22, 2013, Plaintiff Robles again sought a repair of the AC unit,

13   which once again leaked water into the van's passenger compartment and on its passenger seats.

14   A Mercedes-Benz dealership attempted a second repair for the AC unit that again resulted in only

15   a temporary fix.

16           23.      Within about one year of the second repair, the AC unit resumed leaking water into

17   the van's passenger compartment and on its passenger seats.  Plaintiff Robles's local Mercedes-

18   Benz dealership attempted a third repair for the AC unit that again resulted in only a temporary

19   fix.

20           24.      On or about February 16, 2015, Plaintiff Robles sought a fourth warranty repair for

21   the leaking AC unit from his local Mercedes-Benz dealership.  The dealership informed Plaintiff

22   Robles that his repair request would not be covered under the vehicle's warranty.  Since then,

23   Plaintiff Robles has begun to notice a musty smell in the vehicle.  Recent rains have dampened

24   the interior and damaged the headliner.  The dealership has since agreed to repair the leak and the

25   damaged headliner under warranty.

26           25.      Plaintiff Robles had no indication prior to purchasing his Sprinter van that the AC

27   unit in the van would leak.  Prior to purchase, Plaintiff Robles reviewed the Mercedes website and

28   a large brochure for the Sprinter van and was impressed by Mercedes' claims that the Sprinter

                                                    6

FOURTH AMENDED CLASS ACTION COMPLAINT                          Case No. 14-02349 TEH

1    vans had best in class features.  He also spoke with staff at dealerships in San Diego and Laguna

2    Niguel, as well as Manuel Mendez at the West Covina dealership.  In those conversations,

3    Plaintiff Robles was told that the Sprinter embodied Mercedes-Benz quality and durability, that

4    Mercedes stood behind its vehicles.  It was only a few days after Plaintiff Robles took delivery of

5    his vehicle and after a leak occurred that Mercedes' service staff at the West Covina dealership

6    informed Plaintiff Robles that Mercedes had issued a "service advisory" regarding leaking AC

7    units.  At no time prior to this first service had Mercedes marketing materials or salespeople

8    informed Plaintiff Robles that the AC units leak.  Had Mercedes disclosed prior to the purchase

9    that the AC unit has a propensity to leak water into the van, either in the marketing materials or in

10   person, Plaintiff Robles would have read or heard the disclosure and elected not to purchase the

11   van.  A key feature for Plaintiff Robles was the availability of the AC unit given that the Sprinters

12   otherwise do not have windows in the passenger compartment that can be opened to ventilate that

13   compartment.  Instead, Plaintiff Robles would likely have purchased a Nissan NV or other full

14   size van.

15              **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

16         26.     The problems that Plaintiffs have experienced with the Sprinter vans are not a

17   localized phenomenon.  Sprinter van owners and lessees across the United States have reported

18   leaks in or around the AC unit that have necessitated costly repairs and replacement of damaged

19   cargo.  There are videos posted on youtube.com of it "raining" inside Sprinter vans.  Many of the

20   individuals that have experienced the leaks have called Mercedes' consumer complaint line or

21   advised their dealerships of the problem.  Plaintiffs are informed and believe, and on that basis

22   allege, that Mercedes tracks customer calls as well as feedback from dealerships and other repair

23   facilities, as well as online forums dedicated to the Sprinter vans, like sprinter-source.com, that

24   catalog multiple complaints by owners about leaks in or around the AC unit.  Members of

25   Plaintiff Bandago's staff have contacted Mercedes' Customer Assistance Center ("CAC") on

26   multiple occasions to complain about leaks in and around the AC unit.  Plaintiffs are informed

27   and believe, and on that basis allege, that Mercedes also maintains a database regarding warranty

28   service requests and tracks the sale of replacement parts ordered in attempting to make repairs to

7

1    stop the leaks.  Together, the available data demonstrate that an inordinate number of Sprinter

2    vans have experienced leaks in or around the AC unit, particularly when compared to other

3    Sprinter vans without the AC unit.  In this connection, the National Highway Transportation

4    Safety Agency ("NHTSA") has at least six complaints on file regarding such leaks from as early

5    as 2007—the year that Mercedes introduced the second generation Sprinter models.  Plaintiffs are

6    informed and believe, and on that basis allege, that Mercedes tracks and monitors complaints filed

7    with NHTSA and has known about the leaks since at least the time that these complaints were

8    filed.  Based on the complaints, Mercedes has conducted investigations into the causes of the

9    leaks and potential fixes.  These investigations have resulted in the issuance of several technical

10    service bulletins to repair facilities detailing the steps to take to address leaks in and around the

11    AC unit in Sprinter vans, including at least one such bulletin issued in 2010.

12       27.     At all relevant times, Mercedes knew or should have known that having water

13    enter the interior of Sprinter vans through the AC unit was inconsistent with the reasonable

14    expectations of Sprinter purchasers.[1]  Mercedes in fact markets the entire line of Sprinter vans as

15    "a testament" to its expertise in developing vehicles that make working easier, safer, and more

16    efficient, and that continue "to set the industry standards for reliability and technological

17    advancement."  The leaks are also inconsistent with the promises set forth in Mercedes' new

18    vehicle warranties issued with the Sprinter vans.  Despite this knowledge, Mercedes installed the

19    AC units on the Sprinter vans and knowingly and purposefully placed them into commerce.

20       28.     In light of multiple reports of leaks in and around the AC unit to Mercedes and

21    government regulators, as well as the other sources of information available to Mercedes

22    regarding repairs and replacements, Mercedes had exclusive knowledge that was superior to that

23    available to the general public.  Despite that knowledge, Mercedes made no modifications to the

24    AC unit and continued to put new model year Sprinters on the market knowing they contained the

25    defect.  Mercedes did not disclose the defect in any of the publicly-viewable brochures and other

26

27    [1]  "[I]t cannot be argued, for example, that any car purchaser expects his vehicle's interior to experience periodic flooding."  *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220,

28    1238 (C.D. Cal. 2011).

1   online materials on Mercedes' official website.  Notably, technical service bulletins are not

2   generally available to the public.

3       29.   Upon information and belief, Mercedes has not modified the materials (including

4   the sealant), workmanship, factory preparation or design of the AC units, despite repeated

5   promises that it had identified and fixed the problem.

6       30.   Plaintiffs too have never modified any of the AC units or the sealing/installation of

7   the AC units on any of its Sprinter vans.

8   **<u>TOLLING OF THE STATUTE OF LIMITATIONS</u>**

9       31.   The causes of action alleged herein accrued upon discovery of the unacceptably

10   high susceptibility of the AC units to leak.  The leaks generally occur after heavy rains or other

11   significant exposures to moisture, including running the unit at its maximum settings.

12   Consequently, owners and lessees may not experience the leak if the vehicle is not exposed to

13   conditions that cause the defect to manifest.  Plaintiffs and members of the class did not discover

14   and could not have discovered the factual bases of their claims through the exercise of reasonable

15   diligence because Mercedes knowingly and actively concealed the facts alleged herein.  By virtue

16   of Mercedes' actions, Plaintiffs and members of the class have been kept ignorant of vital

17   information essential to the pursuit of these claims, without any fault or lack of diligence on their

18   part.

19       32.   Rather than acknowledging the defect and issuing a recall, Mercedes has done

20   nothing.

21       33.   Mercedes was and is under a continuous duty to disclose to Plaintiffs and members

22   of the class material information regarding the defects in the AC unit.  The susceptibility to leaks

23   and the lack of a solution for the problem is material information that a reasonable purchaser

24   would consider important when selecting a van to carry people and cargo.

25       34.   Since Plaintiffs and members of the class had no way of knowing or suspecting

26   that Mercedes had not, contrary to its assertions, solved the defect, Defendant is estopped from

27   relying on any statute of limitations in its defense of this action.

28

FOURTH AMENDED CLASS ACTION COMPLAINT          Case No. 14-02349 TEH

**CLASS ACTION ALLEGATIONS**

35.     Plaintiffs bring this class action pursuant to F.R.C.P. 23 on behalf of all current and former owners and lessees of model year 2010-2014 Mercedes-Benz and Freightliner Sprinter 2500 or 3500 vehicles with original-equipment rear air conditioning units who purchased or leased their Subject Vehicles in the United States.

36.     Excluded from the Class are:

(a)     officers, directors, and employees of Mercedes-Benz, its subsidiaries, affiliates, and any entity in which Mercedes-Benz has a controlling interest, authorized Mercedes-Benz dealers and any legal representative, heir, successor, or assignee of Mercedes-Benz;

(b)     counsel, and the immediate families of counsel, who represent Plaintiff in this action;

(c)     the judge presiding over this action;

(d)     jurors who are impaneled to render a verdict on the claims alleged in this action; and

(e)     any individual asserting claims for personal injury that resulted from leaking roof-mounted air conditioning units.

37.     Plaintiffs also bring this action on behalf of a subclass of California residents ("California Subclass"); a subclass of California residents who are consumers ("Consumer Subclass"); and a subclass of California residents who experienced property damage ("Product Liability Subclass").

38.     The members of the class and subclass are so numerous that joinder of all claims would be impracticable.  While the exact number of class and subclass members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe, and on that basis allege, that Mercedes has sold thousands of Sprinter vans with the roof-mounted air conditioning units in California.

39.     Members of the class and subclass will be readily identifiable from Mercedes' business records, which will demonstrate the individuals who purchased or leased Sprint vans. The disposition of their claims through this class action will benefit both the parties and the Court.

10

1   Class and subclass members may be notified of the pendency of this action by published and/or

2   mailed notice.

3       40.    There is a well-defined community of interest in the questions of law and fact

4   affecting the parties represented in this action.  Common questions of law and fact exist as to all

5   members of the class and subclass.  These common questions predominate over the questions

6   affecting only individual class and subclass members.  They include, but are not limited to, the

7   following:

8          (a)    Whether the leaks in and around the AC unit are the result of a design

9               defect;

10         (b)    Whether the leaks in and around the AC unit are the result of a

11              manufacturing defect;

12         (c)    Whether Mercedes has made and will continue to make false and/or

13              misleading statements of fact or has omitted and will continue to omit

14              material facts to members of the class and the public concerning the AC

15              unit;

16         (d)    Whether Mercedes' false and/or misleading statements of fact and

17              concealment of material facts concerning the propensity of the AC units to

18              leak water into the vehicles were likely to deceive the public;

19         (e)    Whether Mercedes concealed from Plaintiffs and members of the class and

20              subclass that the AC units do not conform to Mercedes' product

21              specifications regarding leaks;

22         (f)    Whether Mercedes violated the Song-Beverly Warranty Act;

23         (g)    Whether Mercedes violated the Consumers Legal Remedies Act;

24         (h)    Whether, as a result of Mercedes' misconduct as alleged herein, Plaintiffs

25              and members of the class and subclass are entitled to damages, restitution,

26              injunctive relief, and other remedies, and, if so, the amount and nature of

27              such relief.

28

41.     Plaintiffs' claims are typical of the claims of the other members of the class and subclass.  Mercedes' conduct has caused Plaintiffs and members of the class and subclass to sustain the same or substantially similar injuries and damages.  Plaintiffs have no interests antagonistic to the interests of the other members of the class and subclass.  Plaintiffs and all members of the class and subclass have sustained economic injury, including ascertainable loss and injury in fact, arising out of Mercedes' violations of law as alleged herein.

42.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the class and subclass.  Plaintiffs are members of the class and subclass and do not have any conflict of interest with other class members.  Plaintiffs have retained and are represented by competent counsel who are experienced in complex class action litigation, including product liability class actions such as the present action.

43.     The nature of this action makes a class action the superior and appropriate procedure to afford relief for the wrongs alleged herein.  Because the damages suffered by the individual class and subclass members are small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class and subclass members to seek redress individually.  The prosecution of separate actions by the individual class and subclass members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant, and would establish incompatible standards of conduct.  Further, a class action is in the interests of justice because many class members are likely unaware that Defendant's conduct is illegal, and lack the financial and informational resources to protect their rights.  Prosecution of this case as a class action would present far fewer management difficulties and provide the benefits of single adjudication, including economy of scale and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### (Product Liability)
### (On behalf of Plaintiff Bandago and the Product Liability Subclass)

44.     Plaintiffs incorporate the paragraph alleged above as if fully set forth herein.

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

1      45.    In California, a manufacturer may be held strictly liable in tort for placing a

2  product on the market that is defective and that causes damage to property, including damage to

3  other parts of the product.  (*Jimenez v. Super. Ct.* (2002) 29 Cal.4th 473, 483.)

4      46.    Mercedes has, since at least 2007, manufactured and placed Sprinter vans with AC

5  units on the market in California for the public to purchase.

6      47.    These AC units were defective in material, workmanship, and/or factory

7  preparation; the AC units would leak substantial amounts of water into the interior of the vans.

8  Investigations by Mercedes and the technical service bulletins issued by Mercedes state that the

9  leaks can be caused by improper installation of the AC unit and defects in the sealant and/or the

10  installation of the sealant used around the AC unit.

11      48.    The AC units have also manifested a design defect—no matter what repairs were

12  made, the AC unit would still leak water into the interior by virtue of a defect in the unit itself that

13  would cause condensation to form when the unit was used at its maximum settings.

14      49.    At no time did Mercedes ever disclose to the public, including Plaintiffs or the

15  members of the class, that the AC unit was prone to leak water into the interior of the van.

16  Mercedes knew that the Sprinter vans, and particularly the AC units, would be used without

17  inspection for defect.  Mercedes pre-installed the units in the vans that it sold, or otherwise

18  retrofitted vans with the AC units.  The defect only manifests when the AC units are used at their

19  maximum setting and/or after exposure to steady rain.  No reasonable inspection would have

20  revealed the defect, and Mercedes did not expect any consumer to take apart the AC unit to

21  inspect it prior to purchase.  Mercedes continued to sell Sprinter vans without modification,

22  knowing the defect in the AC unit remained and would go undetected at the time of sale.

23      50.    As a result of these defects, water leaks into the interior of the Sprinter vans, where

24  it has destroyed cargo that was being transported in the van as well as the seating, roof, and walls

25  of the van, and any fixtures installed by owners.  The water has also resulted in the growth of

26  mold in the vans.  Plaintiff Bandago's customers are often transporting expensive electronic

27  equipment.  When water dumps on this cargo, the damage is not only to Plaintiff Bandago's

28  customers' property, but to Plaintiff Bandago's goodwill.  As a result, on top of paying for

FOURTH AMENDED CLASS ACTION COMPLAINT            Case No. 14-02349 TEH

1  repairs, Plaintiff Bandago often has to provide compensation for property damage to customers,

2  or comp entire transactions to remedy the customers' inconvenience.  Plaintiff Bandago and

3  members of the class have had to replace the damage caused by the leaks at their own expense.

4      WHEREFORE, Plaintiff Bandago prays for relief as set forth below.

5  **SECOND CAUSE OF ACTION**

**(Fraudulent Concealment)**

6  **(On behalf of Plaintiff Robles and the California Subclass)**

7      51.    Plaintiff Robles incorporates the paragraphs alleged above as if fully set forth

8  herein.

9      52.    Mercedes has, since at least 2007, manufactured and placed Sprinter vans with AC

10  units on the market in California for the public to purchase.

11      53.    These AC units were defective in material, workmanship, and/or factory

12  preparation; the AC units would leak a substantial amount of water into the interior of the vans.

13  Investigations by Mercedes and the technical service bulletins issued by Mercedes state that the

14  leaks can be caused by improper installation of the AC unit and defects in the sealant and/or the

15  installation of the sealant used around the AC unit.

16      54.    The AC units also manifested a design defect—no matter what repairs were made,

17  the AC unit would still leak water into the interior by virtue of a defect in the unit itself that

18  would cause condensation to form when the unit was used at its maximum settings.

19      55.    These defects manifested themselves within the warranty period.

20      56.    At all relevant times, Mercedes had superior and exclusive knowledge of the

21  propensity for the AC units to leak water into the interior of the Sprinter vans.  Mercedes had

22  exclusive access to its customer and repair databases, dealer databases, and replacement parts

23  orders, as well as its internal investigations and testing regarding the Sprinter vans that lead to

24  Mercedes issuing technical service bulletins regarding water leaking through and around the AC

25  units.  The prevalence of complaints and repairs as well as the existence of non-public technical

26  services bulletins are facts that are not readily accessible to the public.

27      57.    At all relevant times, Mercedes knew or should have known that having water

28  enter the interior of Sprinter vans through the AC unit was inconsistent with the reasonable

1   expectations of Sprinter purchasers.[2]  Plaintiff Robles and members of the class would have liked

2   to have known about the propensity of water leaking through and around the AC units.  In fact,

3   any reasonable consumer would deem it important to know whether a van that carries people and

4   cargo would leak water into the interior.

5          58.     Notwithstanding the propensity of the AC units on the Sprinter vans to leak water

6   into the interior of the vehicles, Mercedes instead represented in its marketing materials and on its

7   website that Sprinter vans were award-winning vehicles that were the best commercial vehicle in

8   the segment, that constitute "a testament" to Mercedes-Benz's expertise in developing vehicles

9   that make working easier, safer, and more efficient, and that continue "to set the industry

10  standards for reliability and technological advancement."  Mercedes knew that technical services

11  bulletins and other items of information regarding the propensity of the AC units to leak water

12  into the van's interior were not accessible to the general public.  At all times, Mercedes intended

13  that its marketing materials would induce consumers to purchase the Sprinter vans and the AC

14  units.  Mercedes also knew that disclosing the propensity for the AC unit to leak water into the

15  interior of the van would detract from the Sprinter's appeal and result in lost sales to competitors.

16         59.     At no time did Mercedes ever disclose to the public, including Plaintiff Robles and

17  the members of the class, that the AC units were prone to leak water into the interior of the van.

18  Prior to purchasing the vans, Plaintiff Robles read the promotional materials for the Sprinter vans;

19  nowhere did Mercedes disclose the potential for water to leak into the interior of the van.  Instead,

20  Plaintiff Robles relied on the reputation of Mercedes and Mercedes' affirmative representations in

21  the promotional material and Mercedes' salesmen about the van's quality when he selected the

22  Sprinter van.

23         60.     As a result of Mercedes' fraudulent concealment, Plaintiff Robles and members of

24  the class spent substantial sums to purchase Sprinter vans with the AC unit when they otherwise

25  would not have done so, and some have also had to subsequently spend substantial sums to repair

26  the damage caused when water leaked into the interior through and around the AC units.  This

27

28  [2]  *See Cholakyan*, 796 F. Supp. 2d at 1238.

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

damage included damage to the vehicle itself but also to cargo being transported in the vehicles, as well as the inconvenience of not being able to use the van or having to take the van to be repaired.

WHEREFORE, Plaintiff Robles prays for relief as set forth below.

### THIRD CAUSE OF ACTION
**(Violation of the Song-Beverly Consumer Warranty Act)**
**(On behalf of Plaintiff Robles and the Consumer Subclass)**

61.    Plaintiff Robles incorporates the paragraphs alleged above as if fully set forth herein.

62.    The Song-Beverly Consumer Warranty Act, Civil Code section 1790, *et seq*., defines the main obligations in California for manufacturers of consumer goods.  Specifically, the act provides for implied warranties of fitness and merchantability, as well as express warranties, that cannot be waived.  The act "is a remedial measure intended for the protection of consumers and should be given a construction consistent with that purpose."  *Brand v. Hyundai Motor America*, 173 Cal. Rptr. 3d 454, 459 (2014).

63.    The Sprinter vans are "consumer goods" as that term is defined by the Song Beverly Consumer Warranty Act, Civil Code section 1791(a).  Plaintiff Robles and members of the subclass have used the vans, or purchased the vans for use, in primarily personal, family, or household purposes.

64.    At all relevant times, Mercedes has been a company engaged in the business of designing, manufacturing and selling the Sprinter vans and AC units to Plaintiff Robles and members of the subclass as well as the general public.

65.    At all relevant times, Plaintiff Robles and members of the subclass purchased and used the AC units with the reasonable expectation that the AC units were fit to be used for the ordinary and intended purpose of providing a comfortable environment inside the Sprinter vans notwithstanding the environment outside the vans.  Mercedes has sold the AC unit with the knowledge that it would be used for this particular purpose.  Moreover, Mercedes—as a manufacturer of specialty and luxury vehicles—has had reason to know that buyers such as

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

1    Plaintiff Robles and members of the subclass—who are simple consumers—would rely on

2    Mercedes' skill or judgment to furnish suitable goods.

3          66.    As part of the sale of the AC units, Mercedes never provided Plaintiff Robles or

4    members of the subclass with a conspicuous writing attached to the vans or AC units that clearly

5    informed Plaintiff Robles or members of the subclass prior to the sale that the vans or AC units

6    were being sold on an "as is" or "with all faults" basis.  In fact, every sale of the vans and the AC

7    units was accompanied by a manufacturer's warranty that warranted against defects in materials

8    or workmanship.

9          67.    Notwithstanding the warranties of fitness and merchantability and the

10   commonsense expectation that vehicles should not be subject to periodic flooding, the vans, when

11   delivered to Plaintiff Robles and the subclass, were defective in design and/or materials and

12   workmanship.  These defects caused the water to leak into the interior of the van dousing

13   passengers and whatever else might be in the vans at the time.

14         68.    These defects were present at the time that Mercedes delivered the vans to Plaintiff

15   Robles and members of the subclass.  The defects in Plaintiff Robles' van manifested shortly after

16   he took possession of the vehicle.

17         69.    The defects experienced by Plaintiff Robles and members of the subclass with the

18   vans have substantially impaired and continue to substantially impair the use and value of the

19   vans.  As a direct and proximate result of Mercedes willful violation of its obligations under the

20   Song-Beverly Consumer Warranty Act, Plaintiff Robles and members of the subclass have

21   suffered damages measured by the right of replacement or reimbursement including the costs of

22   repair, if any, necessary to make the goods conform, and the difference between the value of the

23   goods accepted and the value they would have had if they had been as warranted, as well as

24   incidental damages and attorneys' fees.

25         WHEREFORE, Plaintiff Robles prays for relief as set forth below.

26

27

28

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

**FOURTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act)**
**(On behalf of Plaintiff Robles and the Consumer Subclass)**

70.     Plaintiff Robles incorporates the paragraphs alleged above as if fully set forth herein.

71.     The Consumers Legal Remedies Act, Civil Code section 1750 *et seq*. ("CLRA") protects consumers from unconscionable, fraudulent and deceptive sales practices.  The act's purpose is to provide efficient and economical procedures to secure such protection.  Cal. Civil Code § 1760.  In that connection, the CLRA entitles "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by section 1770" to "bring an action against that person to recover actual damages, injunctive relief, restitution of property, punitive damages, and any other relief the court deems proper."  *Wang v. Massey Chevrolet*, 118 Cal. Rptr. 2d 770, 778 (2002).

72.     At all relevant times:

(a)     The vans have been and will continue to be tangible chattels that Mercedes has designed, manufactured, and marketed for personal, family, or household purposes that are intended to be purchased;

(b)     Plaintiff Robles and members of the subclass are individuals who have purchased the vans for personal, family or household purposes;

(c)     The purchase of the vans constituted an agreement between Mercedes on the one hand and Plaintiff Robles and members of the subclass on the other; and

(d)     Mercedes is a corporation.

73.     In offering the vans with the AC unit for sale to the public, Mercedes markets the vans as luxury vehicles known for sophisticated design, innovative technology, and exceptional and unprecedented performance.  Mercedes, moreover, has represented, and will continue to represent, directly or by implication, in its marketing materials and website and through sales personnel that the AC units do not have any defects that would substantially affect a consumer's

FOURTH AMENDED CLASS ACTION COMPLAINT                              Case No. 14-02349 TEH

1  ability to use them for their intended purpose of delivering a comfortable interior environment

2  notwithstanding the environment outside the van.

3       74.    Notwithstanding Mercedes' representations in its marketing materials and websites

4  and through sales personnel, the AC units have been and will continue to be inadequate in

5  meeting their intended purpose of keeping passengers and cargo comfortable given that defects in

6  the AC unit will cause substantial amounts of water to leak into the interior of the van.

7       75.    At all relevant times, Mercedes has known that Plaintiff Robles and members of

8  the subclass did not know or could not have reasonably discovered the problem prior to

9  purchasing the vans.  Mercedes had a duty to disclose the material fact that the AC unit has a

10  propensity to leak substantial amounts of water into the interior of the van clearly and

11  conspicuously at the time of sale given (1) the materiality of the information; (2) Mercedes'

12  affirmative representations otherwise about the quality and nature of the van; (3) Mercedes'

13  exclusive knowledge of material facts not known to Plaintiff Robles and members of the subclass;

14  and (4) Mercedes' active concealment of material facts from Plaintiff Robles and members of the

15  subclass.

16       76.    By virtue of this ongoing practice and course of conduct, Mercedes has violated

17  and will continue to violate California Civil Code section 1770(a)(7) by representing that the vans

18  are of a particular standard or quality when they are not of that standard or quality.

19       77.    By virtue of this ongoing practice and course of conduct, Mercedes has violated

20  and will continue to violate California Civil Code section 1770(a)(5) by representing that the vans

21  have characteristics, uses and benefits which they do not have.

22       78.    Mercedes' violations of California Civil Code section 1770 present a continuing

23  threat to Plaintiff Robles and members of the public in that Mercedes continues to engage in the

24  above-referenced acts and practices, and unless enjoined from doing so by this Court, will

25  continue to do so.  Had Plaintiff Robles and members of the subclass been informed of the

26  Sprinter vans' tendency to have water leak into the interior of the van, they would not have

27  purchased the vans at the premium price advertised for the purportedly luxury vehicle.  At the

28  very least, Plaintiff Robles and members of the subclass would have purchased different vehicles.

FOURTH AMENDED CLASS ACTION COMPLAINT          Case No. 14-02349 TEH

79.     As a result of Mercedes' practices, Plaintiff Robles and members of the subclass have suffered and will continue to suffer injury in fact and lost money or property.  Specifically, Plaintiff Robles and members of the subclass have spent substantial sums to purchase Sprinter vans with the AC unit when they otherwise would not have done so, and some have also had to subsequently spend substantial sums to repair the damage caused when water leaked into the interior through and around the AC units.  This damage included damage to the vehicle itself but also to cargo being transported in the vehicles.  Plaintiff Robles and members of the subclass have also had to suffer the inconvenience and costs associated with not being able to use the vehicle while it dries out and taking the vehicle in to be repaired.

80.     Accordingly, Plaintiff Robles seeks an order enjoining the sale of the defective AC units, as well as an award of attorneys' fees and costs pursuant to Civil Code section 1780, subdivisions (a) and (e).

WHEREFORE, Plaintiff Robles prays for relief as set forth below.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition – Unlawful Business Practices)**
**(On behalf of Plaintiff Robles and the California Subclass)**

81.     Plaintiff Robles incorporates the paragraphs alleged above as if fully set forth herein.

82.     Business & Professions Code section 17200 *et seq*. (the "Unfair Competition Law" or "UCL") defines unfair competition to include any unlawful, unfair or fraudulent business act or practice.

83.     By virtue of the violations alleged above of the Song Beverly Warranty Act and the Consumer Legal Remedies Act, Mercedes has engaged in unlawful business practices.

84.     Mercedes has known about the propensity for AC units to leak and damage the interior of Sprinter vans as well as cargo being transported in the vans since at least 2010. Notwithstanding that knowledge, Mercedes has continued to sell and lease Sprinter vans with AC units installed without any change in the design or installation of the AC unit.  Mercedes has also continued to sell and lease Sprinter vans with AC units installed without disclosing to the public

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

1   that the AC units may cause water to leak into the interior of the van.  Mercedes rather continues

2   to market the Sprinter vans as the ultimate in engineering perfection, in violation of the Song-

3   Beverley Warranty Act and the Consumers Legal Remedies Act..

4          85.     At no time did Mercedes ever disclose to the public, including Plaintiff Robles and

5   the members of the subclass, that the AC units were prone to leak water into the interior of the

6   van.  Prior to purchase, Plaintiff Robles read promotional materials for the Sprinter vans; nowhere

7   did Mercedes disclose the potential for water to leak into the interior of the van.  Instead, Plaintiff

8   Robles relied on the reputation of Mercedes and the affirmative representations that Mercedes had

9   made in its promotional materials and warranties.  At the very least, Plaintiff Robles would not

10  have agreed to pay as much for the Sprinter van.

11         86.     As a result of Mercedes' practices, Plaintiff Robles and members of the subclass

12  have suffered and will continue to suffer injury in fact and lost money or property.  Specifically,

13  Plaintiff Robles and members of the subclass have spent substantial sums to purchase Sprinter

14  vans with the AC unit when they otherwise would not have done so, and some have also had to

15  subsequently spend substantial sums to repair the damage caused when water leaked into the

16  interior through and around the AC units.  This damage included damage to the vehicle itself but

17  also to cargo being transported in the vehicles.  Plaintiff Robles and members of the subclass have

18  also had to suffer the inconvenience and costs associated with not being able to use the vehicle

19  while it dries out and taking the vehicle in to be repaired.

20         WHEREFORE, Plaintiff Robles prays for relief as set forth below.

21                          **SIXTH CAUSE OF ACTION**
22                 **(Unfair Competition – Unfair Business Practices)**
                   **(On behalf of Plaintiffs and the California Subclass)**

23         87.     Plaintiffs incorporate the paragraphs alleged above as if fully set forth herein.

24         88.     Business & Professions Code section 17200 *et seq*.  (the "Unfair Competition

25  Law" or "UCL") defines unfair competition to include any unlawful, unfair or fraudulent business

26  act or practice.  Unfair competition includes engaging in a business practice whose utility is

27  outweighed by the harm it causes.

28

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

89.     Mercedes has known about the propensity for AC units to leak and damage the interior of Sprinter vans as well as cargo being transported in the vans since, at the very least, 2007.  Notwithstanding that knowledge, Mercedes has continued to sell and lease Sprinter vans with AC units installed without any change in the design, materials, workmanship or installation of the AC unit.

90.     At the same time, Plaintiffs and members of the class have suffered harm in continuing to take possession from Mercedes vans with defective AC units that cause water to leak into the vans' interior where it damages the ceiling, floorboards, seat cushions, and upholstery, as well as any cargo and anything else being transported in the vehicles, including any fixtures that were installed by the owners.  Plaintiffs and members of the class have also suffered and will continue to suffer the inconvenience and costs associated with not being able to use the vehicle while it dries out and taking the vehicle in to be repaired.

91.     The utility of Mercedes' continued placing into commerce vehicles with defective AC units is minimal; at best, it represents a savings that inures to Mercedes strictly at the public's expense.  Mercedes' continued placing into commerce vehicles with defective AC units has not benefited anyone but Mercedes.

92.     Plaintiff Bandago could not have reasonably avoided its injuries.  Ford Motor Company introduced the Ford Transit only in 2014.  Until then, there was no alternative for the Sprinter, particularly for Plaintiff Bandago's purposes.  Plaintiff Bandago had no choice if it were to continue with its business model but to continue to purchase Sprinter vans with the defective AC units and suffer the consequences.  Though Plaintiff Bandago may have been aware of the defect, Mercedes repeatedly represented to Plaintiff Bandago that a fix had been issued and that the leaking resolved.  Plaintiff Bandago relied on Mercedes' reputation and Mercedes' marketing, which touts the Sprinter vans as being the best in class and German-engineered.  The only way that Plaintiff Bandago could have avoided its injury is if Mercedes had informed Plaintiff Bandago that the defect had not been addressed and Ford Motor had introduced the Transit earlier than it did.

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

93.     Plaintiff Robles and other members of the class could not have reasonably avoided their injuries given that Mercedes never informed the public generally regarding the propensity of the AC units to leak.  Nor was this information widely known or publicly available. The only way that Plaintiff Robles and other members of the class could have avoided injury is if Mercedes had disclosed that the defect existed so that Plaintiff Robles and the other members of the class could have purchased the van without the AC unit, if not a completely different vehicle.

94.     As a result of Mercedes' practices, Plaintiffs and members of the class have suffered and will continue to suffer injury in fact and lost money or property.  Specifically, Plaintiffs and members of the class have spent substantial sums to purchase Sprinter vans with the AC unit when they otherwise would not have done so, and some have also had to subsequently spend substantial sums to repair the damage caused when water leaked into the interior through and around the AC units.  This damage included damage to the vehicle itself but also to cargo being transported in the vehicles.  Plaintiffs and members of the class have also had to suffer the inconvenience and costs associated with not being able to use the vehicle while it dries out and taking the vehicle in to be repaired.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**SEVENTH CAUSE OF ACTION**
**(Unfair Competition – Fraudulent Business Practices)**
**(On behalf of Plaintiff Robles and the California Subclass)**

95.     Plaintiff incorporates the paragraphs alleged above as if fully set forth herein.

96.     Business & Professions Code section 17200 *et seq*.  (the "Unfair Competition Law" or "UCL") defines unfair competition to include any unlawful, unfair or fraudulent business act or practice.  Fraudulent business practices are those practices that are likely to deceive the reasonable consumer.

97.     Mercedes has, since at least 2007, manufactured and placed Sprinter vans with AC units on the market in California for the public to purchase.

98.     These AC units were defective in material, workmanship, and/or factory preparation; the AC units would leak substantial amounts of water into the interior of the van.

23

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

1    Investigations by Mercedes and the technical service bulletins issued by Mercedes state that the

2    leaks can be caused by improper installation of the AC unit and defects in the sealant and/or the

3    installation of the sealant used around the AC unit.

4          99.    The AC units also manifested a design defect—no matter what repairs were made,

5    the AC unit would still leak water into the interior by virtue of a defect in the unit itself that

6    would cause condensation to form when the unit was used at its maximum settings.

7          100.    These defects existed at the time of sale and manifested themselves within the

8    warranty period.

9          101.    At all relevant times, Mercedes had superior and exclusive knowledge of the

10   propensity for the AC units to leak water into the interior of the Sprinter vans.  Mercedes had

11   exclusive access to its customer and repair databases, dealer databases, and replacement parts

12   orders, as well as its internal investigations and testing regarding the Sprinter vans that lead to

13   Mercedes issuing technical service bulletins regarding water leaking through and around the AC

14   units.  The prevalence of complaints and repairs as well as the existence of non-public technical

15   services bulletins are facts that are not readily accessible to the public.

16         102.    At all relevant times, Mercedes knew or should have known that having water

17   enter the interior of Sprinter vans through the AC unit was inconsistent with the reasonable

18   expectations of Sprinter purchasers.  Plaintiff Robles and members of the class would have liked

19   to have known about the propensity of water leaking through and around the AC units.  In fact,

20   any reasonable consumer would deem it important to know whether a van that carries people and

21   cargo would allow water into the interior.

22         103.    Notwithstanding the propensity of the AC units on the Sprinter vans to leak water

23   into the interior of the vehicles, Mercedes instead represented that Sprinter vans were award-

24   winning vehicles that were the best commercial vehicle in the segment, that constitute "a

25   testament" to Mercedes' expertise in developing vehicles that make working easier, safer, and

26   more efficient, and that continue "to set the industry standards for reliability and technological

27   advancement."  Mercedes knew that technical services bulletins and other items of information

28   regarding the propensity of the AC units to leak water into the van's interior were not accessible

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH

1    to the general public.  At all times, Mercedes intended that its reputation and marketing materials

2    would induce consumers to purchase the Sprinter vans and the AC units.  Mercedes also knew

3    that disclosing the propensity for the AC unit to leak water into the interior of the van would

4    detract from the Sprinter's appeal and result in lost sales to competitors.

5         104.    At no time did Mercedes ever disclose to the public, including Plaintiff Robles and

6    the members of the class, that the AC units were prone to leak water into the interior of the van.

7    Prior to his purchase, Plaintiff Robles read promotional materials for the Sprinter vans; nowhere

8    did Mercedes disclose the potential for water to leak into the interior of the van.  Instead, Plaintiff

9    Robles relied on the reputation of Mercedes and the affirmative representations in the promotional

10   material and warranties.  If Plaintiff Robles had known about the defect, he would not have

11   purchased the Sprinter van.  At the very least, Plaintiff Robles would not have agreed to pay as

12   much for the Sprinter van with defective AC unit.

13        105.    As a result of Mercedes' practices, Plaintiff Robles and members of the class have

14   suffered and will continue to suffer injury in fact and lost money or property.  Specifically,

15   Plaintiff Robles and members of the class have spent substantial sums to purchase Sprinter vans

16   with the AC unit when they otherwise would not have done so, and some have also had to

17   subsequently spend substantial sums to repair the damage caused when water leaked into the

18   interior through and around the AC units.  This damage included damage to the vehicle itself but

19   also to cargo being transported in the vehicles.

20        WHEREFORE, Plaintiff Robles prays for relief as set forth below.

21   **EIGHTH CAUSE OF ACTION**
     **(Declaratory Relief)**
22   **(On behalf of Plaintiffs and the Class)**

23        106.    Plaintiffs incorporate the paragraphs alleged above as if fully set forth herein.

24        107.    An actual controversy has arisen between Plaintiffs and members of the class and

25   subclass, on the one hand, and Mercedes, on the other hand, as to their respective rights, remedies

26   and obligations.  Specifically, Plaintiffs contend and Defendant denies, that:

27              (a)    Sprinter vans equipped with AC units manifest a defect in the design of the

28                     AC unit that results in water leaking into the interior of the van;

1        (b)     Sprinter vans equipped with AC units manifest a manufacturing defect that

2               results in water leaking into the interior of the van;

3        (c)     Mercedes is liable for damage to the vehicle and other property as a result

4               of water leaking into the interior of the van through and around the AC

5               units in Sprinter vans;

6        (d)     Mercedes has known or should have known that the AC units were likely to

7               allow water to leak into the interior of the Sprinter vans;

8        (e)     That Mercedes has concealed the propensity of the AC units in Sprinter

9               vans to allow water to leak into the interior of the Sprinter vans;

10        (f)     That, despite knowing the AC units were likely to allow water to leak into

11               the interior of Sprinter vans, Mercedes continued to market and put into

12               commerce vehicles with defective AC units;

13        (g)     That the benefit accruing to Mercedes from continuing to market and put

14               into commerce vehicles with defective AC units is substantially

15               outweighed by the harm caused the public; and

16        (h)     That Mercedes has engaged in unfair, unlawful, and fraudulent business

17               practices.

18     108.     Plaintiffs further allege that Plaintiffs and members of the class and subclass are

19 entitled to recover the amounts they have paid for repairing the vans subsequent to a leak as well

20 as any losses to other property resulting from the leak as alleged herein, as well as any diminution

21 in value resulting from the defect in the AC units.

22     109.     Accordingly, Plaintiffs seek a declaration as to the respective rights, remedies, and

23 obligations of the parties.

24     WHEREFORE, Plaintiffs pray for relief as set forth below.

25                            **NINTH CAUSE OF ACTION**
**(New Jersey Consumer Fraud Act)**

26                   **(On behalf of Plaintiff Robles and the Class)**

27     110.     Plaintiffs incorporate the paragraphs alleged above as if fully set forth herein.

28

FOURTH AMENDED CLASS ACTION COMPLAINT           Case No. 14-02349 TEH

111.    Plaintiffs are owners of Sprinter vans equipped with AC units that contain defects that Mercedes did not disclose that result in the AC units leaking.

112.    Mercedes' failure to disclose as well as its intentional and fraudulent omission from any of its advertising and sales materials and brochures concerning Sprinter vans, as well as Mercedes' actual misrepresentations about the superior reliability and attributes of the AC units and Sprinter vans, at a time when Mercedes knew of the prevalence of the defects in the AC units, amounts to an unconscionable commercial practice, deception, fraud, false pretense, or the knowing concealment, suppression, omission or misrepresentation of a material fact with the intent that others rely upon that omission or misrepresentation in violation of N.J.S.A. § 56:8-2.

113.    Among other things, Mercedes knew that the AC units had defects that would cause them to leak water into the Sprinter vans, but intentionally concealed that information from consumers and class members in order to maximize its profits, thereby independently violating the New Jersey Consumer Fraud Act.

114.    Plaintiffs and all class members have sustained an ascertainable loss directly as a result of Defendant's violation of the New Jersey Consumer Fraud Act. Plaintiffs and members of the class have had to or will have to expend significant money to repair or replace the defective parts in the AC units. None of the plaintiffs or putative class members obtained the benefit of their bargain in purchasing the subject vehicles because, unbeknownst to them, they each obtained an AC unit plagued with defects.

115.    WHEREFORE, Plaintiffs pray for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment in favor of themselves and the proposed class and subclass for the following:

1.    an order certifying the proposed class and subclasses and appointing Plaintiffs and their counsel to represent the class and subclasses;

2.    injunctive and declaratory relief as pled or as the Court may deem proper;

3.    an award of damages and restitution in favor of Plaintiffs and the class and subclasses;

FOURTH AMENDED CLASS ACTION COMPLAINT                              Case No. 14-02349 TEH

1   4.   interest as allowable by law;

2   5.   an award of reasonable attorneys' fees as provided by applicable law;

3   6.   all costs of suit; and

4   7.   such other and further relief as this Court deems just and proper.

5

6                                          Respectfully submitted,

7   Dated:  December 11, 2015             THE VEEN FIRM, P.C.

8                                          CHAVEZ & GERTLER LLP

9

10  By: _____
                 Dan L. Gildor

11  *Attorneys for Plaintiffs and the Proposed Class
    and Subclasses*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOURTH AMENDED CLASS ACTION COMPLAINT                    Case No. 14-02349 TEH